## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TRUTEK CORP.** <br>     *Plaintiff,* <br><br> **v.** <br><br> **Yeong Wan Cho (a.k.a Peter Cho); Abdul Gaffar; Sei Young Yun; Salvacion USA, Inc.; Salvacion International, LLC; Salvacion Co., Ltd.; Salvacion R&D Center; Biosure Global, Ltd.; Immobiliaria La Salvacion, R.D., John and Jane Does 1 through 10 (gender neutral fictitious names); ABC Corporation 1 through 10 (fictitious names),** <br>     *Defendants.* | Case No.  2:23-cv-3709 <br><br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, TRUTEK CORP. ("Trutek") is a corporation of the State of New Jersey, with principal offices at 281 East Main Street, Somerville, New Jersey, 08876.

2. According to information and belief, Defendant Yeong Wan Cho, *a.k.a.* Peter Cho (hereinafter, "Peter Cho" or "Cho") is an individual residing at 534A Hillside Avenue, Palisades Park, New Jersey 07652.  According to

information and belief, Defendant Cho is a co-founder and principal of Salvacion USA, Inc.

3.    According to information and belief, Defendant Abdul Gaffar (hereinafter, "Gaffar") is an individual residing at 8351 Catamaran Circle, Lakewood Ranch, Florida 34202.  According to information and belief, Defendant Gaffar is a co-founder and principal of Salvacion USA, Inc.

4.    According to information and belief, Defendant Sei Young Yun (hereinafter, "Yun") is an individual residing at 204-1106 ho, 127 Dunsannam-ro, Sri-gu, Daejeon 35249, Korea.  According to information and belief, Defendant Yun is a co-founder and principal of Salvacion USA, Inc.

5.    According to information and belief, Defendant Salvacion USA, Inc. ("Salvacion USA") is a corporation organized and existing under the laws of the State of New Jersey, doing business at 210 Sylvan Avenue, #24, Englewood Cliffs, New Jersey 07632.

6.    According to information and belief, Defendant Salvacion International LLC (hereinafter, "Salvacion International") is a limited liability company organized under the laws of the State of Wyoming, doing business at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

7.    According to information and belief, Defendant Salvacion Co., Ltd. is a corporation organized under the laws of the country of Korea, doing

business at 557 GangNam-daero (SungHan B/D), 12th Floor, SeoCho-gu, Seoul, Korea 06531.

8.   According to information and belief, Defendant Salvacion R&D Center is a business organized under the laws of the country of Korea, doing business at Migun-Technoworld B/D, YuSeong-guDaejeon, 34025 Korea.

9.   According to information and belief, Defendant Biosure Global, Ltd. (hereinafter, "Biosure Global") is a corporation organized under the laws of the United Kingdom, Registered Company No. 11230071, doing business at 121 Brooker Road, Waltham Abbey 3N9 1JH UK, United Kingdom and at Hillgrove Essex Park, Nazeing, Essex, UKEN9 2HB, United Kingdom.

10.  According to information and belief, Defendant Inmobiliaria La Salvacion, R.D. is a business organized under the laws of the Dominican Republic, doing business at Ave. Imbert Esq. C/Santiago Rodriguez, Pontezuela Santiago, Republica Dominicana.

**<u>FEDERAL SUBJECT MATTER JURISDICTION</u>**

11.  The subject matter jurisdiction of this Court arises under 28 U.S.C. § 1331 concerning a federal question, the Patent Laws of the United States, 28 U.S.C. §§ 1338(a), (b), and 35 U.S.C. § 271, Theft of Trace Secrets Act, 18 U.S.C. § 1832, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.

## SUPPLEMENTAL SUBJECT MATTER JURISDICTION

12. This court may exercise supplemental jurisdiction over the following counts for one or more of the defendants in this matter:

- breach of contract;
- breach of the implied covenant of good faith and fair dealing;
- theft of trade secrets (New Jersey state claim);
- concealment;
- unjust enrichment;
- conversion;
- interference with prospective economic advantage;
- unfair business practices; and
- civil conspiracy.

## IN PERSONAM JURISDICTION

13. *In personam* jurisdiction over the individual Defendant Cho is proper because he resides in the State of New Jersey.

14. *In personam* jurisdiction over the individual Defendant Gaffar is proper because he has sufficient minimum contacts with the State of New Jersey by virtue of his involvement with the business entity of Salvacion USA.

15. *In personam* jurisdiction over the individual Defendant Yun is proper because he is a citizen and resident of Korea, and he has sufficient minimum contacts with the State of New Jersey by virtue of his involvement with the business entity of Salvacion USA.

16. *In personam* jurisdiction over Salvacion USA is proper because the business entity is a citizen of the State of New Jersey by virtue of its incorporation therein.

17. *In personam* jurisdiction over Defendant Salvacion International is proper under 28 U.S.C. § 1400(b) because the tort of patent infringement occurred in New Jersey and Salvacion International is an integral part of an enterprise that has an established place of business in New Jersey.

18. *In personam* jurisdiction over Defendants Salvacion Co., Ltd., Salvacion R&D Center, Biosure Global, and Inmobiliaria La Salvacion, R.D. is proper because they are citizens of and reside in foreign countries.

## **<u>VENUE</u>**

19. The venue of this Court is proper under the Patent Venue Statute, 28 U.S.C. § 1400(b) since the tort of patent infringement occurred within the State of New Jersey, and Defendant Salvacion International is an integral part of an enterprise that has an established place of business thereat, and which is furthermore located within the venue of the District of New Jersey.

20. The venue of this Court is proper because Defendant Cho is a resident of the State of New Jersey.

21.   The venue of this Court is proper because Salvacion USA is a citizen and resident of New Jersey by virtue of incorporation therein and having an established place of business in New Jersey.

22.   The venue of this Court is proper because individual Defendants Gaffar and Yun each have sufficient minimum contacts with the State of New Jersey.

23.   The venue of this Court is proper because Defendants Salvacion Co., Ltd., Salvacion R&D Center, Biosure Global, Ltd., and Inmobiliaria La Salvacion, R.D. are citizens of and reside in foreign countries and they each an integral part of an enterprise that committed torts against Plaintiff, a New Jersey corporation.

## STATEMENT OF FACTS AND CAUSES OF ACTION

### The Business of Plaintiff, Trutek Corp

24.   Plaintiff, Trutek Corp. ("Trutek") is a New Jersey corporation having offices in Somerville, New Jersey.  Trutek develops and markets over-the-counter products that utilize electrostatic fields to relieve symptoms due to nasally inhaled airborne particles, pollutants, and allergens and to inhibit infection from harmful particles (*e.g.,* bacteria, viruses, fungi).  The products are sold in the form of gels and liquids.  Most of these products are applied directly to the user's nostrils.  However, Trutek also markets liquids that are sprayed into the nostrils or onto a porous face mask to enhance its protection.

Trutek's products are marketed and sold worldwide.  In the United States, most of these products are marketed under the brand name NasalGuard®.

25.   Trutek has an intellectual property portfolio comprising several patents, trademarks, and trade secrets.  Trutek's intellectual property also comprises goodwill, trade names, manufacturing and selling processes, knowhow and techniques, secret formulae, copyrights, designs, and other materials employed in connection with the manufacture, assembly, packaging, offering for sale, advertisement, promotion and sale of its products.

26.   Among its United States patents are US 5,674,481 B2, US 6,844,005 B2, US 8,163,802 B2, US 9,737,497 B2, and US 9,750,706 B2.  Other patents are pending.  Trutek has always caused its existing patent numbers to marked on the packaging of all of its products as required by 35 U.S.C. § 287.

27.   Trutek's United States trademarks include word marks of TRUTEK®, NasalGuard®, NasalGuard Allergie Block®, and NasalGuard Airborne Particle Blocker®.

**Defendant Peter Cho's Relationship With Trutek**

28.   On or about March 1, 2019, Ashok Wahi ("Wahi"), then President of Trutek, was introduced to Defendant Peter Cho ("Cho").  Cho is the President of Jintec America, Inc. ("Jintec"), a New Jersey Corporation.  Jintec is a United States affiliate of a South Korean holding company (Jintec Holdings).  Wahi

and Cho were introduced by an executive officer of one of Trutek's contract manufacturers.   Cho indicated to Wahi that Jintec was interested in becoming an exclusive distributor for Trutek's NasalGuard Airborne Particle Blocker® gel in South Korea.

29.   On March 4, 2019, Cho and Wahi entered into a Confidential Disclosure Agreement ("CDA") in which Trutek agreed to disclose to Cho confidential information regarding:

*NasalGuard® with special features, attributes and additional claims, Miracle Under-Eye$^{TM}$, NasalGuard® Unscented, NasalGuard Allergie Block®, NasalGuard Cold & Flu Block $^{TM}$, NasalGuard® Multi-Acting $^{TM}$, NasalGuard® Single Application Sachets, NasalGuard MF, NasalGuard Airborne Particle Blocker, NasalGuard Personal Air Filter Gel, NasalGuard Particle Blocking Gel, Anti-Stat Enhanced Mask$^{TM}$, NasalGuard Wipes $^{TM}$, NasalGuard Allergie Wipes $^{TM}$, NasalGuard Cold & Flu Wipes $^{TM}$, Skin and Hair super conditioners, Truteks® Skin and Truteks® skin care products, nasal application (anti-stat) diagnostic products and, associated Technologies and Methodologies, Patented and Pending, Patent Applications, Chloraseptic Allergie Block and Little Allergies, Allergie Block, Eisai Crystal Veil, Eisai Crystal Veil cool, Nitto Nuru Mask, Nitto NasalGuard, including but not limited to nasal application product lines such as gels, pre-moistened products for e.g. applicators, swabs, wipes, etc., sticks, nasal sprays, nasal washes, surgical masks, multi-acting/integrated products, etc., and all other Trutek products.*

30.   In return, Cho agreed *inter alia* to maintain the information in strict confidence and not to profit from the information except by written agreement from Trutek.   Moreover, he agreed that "all inventions and improvements, patentable or not" that were associated with the disclosure would belong to Trutek.   A copy of the executed CDA dated March 4, 2019 is attached hereto as Exhibit 1.

Page 8

31.  Discussions between Wahi and Cho continued for another two months during which Cho reviewed Trutek's patented and trade secret technology, manufacturing methodologies, and intellectual property.  On May 12, 2019, Trutek and Jintec entered into an agreement ("the May 12th Agreement") for "Importation, Marketing, Sales, and Distribution of Trutek's NasalGuard® Gel-Tube Product in South Korea."   Jintec was to be the exclusive distributor for Trutek's products in South Korea.  In exchange, Jintec was to purchase certain annual minimum quantities of the NasalGuard® gel tubes. A copy of the executed May 12th Agreement is attached hereto as Exhibit 2.

32.  Clause II(a) of the May 12th Agreement (Page 1) also provides:

> *Trutek does not grant and Jintec does not claim and will not claim any rights whatsoever with respect to Trutek's Trade Secrets and Intellectual Property (hereafter "IP"), and Jintec hereby acknowledges Trutek's exclusive right and title in the Territory and elsewhere to the Products and Trutek's Trade Secrets and Intellectual Property. The phrase "Trutek's Trade Secrets and Intellectual Property" refers to Trutek's trademarks, patents and patents-pending, goodwill, trade names, trade secrets, manufacturing and selling processes, knowhow and techniques, secret formulae, copyrights, designs, and other materials of any kind whatsoever employed in connection with the manufacture, assembly, packaging, offering for sale, advertisement, promotion and sale of the Products. In addition, Jintec shall not attempt to manufacture or commission the manufacturing of the Trutek's product NasalGuard herein or any products, which shall be developed by Trutek in the future.*

33.  Cho and Wahi executed the May 12th Agreement on behalf of Jintec and Trutek, respectively.  The March 4th CDA between Wahi and Cho was duplicated on Page 9 of the Agreement, and it was made an integral part thereof.

34.   On November 6, 2019, Trutek and Jintec entered into a second agreement ("the November 6th Agreement") for "Importation, Marketing, Sales, and Distribution of Trutek's NasalGuard® Gel-Tube Product in Greater China and Vietnam."  Jintec was to be the exclusive distributor for Trutek's products in China and Vietnam.  A copy of the executed November 6th Agreement is attached hereto as Exhibit 3.  The November 6th Agreement contained the same Clause II(a) on Page 1, duplicated from the May 12th Agreement, *supra* and included therein.  Once again, the CDA was integrated into the November 6th Agreement.

35.   The relationship between the parties started off well.  Jintec ordered products from Trutek, and the products were delivered to Jintec.  At some point, a dispute arose between the parties where Jintec stopped paying Trutek for delivered product and failed to order minimum quantities of product.  On March 26, 2021, Trutek filed suit against Jintec in the Superior Court of New Jersey in Somerset County (Docket No. SOM-L-426-21).  The Trutek v. Jintec lawsuit is unrelated to the Present Above Captioned Complaint.  However, the agreements have a binding effect on the Defendants in the Present Matter.

**Trutek's Airborne Particle Blocking Technology and the '802 Patent**

36.   One of Trutek's best selling products is the NasalGuard® Airborne Particle Blocker ("APB product").   The most likely type of respiratory infection occurs when a person inhales germs through his nose into his lungs and bronchial tubes.   The APB product comes in the form of a gel in a tube that a person applies to his nostrils.   The gel is applied as a thin film.   Most germs (*e.g.,* bacteria, viruses, fungi, *etc.*) have a negative electrostatic charge. Trutek's APB product sets up a positive electrostatic field around the user's nose.   Airborne germs that float around the user's nose are attracted to the gel.   The gel is sticky, and the germs are held in place by the sticky gel.   One of the ingredients of the gel is a biocide that kills living organisms.   Thus the germs that stick to the gel are killed.   So, if some germs are dislodged from the gel and are inhaled, those germs are probably dead and harmless.

37.   Although the APB gel is the most popular item, Trutek also markets nasal sprays, and liquids using the same technology.   Trutek also sells a liquid spray product for face masks.   Spraying this product onto a porous face mask renders the mask much safer to use because germs will be trapped in the mask even before they reach the user's nose.   Using the gel together with a sprayed mask should greatly reduce the probability of infection due to nasal inhalation.

38.     Trutek's U.S. Patent 8,163,802 ("the '802 Patent") is one of several patents that disclose and claim the fundamental operations and formulations that define the APB product.  The '802 Patent is attached hereto as Exhibit 4.  Claim 1 is an independent method claim, and claim 2 is an independent formulation claim.  The formulation contains a cationic agent (*i.e.,* a substance that has a positive electrostatic charge).  It also contains a biocide.  A formulator adjusts the ingredients so as to make the formulation into a thin film that adheres to the skin or tissue.  He or she also adjusts the formulation to be viscous and to hold the harmful germs in place so that the biocide can kill them and so that they would not dislodge.

39.     The May 12th and November 6th Agreements between Trutek and Jintec covered importation, marketing, sales, and distribution of the APB product in South Korea and China/Vietnam, respectively.  Trutek's NasalGuard® technology was fully disclosed to Cho.  He understood the formulations and their ingredients.  This is evidenced by his insistence that the formulation in the May 12th Agreement be modified to substitute specific ingredients therein for approval by the South Korean government.  South Korea would not permit the product to be imported unless the product was thus modified.  Cho was also aware of the '802 Patent.

## **Defendants Peter Cho and Salvacion USA, Inc.**

40.   Sometime around January 24, 2023, people at Trutek discovered Cho's involvement with Defendant, Salvacion USA, Inc. ("Salvacion USA") According to information and belief, Defendant Cho and Defendant Dr. Abdul Gaffar ("Gaffar") are co-founders of Salvacion USA. However, it is currently unknown what position each holds in the company.

41.   Salvacion USA is a New Jersey Corporation - Company No. 0450535127 - incorporation date August 27, 2020. ***The business address of Salvacion USA is the same as that for Jintec.*** According to information and belief, Salvacion USA is a company member of a global business Enterprise ("the Salvacion Enterprise"), comprising additionally of Defendants: (1) Cho, (2) Gaffar, (3) Yun, (4) Salvacion Co. Ltd. (a South Korean company), (5) Salvacion R&D Center (a South Korean company), (6) Salvacion International, LLC (a Wyoming corporation), (7) BioSure Global (a UK company), and (8) Salvacion R.D. (a Dominican Republic company).

### Salvacion USA and COVIXYL Over-the-Counter Products

42.   Salvacion USA is listed as a manufacturer of drugs and pharmaceuticals with an NDC labeler name of Salvacion USA, Inc. According to information and belief, Salvacion USA created and sold an over-the-counter product called Covixyl-G Nasal Antiseptic Solution (NDC No. 808570-100). Salvacion USA filed for FDA approval in November 2020 as an OTC

product.  The main ingredient in the Covixyl-G formulation is benzalkonium chloride in a 0.13% solution.  The label claims that the formulation uses a "nanotechnology" delivery system.  A typical nanotechnology delivery system consists of an oil-in-water nanoemulsion (a.k.a. microemulsion) consisting of micron-sized nano-droplets also containing the benzalkonium chloride.  A copy of the packaging for the Covixyl-G product is shown in Exhibit 5, attached hereto.  According to information and belief, the manufacture or sale of Covixyl-G by the Salvacion Enterprise infringes on the claims of the '802 Patent.

43.  It should be noted that claims 6 and 7 of Trutek's '802 Patent state that the cationic and biocidic agents in its formulations are benzalkonium chloride. Application of a 0.13% solution of benzalkonium chloride to a person's nostrils would create a positively charged electrostatic field of sufficient strength to attract the negatively charged germs.  The microemulsion droplets would surround the germs and hold them in place, while the benzalkonium chloride would deactivate them via membrane disruption.

44.  On January 14, 2022, Salvacion USA filed a U.S. non-provisional patent application claiming priority to a PCT[1] international patent application (filed October 15, 2020), and then to a provisional patent application (filed August

---

[1] PCT is an acronym for Patent Cooperation Treaty.

31, 2020).  The current status of the application is patent pending.  The title of the patent application is, "Antiviral Composition and Use For the Same." The inventors listed on the application are Gaffar, Cho, and Yun.   The application was published on May 5, 2022 by the USPTO as Application Publication Serial No. US 2022/0133783 A1 ("the '783 Application"), a copy of which is attached hereto as Exhibit 6.  The '783 Application discloses and claims an anti-viral formulation "containing a cationic anti-viral agent (cationic surfactant) and a copper salt to control viral infections in the nasopharyngeal and throat area of humans and animals."  The '783 Application's specification discloses several example formulations. "Solution 1" lists the ingredients of a formulation where the principal ingredient is *Ethyl Lauroyl Arginate Hydrochloride* ("ELAH").  "Solution 2" lists the ingredients of a formulation where the principal ingredient is benzalkonium chloride.  It also lists a formulation of a nasal gel, where the principal ingredient is either ELAH or benzalkonium chloride.  According to the patent application's disclosure and claims, the delivery system for the ingredients is a microemulsion.   As discussed earlier, a microemulsion comprises small micron sized individual droplets.

45.   According to information and belief, sometime around July 27, 2021, Salvacion USA submitted an application to the FDA for its Covixyl-V

product for pre-emergency use authorization.  In August 2021, Defendants Cho and Gaffar gave interviews to the media explaining that their new Covixyl product can be used regularly to protect against infection from Covid-19.  Shortly thereafter, the product launched and was being sold online on *amazon.com*, and Target.  It was no longer called Covixyl-V, but rather it was branded as Covixyl$^{TM}$.  The text on the front of the packaging reads, "Helps Block Airborne Viruses."  Photographs of the Covixyl product and the product packaging are attached hereto as Exhibit 7.

## Salvacion Enterprise Activities With Covixyl

46.   From Exhibit 7, note that the product package states, "Formulation protected by US Patent # 17/576,098.  Made in the USA for Salvacion Int'l LLC Sheridan, WY 82801."  According to information and belief, when the Covixyl product is ordered from *amazon.com*, the order is fulfilled by Salvacion International LLC  ("Salvacion Int'l"), a Wyoming limited liability company.

47.   According to information and belief, Defendant's Cho, Gaffar, Yun, and Salvacion USA are engaged in efforts to market Covixyl in South Korea.  Exhibit 8 is a copy of a test report regarding samples of Covixyl-V submitted to the Korea Testing & Research Institute ("KTR") dated

2021.03.09.  It should be noted that the address of Salvacion USA is the same as for Jintec.

48.   In addition, Salvacion Enterprise member, Biosure Global (a United Kingdom company) sells a nasal spray product labeled BioSURE® PRO.  A copy of a page from Biosure Global's website (*www.biosure.co.uk*) is attached hereto as Exhibit 9.  When a user clicks on the link, "How does BioSURE® Pro Protective Nasal Spray work?" the following text appears:

*BioSure PRO Protective Nasal Spray is a microemulsion formula, that is applied as a plume of droplets rather than a squirt, so it creates a temporary physical barrier in your nasal passages that blocks the virus spike proteins from entering the cells ACE-2 receptors in your nose.  This helps block the first step of infection at the main entry point and it also helps prevent the virus from multiplying that physically blocks airborne viruses from attaching to the cells in your nose.*

*The key ingredient is ELAH (Ethyl Lauroyl Arginine Hydrochloride), that has been safely and effectively used in a globally recognized mouthwash to block the growth of bacteria in the mouth.*

*Clinical evaluations in humans and the lab have proven the effectiveness of ELAH at blocking airborne viruses, including RSV (common cold), influenza (flu), and COVID-19 delta and omicron variants.*

49.   Considering the above text from Biosure's website, it is obvious that the product BioSURE® PRO formulation is virtually the same as that of Covixyl.

## **Infringement of the '802 Patent by the Salvacion Enterprise**

50.   On March 7, 2023, Mr. Nitin Kumar, a New Jersey resident, ordered two units of the Covixyl product from *amazon.com*.  The order was fulfilled, and the products were received by him at his New Jersey address.  Mr. Kumar

gave the products to Trutek in their original packages.   Mr. Kumar's declaration is attached hereto as Exhibit 10.

51.   Trutek personnel tested the Covixyl product in its own laboratories and determined that the product exhibits a surface electrostatic charge that is approximately equal to that of its own NasalGuard® product.   It was confirmed that the product forms a thin film that adheres to surfaces such as skin or tissue, and it is sufficiently viscous to remain active in the user's nostrils for several hours.   Based upon this verification that the product will electrostatically attract germs (harmful particles) and on online information provided by Salvacion itself, it is apparent that the Covixyl products infringe on at least Claims 1 and 2 of the '802 Patent.   (See Exhibit 4.)

52.   In March of 2023, two additional orders for the Covixyl product were placed by Keith Altman.   The two additional units were delivered to his address in Michigan.   Mr. Altman's declaration is attached hereto as Exhibit 11.

**<u>Offenses against Trutek by Defendant, Peter Cho</u>**

53.   On March 4, 2019, Cho and Wahi entered into a binding agreement (the CDA) whereby Wahi would disclose Trutek's confidential information to Cho, and in return, Cho would not disclose said confidential information to any third party nor would Cho use it for any purpose unless authorized to do so in writing by Wahi.   Cho further agreed that Trutek will have "sole and

irrevocable rights to all such improvements, inventions and Patents without any further verbal or written authorization from" Trutek.

54. Wahi disclosed its confidential and proprietary information and technology to Cho. Cho breached its contract with Wahi (the CDA) by disclosing this confidential information to others, and by using it for his own purposes without prior authorization from Wahi.

55. Cho became involved as a principal of a company that produces a competitive product based on Trutek's technology.

56. Cho failed to honor his contractual obligation by allowing a patent application for Trutek's technology to be assigned to Salvacion USA instead of to Trutek.

57. Cho knowingly and intentionally converted Trutek's proprietary technology for his own purposes and stole Trutek's trade secrets for his own purposes.

58. Cho knowingly conspired with other individuals and companies within the Salvacion Enterprise to utilize Trutek's proprietary technology for their own profit.

59. Cho knowingly and willfully induced those within the Salvacion Enterprise to infringe upon the claims of Trutek's '802 Patent.

## Offenses against Trutek by Defendants Gaffar and Yun

60.   Gaffar and Yun knowingly conspired with Cho to utilize Trutek's proprietary confidential information to make, use, and sell a product in the United States and worldwide that infringes on Trutek's '802 Patent in violation of 35 U.S.C. § 271(a).

61.   Gaffar and Yun were complicit with Cho in developing the Covixyl product and in filing patent applications for the same.  The product and the patent applications represent improvements over Trutek's proprietary confidential information, and they rightfully belong to Trutek.

62.   Gaffar knowingly conspired with other individuals and companies within the Salvacion Enterprise to utilize Trutek's proprietary technology for their own profit.

63.   Gaffar knowingly and willfully induced those within the Salvacion Enterprise to infringe upon the claims of Trutek's '802 Patent.

**Offenses against Trutek by Salvacion USA**

64.   Salvacion USA infringes the claims of the '802 Patent by making, using, and selling an infringing product Covixyl in violation of 35 U.S.C. § 271(a).

65.   Infringement of the '802 Patent by Salvacion USA is willful because at least one of its principals was aware of the '802 Patent and its technology before said infringement occurred.

66.   Salvacion USA knowingly induced others to infringe on the claims of the '802 Patent.

67.   Salvacion USA knowingly conspired with other entities within the Salvacion Enterprise to profit from technology that rightfully belongs to Trutek and not to Salvacion USA.

68.   Salvacion USA intentionally and fraudulently claimed publicly that it had the right to market Covixyl products.

## **Offenses against Trutek by Salvacion International, LLC**

69.   Salvacion International infringes the claims of the '802 Patent by making, using, and selling an infringing product Covixyl in violation of 35 U.S.C. § 271(a).

70.   Infringement of the '802 Patent by Salvacion International is willful because at least one of its principals was aware of the '802 Patent and its technology before said infringement occurred.

71.   Salvacion International knowingly conspired with other entities within the Salvacion Enterprise to profit from technology that rightfully belongs to Trutek and not to Salvacion International.

## **Offenses against Trutek by Biosure Global**

72.   Biosure Global International intentionally conspired with other entities within the Salvacion Enterprise to profit from technology that rightfully belongs to Trutek and not to Biosure Global.

## **Offenses against Trutek by the Salvacion Enterprise and its members**

73.   Each member of the Salvacion Enterprise conspired with all other members to deprive Trutek of its technology.   The members of the Salvacion Enterprise intentionally, knowingly, and fraudulently advertised electronically online offering to sell a product that it did not own and that belongs to Trutek.   When they did sell their product rightfully belonging to Trutek, they accepted payment for their fraudulent activities electronically.

## **Offenses against Trutek as to the Actions of All Defendants**

74.   In the CDA, in exchange for Trutek disclosing proprietary and confidential information to Cho, Defendant Cho promised not to disclose said information to others.   He further promised that any developments and improvements to said information would be assigned to Trutek.

75.   Trutek disclosed said proprietary and confidential information to Cho, said confidential information including trade secrets belonging to Trutek. Further, Cho was aware of Trutek's '802 Patent.

76.   Less than one year following disclosure of said confidential information to him, in a scheme to defraud Trutek of its intellectual property, Cho disclosed said information to Defendants Gaffar and Yun, who were acting in behalf of Defendant Salvacion USA.

77.   Based on their receipt of said confidential information, and in a scheme to defraud Trutek of its intellectual property, Defendants Cho, Gaffar, and Yun filed three patent applications at the USPTO (a U.S. government agency) in behalf of Salvacion USA, which served as the applicant.   The patent applications covered presumably patentable improvements over the inventions disclosed and claimed in the '802 Patent, and they utilized trade secrets belonging to Trutek.   Although obligated to assign said patent applications to Trutek, Defendants Cho, Gaffar, and Yun assigned said patent applications to Salvacion USA.

78.   The action of Defendants Cho, Gaffar, Yun, and Salvacion USA represented a scheme to defraud Trutek out of its rightfully owned intellectual property. Further, it was reasonably foreseeable that the patent applications would be filed using wire communications, and wire communications were in fact used to file said applications.

79.   Although being aware of the '802 Patent, Defendants Cho, Gaffar, Yun, and Salvacion USA, failed to inform the USPTO of the existence and materiality

of said '802 Patent related to Defendants' patent applications in violation of 37 CFR § 1.56.  Intentionally and knowingly failing to meet this requirement represents fraud on the Patent Office.  Filing said patent application at the USPTO using wire communications while failing to inform the USPTO of its obligations to assign and of the existence and materiality of the '802 Patent, Defendants Cho, Gaffar, Yun, and Salvacion USA conspired to defraud Trutek by assigning Trutek's rightfully owned intellectual property to Salvacion USA.

80. Although being aware of the '802 Patent as well as their obligation to assign any improvements to said patent to Trutek, and in a scheme to defraud Trutek of profits derived from sales of its rightfully owned product, Defendants developed Covixyl-G, a product that infringes on the '802 Patent, and they applied for FDA approval of said product.

81. Although being aware of the '802 Patent as well as their obligation to assign any improvements to said patent to Trutek, and in a scheme to defraud Trutek of profits derived from sales of its rightfully owned product, Defendants developed, manufactured, and sold Covixyl-V (renamed to Covixyl$^{TM}$), a product that infringes on the '802 Patent.

82. Although being aware of the '802 Patent and the fact that Covixyl infringes thereon, and in a scheme to defraud Trutek of profits derived from sales of

its rightfully owned product, Defendants Salvacion USA and Salvacion International knowingly and intentionally sold said Covixyl™ product to customers throughout the United States, thus depriving Trutek of profits and making all customers potentially liable for patent infringement in violation of 35 U.S.C. § 271.

83.   In an effort to defraud Trutek out of profits from improvements to its intellectual property, all Defendants formed a global enterprise, having headquarters in Korea, with member participants in the United States (*i.e.,* Cho, Gaffar, Yun, Salvacion USA, and Salvacion International), United Kingdom (*i.e.* Biosure Global), Korea (*i.e.,* Salvacion Co., Ltd, and Salvacion R&D Center), and the Dominican Republic (Immobilaria La Salvacion) to sell the Covixyl™ product globally, thus depriving Trutek of profits that would have been made were said Covixyl™ product not sold by the global enterprise.

84.   Orders for sale of Covixyl™ products to customers were placed using interstate or foreign wire communications (Internet sales), and virtually all payments to the global enterprise from sales were made using wire communications.  Product deliveries were made by mail.

## **<u>GENERAL ALLEGATIONS</u>**

85.   Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

86.   Plaintiff owns intellectual property related to certain formulations based upon attracting and/or repelling electrostatically charged particles in and around a person's nasal passages by application of a product that maintains an electrostatic charge on the skin or mucous membranes. Plaintiff has expended considerable resources to inventing, formulating, and developing its inventions and products and to protecting its rights therein.   Much of Plaintiff's technology is subject to trade secret protection.   Plaintiff has a number of issued patents on its technology.   One such patent is the '802 Patent.   Plaintiff holds all rights, title, and interest to its '802 Patents.   The '802 Patent is in full force and effect.   Trutek is the legal owner of the '802 Patent and possesses all rights of recovery under the patent.

### COUNT ONE — INFRINGEMENT OF THE '802 PATENT
### (As to Salvacion USA and Salvacion International

87.   Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

88.   Plaintiff owns intellectual property relating to an electrostatically charged multi-acting nasal application product and method covered by the '802 patent.   Plaintiff has expended considerable resources in inventing and

developing his inventions and protecting its rights therein.  Plaintiff holds all rights, title, and interest in and to the '802 Patent by virtue of assignment. The '802 Patent was issued on April 24, 2012, and is in full force and effect. Plaintiff is the legal owner of the '802 Patent, and possesses all rights of recovery under the patent.

89.     Defendants, Salvacion USA and Salvacion International, make, use, offer to sell, and sell at least one infringing product, *viz.*, Covixyl Nasal Spray, (the "Accused Product") which infringes on the '802 Patent, without authority or license from Plaintiff.

90.     Defendants, Salvacion USA and Salvacion International, directly infringe upon at least claims 1 and 2 of the '802 Patent because the Accused Product forms a thin film when applied to a person's nasal passages, possesses an electrostatic charge by virtue of a cationic agent ingredient, and renders airborne particles harmless by virtue of a biocidic agent ingredient.

91.     Defendants, Salvacion USA and Salvacion International, were aware of the existence of the '802 Patent prior to their making, using, offering to sell, and selling the Accused Product.  Thus, Defendants' actions constitute willful infringement of the '802 Patent.

92.     Defendants, Salvacion USA and Salvacion International, knowingly induced infringement and are continuing to knowingly induce infringement of the

'802 Patent by specifically encouraging and inducing others to use the patented invention within the United States.

93.  Upon information and belief, Defendants, Salvacion USA and Salvacion International, exported the Accused Product that was made in the United States.

94.  Plaintiff has been damaged as a result of Defendants' infringement of the '802 Patent and will continue to be damaged unless such infringement is enjoined by this Court pursuant to 35 U.S.C. §283.

95.  Pursuant to 35 U.S.C. §284, Plaintiff is entitled to damages adequate to compensate in an amount not less than a fair and reasonable royalty.

96.  Defendants' Accused Product is sold in the same commercial outlets as Plaintiff's products. Defendants' product competes directly with Plaintiff's products. Every product sold by Defendants is a product that could have been sold by Plaintiff. Thus, Plaintiff should be entitled to its lost profits from sales it was unable to make.

97.  Plaintiff is entitled to enhanced damages and attorney fees because infringement of the '802 Patent by Defendants was willful.

98.  Alternatively, Plaintiff is entitled to a judgment from the Court, which enjoins sales or commercialization by Defendants of its product until after expiration of the '802 Patent.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

a.  enter judgment against Defendants, Salvacion USA and Salvacion International, and in favor of Plaintiff requiring Defendants, Salvacion USA and Salvacion International, to pay over and account to Plaintiff for all gains, profits, and advantages derived from the infringement of its '802 Patent beginning March 4, 2019, based upon manufacture, sales, and/or use of the products in the United States and anywhere in the world, or by way of international commerce with the United States;

b.  enter judgment against Defendants, Salvacion USA and Salvacion International, and in favor of Plaintiff, enjoining Defendants Salvacion USA and Salvacion International enjoining them from manufacturing and/or selling the products, either directly or indirectly;

c.  enter judgment against Defendants, Salvacion USA and Salvacion International, and in favor of Plaintiff, enjoining Defendants Salvacion USA and Salvacion International from actively inducing others to sell the products, either directly or indirectly;

d.  enter judgment against Defendants, Salvacion USA and Salvacion International, and in favor of Plaintiff, enjoining Defendants

Salvacion USA and Salvacion International from exporting the products, either directly or indirectly;

e.  enter judgment against Defendants, Salvacion USA and Salvacion International, and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorney fees;

f.  enter judgment against Defendants, Salvacion USA and Salvacion International, and in favor of Plaintiff for enhanced damages due to willful infringement of the '802 Patent; and

g.  grant such other and further relief as justice requires.

## COUNT TWO — BREACH OF CONTRACT
### (As to Defendant Peter Cho)

99.  Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

100. Defendant Peter Cho entered into the CDA Agreement (Exhibit 1) with Wahi on March 4, 2019, whereby Trutek agreed to disclose its confidential and proprietary information and trade secrets ("confidential information") to Cho, and in return, Cho agreed to maintain said confidential information in strict confidence and that Trutek would own all unique developments resulting from said confidential information, patentable or not.

101.   Defendant Cho ratified said CDA on May 12, 2019 by incorporating it by reference into an "Agreement For Importation, Marketing, Sales & Distribution of Trutek's NasalGuard® Gel -Tube Product in South Korea." (Exhibit 2.)

102.   Defendant Cho ratified said CDA on November 6, 2019 by incorporating it by reference into an "Agreement For Importation, Marketing, Sales & Distribution of Trutek's NasalGuard® Gel -Tube Product in Greater China and Vietnam."  (Exhibit 3.)

103.   Plaintiff Trutek performed its duties under said CDA.

104.   Defendant Cho breached the terms and conditions of said CDA by disclosing said confidential information to others, by filing a patent application at the USPTO, and by developing and marketing a product that infringes on Trutek's '802 Patent.

105.   Defendant Cho breached the implied warranty of good faith and fair dealing by disclosing said confidential information to others, by filing a patent application at the USPTO, and by developing and marketing a product that infringes on Trutek's '802 Patent.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

a.    enter judgment against Defendant Cho and in favor of Plaintiff for compensatory general damages in amounts to be determined at trial and as are allowed under the statute;

b.    enter judgment against Defendant Cho and in favor of Plaintiff requiring Cho to convey and assign all his rights, title, and interests in all unique developments resulting from said confidential information to Trutek;

c.    enter judgment against Defendant Cho and in favor of Plaintiff requiring Cho to convey and assign all his right, title, and interest in U.S. Patent Application No. 17/576098, continuations therefrom, and all patents issuing therefrom to Trutek;

d.    enter judgment against Defendant Cho and in favor of Plaintiff requiring Cho to convey and assign all his right, title, and interest in International Patent Application No. PCT/US20/55772, continuations therefrom, and all patents issuing therefrom to Trutek;

e.    enter judgment against Defendant Cho and in favor of Plaintiff enjoining Cho from continuing his activities related to all unique developments resulting from said confidential information; and

f.    grant such other and further relief as justice requires.

## COUNT THREE — CONCEALMENT
### (as to Defendant Peter Cho)

106. Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

107. Defendant Peter Cho had a duty to disclose to Trutek that it was making, using, offering to sell, selling, and exporting the Accused Product, which represents a developed improvement to the Confidential and Proprietary Intellectual Property owned by Trutek in violation of the terms and conditions of the CDA entered into by Cho on March 4, 2019.

108. Defendant Peter Cho breached his duty to Plaintiff by not disclosing to Trutek that he was developing, making, using, offering to sell, selling, and exporting the Accused Product.

109. When Plaintiff disclosed its confidential and proprietary information regarding its intellectual property, Plaintiff reasonably relied on the fact that Peter Cho would not develop, make, use, offer to sell, sell, or export any developments or improvements to Trutek's intellectual property.

110. Plaintiff's injury was caused by said non-disclosure, which delayed action that Plaintiff might have taken to enjoin Defendants from selling the Accused Product, which directly diminished sales of Trutek's own products.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

a.  enter judgment against Defendant Cho and in favor of Plaintiff for compensatory general damages in amounts to be determined at trial and as are allowed by law;

b.  enter judgment against Defendant Cho and in favor of Plaintiff for enhanced damages, attorney fees, interest, and costs; and

c.  grant such other and further relief as justice requires.

## COUNT FOUR — CONVERSION
### (as to all Defendants)

111.  Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

112.  The CDA entered into by Peter Cho on March 4, 2019 provides that Trutek "shall have sole, complete and irrevocable rights to all ... Improvements, Inventions, and Patents," patentable or not, resulting from the disclosure of Trutek's confidential and proprietary intellectual property to Cho.

113.  In violation of the terms and conditions of the CDA, Cho, Gaffar, and Yun filed International Patent Application No. PCT/US20/55772, said PCT international patent application representing an invention derived from Trutek's disclosure of its intellectual property.  Cho then caused said PCT international patent application to be assigned to Salvacion USA.  Defendant

Cho and Salvacion USA converted said PCT international patent application, which rightfully belongs to Trutek.

114. In violation of the terms and conditions of the CDA, Cho, Gaffar, and Yun filed U.S. Patent Application No. 17/576,098 at the USPTO, said patent application representing an invention derived from Trutek's disclosure of its intellectual property. Cho, Gaffar, and Yun then caused said U.S. patent application to be assigned to Salvacion USA. Defendants Cho, Gaffar, Yun, and Salvacion USA converted said US patent application, which rightfully belongs to Trutek.

115. The Accused Product, which was developed, manufactured, offered for sale, and sold throughout the world by all defendants was derived from and protected under patents potentially issuing from said PCT international patent application and from said U.S. patent application. The Accused Product and all profits and benefits therefrom belong to Trutek as specified in the Confidential Disclosure Agreement.

116. All Defendants converted the profits and benefits from the sales of the Accused Product in the United States and worldwide.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

a.    enter judgment against Defendants Cho, Gaffar, and Yun in favor of Plaintiff for damages incurred by Plaintiff due to said Defendants' conversion of said PCT international patent application and said U.S. patent application;

b.    enter judgment against Defendant Salvacion USA and in favor of Plaintiff for damages incurred by Plaintiff due to  conversion of said PCT international patent application and said U.S. patent application by Salvacion USA;

c.    in the alternative to Paragraph (b) *supra*, enter judgment against Defendant Salvacion USA and in favor of Plaintiff compelling it to assign said PCT international patent application and said U.S. patent application to Trutek;

d.    enter judgment against all Defendants for conversion of profits and benefits from the sales of the Accused Product in the United States and worldwide; and

e.    grant such other and further relief as justice requires.

## COUNT FIVE — VIOLATION OF 18 U.S.C. § 1832
**Theft of Trade Secrets**
**(as to Cho, Gaffar, Yun, Salvacion USA, Salvacion International)**

117.  Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

118.  Trutek develops and markets products that include nasal gels and nasal sprays that inhibit infection of individuals from inhalation of harmful particles (*e.g.,* viruses, bacteria, and fungi) into the individual's respiratory system.   Although a number of patents have been issued on Trutek's technology, much still remains as trade secrets (*e.g. ,*manufacturing methodology, efficacy, ingredients, level of electrostatic charged necessary and sufficient to be effective, *etc.*),   These trade secret items were never disclosed to the public.   Trutek has maintained and does maintain these items zealously as trade secrets.

119.  In 2019 and 2020, Peter Cho was a principle of Jintec America, Inc., ("Jintec"), a New Jersey corporation.  Jintec's corporate address is the same as that of Salvacion USA.

120.  On March 4, 2019 Peter Cho, having the stated desire for Jintec to become a distributor of Trutek's products in Korea, entered into the CDA (Exhibit 1). That agreement provided that Trutek will disclose its intellectual property technology (including its trade secrets) to Cho, and in consideration Cho will not disclose said technology to third parties or use said technology for any other purpose than to serve as distributor for Trutek's products.

121. In reliance on the terms and conditions of the CDA and Cho's stated intention for Jintec to become Trutek's distributor, Trutek disclosed its technology to Cho.

122. On August 31, 2020, Cho, Gaffar, and Yun filed U.S. Provisional Patent Application No. 63/103,881, which served as a priority document for International Patent Application No. PCT/US20/55772 filed on October 15, 2020, which in turn served as a priority document for U.S. Patent Application No. 17/576,098 filed on January 14, 2022, for "Antiviral Composition and Use of the Same."  The U.S. Patent application was assigned to Salvacion USA.  Said patent applications all utilized trade secrets that Trutek disclosed to Cho.

123. Cho, Gaffar, Yun, and Salvacion USA utilized Trutek's trade secrets in violation of 18 U.S.C. § 1832(a) without permission from Trutek to file the aforementioned patent applications with intent to convert Trutek's trade secrets, that are related to a product used in or intended for use in interstate or foreign commerce to the economic benefit of Salvacion USA and Salvacion International rather than Trutek, and intending or knowing that the offense will injure Trutek.

124. Salvacion USA and Salvacion International began making, offering for sale, selling, and exporting the Asserted Product, which were derived from the

technology in the aforementioned patent applications, and which utilized Trutek's trade secrets.

125. Cho, Gaffar, Yun, Salvacion USA, and Salvacion International conspired with each other in a global enterprise (*i.e.,* the Salvacion Enterprise) in violation of 18 U.S.C. § 1832 (a)(5) to commit offenses described in 18 U.S.C. §§ 1832(a), Paragraphs (1), (2), and (3) and one or more said Defendants performed acts, which were part of the conspiracy.

126. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

   a.    enter judgment against Defendants Cho, Gaffar, Yun, Salvacion USA, and Salvacion International and in favor of Plaintiff for damages as prescribed in 18 U.S.C. § 1832(b); and

   b.    grant such other and further relief as justice requires.

### COUNT SIX — VIOLATION OF N.J.S.A § 56:15-1 *et seq.*
### The New Jersey Trade Secrets Act ("NJTSA")
### (as to Cho, Gaffar, Yun, Salvacion USA, Salvacion International)

127. Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

128. Trutek develops and markets products that include nasal gels and nasal sprays that inhibit infection of individuals from inhalation of harmful

particles (*e.g.,* viruses, bacteria, and fungi) into the individual's respiratory system. Although a number of patents have been issued on Trutek's technology, much still remains as trade secrets (*e.g.,* manufacturing methodology, efficacy, formulae, unpatented inventions, level of electrostatic charged necessary and sufficient to be effective, *etc.*). These trade secret items were never disclosed to the public. Trutek has maintained and does maintain these items zealously as trade secrets.

129. These secrets derive independent economic value to Trutek from not being generally known to, and not being readily ascertainable by proper means to other persons who can obtain economic value from their disclosure or use.

130. On March 4, 2019 Peter Cho, having the stated desire for Jintec to become a distributor of Trutek's products in Korea, entered into the CDA Agreement (Exhibit 1). That agreement provided that Trutek will disclose its intellectual property technology (including its trade secrets) to Cho, and in consideration Cho will not disclose said technology to third parties or use said technology for any other purpose than to serve as distributor for Trutek's products.

131. In reliance on the terms of the Confidential Disclosure Agreement and Cho's stated intention for Jintec to become Trutek's distributor, Trutek disclosed its

technology to Cho.  Cho knew that the information disclosed to him by Trutek contained trade secrets.

132.  Cho had a duty to maintain said trade secrets in confidence and not to use said trade secrets for any purpose other than for Jintec to act as a distributor for Trutek products in Korea, Greater China, and Vietnam.

133.  In breach of that duty and in bad faith, Cho disclosed Trutek's trade secrets to Gaffar and Yun, and used said trade secrets to benefit Salvacion USA and Salvacion International without express or implied permission from Trutek and in violation of the NJTSA.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court enter judgment against Defendants Cho, Gaffar, Yun, Salvacion USA, and Salvacion International and in favor of Plaintiff:

a.  for damages caused by misappropriation as well based as the amount the misappropriating party was unjustly enriched by the misappropriation to the extent that it exceeds the actual loss; and

b.  for punitive damages that are twice the amount of the actual damages;

c.  for reasonable costs and legal fees;

d.  enjoining Defendants from continuing to use Trutek's trade secrets; and

e.  grant such other and further relief as justice requires.

## COUNT SEVEN — UNJUST ENRICHMENT
### (as to all Defendants)

134. Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

135. All Defendants are participants in a global enterprise (the "Salvacion Enterprise") that exploits and receives profits from sales of the Accused Product.

136. Individual Defendants Cho, Gaffar, and Yun receive or are entitled to receive monetary benefits from their participation in the Salvacion Enterprise.

137. The Salvacion Enterprise is liable for the acts of Cho, Gaffar, and Yun based on the principle of *respondeat superior*.

138. Several patent applications (U.S. and international) are developments derived from disclosure of proprietary information by Trutek to Cho.

139. According to the CDA entered into by the parties on March 4, 2019 (Exhibit 1), said patent applications and patents issuing therefrom represent intellectual property rightfully belonging to Trutek.

140. According to the CDA, the Accused Product, and all monies derived from exploitation and sales of the Accused Product by the Salvacion Enterprise belong to Trutek.

141.  Defendants Salvacion USA, Salvacion International, Salvacion Co., Ltd., Salvacion R&D Center, Biosure, and Inmobiliaria La Salvacion, R.D. all profited from the sales of the Accused Product that rightfully belonged to Trutek, and were thus unjustly enriched.

142.  Trutek never received any royalties or monies from the Salvacion Enterprise derived from exploitation and sales of the Accused Product.

143.  The Salvacion Enterprise and all Defendants were unjustly enriched from its exploitation and sales of the Accused Product.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

a.  enter judgment against all Defendants and in favor of Plaintiff requiring Defendants to remit to Trutek all monies derived from their sales and exploitation of the Accused Product; and

b.  grant such other and further relief as justice requires.

## COUNT EIGHT — CIVIL CONSPIRACY
**(as to All Defendants)**

144.  Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

145. Defendants Cho, Gaffar, and Yun made an agreement to file patent applications based on trade secrets misappropriated from Trutek and to develop the Accused Product that infringes Trutek's '802 Patent.

146. All Defendants made an agreement to form the Salvacion Enterprise for the purpose of exploiting and profiting from sales of the Accused Product, which both rightfully belongs to Trutek, and which infringes Trutek's '802 Patent.

147. All Defendants made an agreement to misappropriate Trutek's trade secrets in a tortious effort to develop, patent, make, exploit, sell, and export the Accused Product, which both rightfully belongs to Trutek, and which infringes Trutek's '802 Patent.  In doing so, all Defendants formed an Enterprise to convert monies rightfully due to Trutek, to interfere with Trutek's prospective economic advantage, and to engage in unfair business practices.

148. The tortious acts were committed by the Defendants and the Salvacion Enterprise against the Plaintiff in furtherance of the agreement.

149. Plaintiff suffered economic losses as a result of said tortious acts.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court enter judgment against all Defendants and in favor of Plaintiff:

a.   holding all Defendants jointly and severally liable for damages sustained by Plaintiff as a result of the conspiracy;

b.   awarding lost profits and other damages sustained by Trutek as a result of the conspiracy; and

c.   granting such other and further relief as justice requires.

## COUNT NINE — FRAUD
### (as to All Defendants)

150.  Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

151.  Defendants conducted a fraudulent scheme to extract tribute from Plaintiffs. Defendants willfully and knowingly made, or caused to be made, affirmative misrepresentations of material facts in the furtherance of this scheme. Cho promised Wahi not to disclose or use any of Trutek's intellectual property disclosed to him by Wahi, and he also promised that any developments resulting from Trutek's disclosures to him would belong to Trutek. All Defendants were complicit in Cho's misrepresentations. Trutek relied on Defendants' representations, and they were false. Defenants also willfully and knowingly concealed material facts from Plaintiff. Defendants knowingly and intentionally concealed from Trutek that Defendants were developing, making, offering to sell and selling developments and

improvements to Trutek's intellectual property disclosed to Cho.  Defendants also intentionally and knowingly concealed the fact that they filed patent applications on improvements to Trutek's intellectual property disclosed to Cho.  Defendants knew the falsity of the misrepresentations at the time these misrepresentations were made.  Defendants also knew the material nature of the facts that they willfully concealed from Plaintiff, and that Defendants ought to have disclosed these facts at that time to Plaintiff.  Defendants had superior knowledge not available to Plaintiff; as such, they had the duty to disclose the facts.  Plaintiff relied upon Defendants representations and was unaware of the falsity or misleading nature of the representations.  Plaintiff's reliance was reasonable under the circumstances.   As a result of such reliance, Plaintiff sustained damages.

152. By engaging in the conduct described above, Defendants committed a fraud upon Plaintiff.

153. Moreover, Defendants' wanton conduct was systematic, in reckless disregard of their statutory and other duties, tantamount to criminal indifference to civil obligations, and unconscionable.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court:

d.   enter judgment against Defendants and in favor of Plaintiff for compensatory, punitive, statutory and/or treble damages in amounts to be determined at trial and as are allowed under the statute;

e.   enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions;

f.   enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

g.   grant such other and further relief as justice requires.


**COUNT TEN – VIOLATION OF 18 U.S.C. §§ 1961-1968**
**Racketeer Influenced and Corrupt Organizations Act ("RICO")**
**(As to All Defendants)**

154.   Plaintiff restates every fact and allegation set forth in all preceding paragraphs of this Complaint as if fully set forth herein.

155.   The association of Defendants and others whose identities are known only to the Defendants at this time (cumulatively, the "Conspirators"), constituted an Enterprise (*i.e.,* the Salvacion Enterprise) within the meaning of 18 U.S.C. §1961(c), which Enterprise was engaged in, and whose activities affected, interstate and foreign commerce.  This Salvacion Enterprise was

continuous in that it lasted more than two years, had an ascertainable structure, and was distinct from the predicate offenses alleged herein.

156.   Each Defendant is a person within the meaning of 18 U.S.C. §1961(3).

157.   At all relevant times, Salvacion USA constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, the Salvacion USA was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all relevant times, Defendants held a position in Salvacion USA as well as participated in the operation, management, and directed the affairs of the Salvacion USA.  Salvacion USA, as alleged herein, was not limited to Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity.

158.   At all relevant times, Salvacion International constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, the Salvacion International was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all relevant times,  Defendants held a position in Salvacion International as well as participated in the operation, management, and directed the affairs of the Salvacion International.   Salvacion International, LLC, as alleged herein, was not limited to Defendants'

predicate acts and has activities extending beyond Defendants' racketeering activity.

159.  At all relevant times, Biosure Global constitutes an "Enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).  At all relevant times, Biosure Global was engaged in, and/or its activities affected, interstate commerce and/or foreign commerce within the meaning of 18 U.S.C. § 1962(c).  At all relevant times, Defendants held a position in Biosure Global as well as participated in the operation, management, and directed the affairs of Biosure Global. Biosure Global as alleged herein, was not limited to Defendants' predicate acts and has activities extending beyond Defendants' racketeering activity.

160.  Defendant Cho, is one of the willful, active participates in the Salvacion Enterprise.  He is a co-founder of Salvacion USA, and is an owner/officer of some of the other related corporate enterprises, was in charge of its day-to-day operations.  As such, he was one of the masterminds of the Salvacion Enterprise who set up, orchestrated and supervised the entire racketeering scheme at issue.   While he was not the only mastermind, the other Conspirators acted through various corporate entities, and they functioned with the same intent.

161.  Defendant Gaffar is one of the willful, active participates in the Salvacion Enterprise.  He is the co-founder of Salvacion USA, Inc. and is an owner/officer of some of the other related corporate enterprises, was in charge of its day-to-day operations.  As such, he was one of the masterminds of the Salvacion Enterprise who set up, orchestrated and supervised the entire racketeering scheme at issue.  While he was not the only mastermind, the other Conspirators acted through various corporate entities, and they functioned with the same intent.

162.  Defendant Yun is one of the willful, active participates in the Salvacion Enterprise.  He is the co-founder of Salvacion USA, Inc. and is an owner/officer of some of the other related corporate enterprises, was in charge of its day-to-day operations.  As such, he was one of the masterminds of the Salvacion Enterprise who set up, orchestrated and supervised the entire racketeering scheme at issue.  While he was not the only mastermind, the other Conspirators acted through various corporate entities, and they functioned with the same intent.

163.  The remaining Defendants are corporate entities through which the Salvacion Enterprise functioned, and through which the underlying racketeering scheme was carried out.

164.  Defendants' scienter is established from their pattern and practices at issue

and the centrality of these practices to their entire business.

165.   Defendants participated and conspired with others (including others whose identities are known only to the Defendants at this time) to participate, in the of the aforementioned Salvacion Enterprise through a pattern of racketeering activity, as more fully set forth below, all in violation of 18 U.S. C. §1962(C).

166.   Cho and Wahi entered into a binding agreement (the CDA) whereby Wahi would disclose Trutek's confidential information to Cho, and in return, Cho would not disclose said confidential information to any third party nor would Cho use it for any purpose unless authorized to do so in writing by Wahi. Cho further agreed that Trutek will have "sole and irrevocable rights to all such improvements, inventions and Patents without any further verbal or written authorization from" Trutek.

167.   Relying on assurances from Cho not to disclose or use Trutek's proprietary intellectual property, including Trutek's trade secrets, Trutek entered into exclusive distribution agreements with Jintec for South Korea, Vietnam, and Greater China.

168.   Wahi disclosed its confidential and proprietary information and technology to Cho.  Shortly after Trutek entered into said distribution agreements with Jintec, in a scheme to defraud Trutek by converting Trutek's intellectual

property, Cho disclosed Trutek's confidential information to others, and used it for his own purposes without prior authorization from Wahi.

169. In furtherance of his scheme to defraud Trutek, Cho became involved as a principal of a company that produces a competitive product based on Trutek's technology.

170. In furtherance of his scheme to defraud Trutek, Cho failed to honor his contractual obligation by allowing patent applications for Trutek's technology to be filed electronically at the USPTO in his name and to be assigned to Salvacion USA instead of to Trutek.  Filing of the patent applications and assignment to Salvacion USA was performed over the Internet using electronic communications.

171. These actions by Cho constituted wire fraud as defined in 18 U.S.C. § 1343.

172. In furtherance of his scheme to defraud Trutek, Cho knowingly and intentionally converted Trutek's proprietary technology for his own purposes and stole Trutek's trade secrets for his own purposes.

173. In furtherance of his scheme to defraud Trutek, Cho knowingly conspired with other individuals and companies within the Salvacion Enterprise to utilize Trutek's proprietary technology for their own profit.

174. In furtherance of his scheme to defraud Trutek, Cho knowingly and willfully

induced those within the Salvacion Enterprise to infringe upon the claims of Trutek's '802 Patent.

175.  In a scheme to defraud Trutek, Gaffar knowingly conspired with Cho allowing patent applications for Trutek's technology to be filed electronically at the USPTO in his name and to be assigned to Salvacion USA instead of to Trutek.  Filing of the patent applications and assignment to Salvacion USA was performed over the Internet using electronic communications.

176.  These actions by Gaffar constituted wire fraud as defined in 18 U.S.C. § 1343.

177.  In furtherance of their scheme to defraud Trutek, Gaffar knowingly conspired with Cho to utilize Trutek's proprietary confidential information to make, use, and sell a product in the United States and worldwide that infringes on Trutek's '802 Patent in violation of 35 U.S.C. § 271(a).

178.  In furtherance of their scheme to defraud Trutek, Gaffar was complicit with Cho in developing the Covixyl product and in filing a patent application for the same.  The product and the patent application represent improvements over Trutek's proprietary confidential information, and they rightfully belong to Trutek.

179.  In furtherance of their scheme to defraud Trutek, Gaffar knowingly

conspired with other individuals and companies within the Salvacion Enterprise to utilize Trutek's proprietary technology for their own profit.

180. In furtherance of their scheme to defraud Trutek, Gaffar knowingly and willfully induced those within the Salvacion Enterprise to infringe upon the claims of Trutek's '802 Patent.

181. In furtherance of their scheme to defraud Trutek, Yun was complicit with Cho in developing the Covixyl product, in filing patent applications at the USPTO for the same in his name, and in assigning said patent applications to Salvacion USA.   The product and the patent application represent improvements over Trutek's proprietary confidential information, and they rightfully belong to Trutek.   Filing said patent applications at the USPTO and assigning said patent applications to Salvacion USA was done electronically over the Internet.

182. These actions by Yun constituted wire fraud as defined in 18 U.S.C. § 1343.

183. In furtherance of their scheme to defraud Trutek, Yun knowingly conspired with other individuals and companies within the Salvacion Enterprise to utilize Trutek's proprietary technology for their own profit.

184. In furtherance of their scheme to defraud Trutek, Yun knowingly and willfully induced those within the Salvacion Enterprise to infringe upon the claims of Trutek's '802 Patent.

185.   Salvacion USA infringes the claims of the '802 Patent by making, using, and selling an infringing product Covixyl in violation of 35 U.S.C. § 271(a).

186.   Infringement of the '802 Patent by Salvacion USA is willful because at least one of its principals was aware of the '802 Patent and its technology before said infringement occurred.

187.   In furtherance of their scheme to defraud Trutek, Salvacion USA knowingly induced others to infringe on the claims of the '802 Patent.

188.   In furtherance of their scheme to defraud Trutek, Salvacion USA knowingly conspired with other entities within the Salvacion Enterprise to profit from technology that rightfully belongs to Trutek and not to Salvacion USA.

189.   In furtherance of the scheme to defraud Trutek, Salvacion USA intentionally and fraudulently claimed publicly that it had the right to market the Accused products.

190.   In furtherance of the scheme to defraud Trutek, Salvacion International infringes the claims of the '802 Patent by making, using, and selling an infringing product Covixyl in violation of 35 U.S.C. § 271(a).

191.   Infringement of the '802 Patent by Salvacion International is willful because at least one of its principals was aware of the '802 Patent and its technology before said infringement occurred.

192.   In furtherance of the scheme to defraud Trutek, Salvacion International

knowingly conspired with other entities within the Salvacion Enterprise to profit from technology that rightfully belongs to Trutek and not to Salvacion International.

193. In furtherance of the scheme to defraud Trutek, Salvacion USA and International sold Covixyl products to customer end-users throughout the entire United States over the Internet.

194. In furtherance of the scheme to defraud Trutek, payments for the sales to the members of the Salvacion Enterprise were executed *via* wire communications.

195. These actions by Salvacion USA and Salvacion International constituted wire fraud as defined in 18 U.S.C. § 1343.

196. In furtherance of the scheme to defraud Trutek, deliveries of the Covixyl products to customer end-users were made using United States mail services.

197. These actions by Salvacion USA and Salvacion International constituted mail fraud as defined in 18 U.S.C. § 1341.

198. As an instance of sale to end users, Nitin Kumar and Keith Altman purchased Covixyl products from the Salvacion Enterprise, and paid for these products over the Internet. Delivery of said products to these individuals was made using United States mail services.

199. These actions by Salvacion USA and Salvacion International constituted

wire fraud as defined in 18 U.S.C. § 1343 and mail fraud as defined in 18 U.S.C. § 1841.

200. In furtherance of the scheme to defraud Trutek, Biosure Global intentionally conspired with other entities within the Salvacion Enterprise to profit from technology that rightfully belongs to Trutek and not to Biosure Global.

201. In furtherance of the scheme to defraud Trutek, Each member of the Salvacion Enterprise conspired with all other members to deprive Trutek of its technology.    The members of the Salvacion Enterprise intentionally, knowingly, and fraudulently advertised electronically online offering to sell a product that it did not own and that belongs to Trutek.   When they did sell their product rightfully belonging to Trutek, they accepted payment for their fraudulent activities electronically.

202. Each participant knew, expected, reasonably foresaw, and intended that the facilities of their actions affecting interstate and foreign commerce would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

203. The Conspirators willfully and with intent to mislead concealed material facts and made affirmative misrepresentations of material facts to Plaintiff.

204. Plaintiff relied upon Defendants; misrepresentations, and such reliance was reasonable.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court enter judgment against all Defendants and in favor of Plaintiff:

    a.  holding all Defendants jointly and severally liable for damages sustained by Plaintiff as a result of the conspiracy;

    b.  for compensatory, punitive, statutory, and/or treble damages in amounts to be determined at trial and as allowed under the statute;

    c.  requiring Defendants to pay over and account to Plaintiff for all gains, profits, and advantages derived from sales of the Covixyl and related products within the United States and all foreign countries;

    d.  enjoining Defendants from manufacturing and/or selling Covixyl and related products indefinitely and in accordance with the signed CDA and '802 Patent;

    e.  enjoining Defendants from actively inducing others to make or sell the Covixyl and related products;

    f.  prohibiting Defendants other wrongful actions;

    g.  awarding all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

    h.  granting such other and further relief as justice requires.

## **DEMAND FOR DISCOVERY OF INSURANCE COVERAGE**

Pursuant to Defendants' discovery obligations, demand is made that all Defendants disclose to the Plaintiff whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff with true copies of those insurance agreements or policies, including, but not limited to, any and all declarations sheets.  This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues triable of right by a jury in this action.


Dated:  July 11, 2023                    Respectfully submitted,

                                         /s/ Solomon Radner
                                         Solomon Radner (NJ SBN 283502018)
                                         LAW OFFICE OF KEITH ALTMAN
                                         33228 West 12 Mile Road, Suite 375
                                         Farmington Hills, MI 48334
                                         Telephone: (248) 987-8929
                                         Facsimile:  (248) 213-9907
                                         *solomonradner@kaltmanlaw.com*