# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TRUTEK CORP.,

              Plaintiff,

     v.

YEONG WAN CHO (a.k.a. PETER CHO, ET AL.,

              Defendants.

Civil Action No.: 2:23– cv-3709

**Document Electronically Filed**

Motion Day: November 6, 2023

## DEFENDANT PETER CHO'S MEMORANDUM
## <u>SUPPORTING HIS RULE 12(b)(6) MOTION TO DISMISS</u>

LADDEY, CLARK & RYAN, LLP
Thomas N. Ryan (018951985)
Thomas J. White (320372020)
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871-2600
Telephone: (973) 729-1880;
Facsimile: (973) 729-1224
tryan@lcrlaw.com
twhite@lcrlaw.com

*Attorneys for Defendants Salvacion,
USA, Inc.; Salvacion Co., LTD.; Yeong
Wan Cho (aka Peter Cho); Salvacion
R&D Center; Salvacion International,
LLC; Sei Young Yun; Biosure Global, Ltd.*

BRADLEY ARANT BOULT CUMMINGS LLP
Jason E. Fortenberry (*pro hac vice*)
Jonathan M. Barnes (*pro hac vice*)
188 East Capitol Street, Suite 1000
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
jfortenberry@bradley.com
jbarnes@bradley.com

Jeffrey D. Dyess (*pro hac vice*)
Benn C. Wilson (*pro hac vice*)
1819 5th Avenue North
Birmingham, Alabama
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jdyess@bradley.com
bcwilson@bradley.com

*Attorneys for Defendants Salvacion,
USA, Inc.; Salvacion Co., LTD.; Yeong
Wan Cho (aka Peter Cho); Salvacion
R&D Center; Salvacion International,
LLC; Sei Young Yun; Biosure Global, Ltd.*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

Table of Authorities ............................................................................................................ ii

Introduction ...................................................................................................................... 1

Background ...................................................................................................................... 1

Standard of Review .......................................................................................................... 4

Argument ........................................................................................................................ 6

I.     Trutek's claim for breach of an implied covenant of good faith and fair dealing claim fails as a matter of law ...................................................... 6

II.    Trutek's breach of contract claim, in so far as it seeks ownership of a patent application, fails to state a claim. .................................................. 7

III.   Trutek's breach of contract claim, in so far as it seeks a permanent injunction, fails to state a claim. ....................................................... 7

IV.   Trutek has failed to state a claim for concealment. ............................... 8

V.    Trutek has failed to state a claim for conversion. ................................. 9

VI.   Trutek has failed to state a claim for theft of trade secrets under Federal law. .............................................................................................. 12

VII.  Trutek has failed to state a claim for theft of trade secrets under New Jersey law. .................................................................................. 15

VIII. Trutek's claim for unjust enrichment fails as a matter of law. ........... 17

IX.   Trutek has failed to state a claim for civil conspiracy. ....................... 17

X.    Trutek has failed to state a claim for fraud. ........................................ 23

XI.   Trutek has failed to state a claim for a RICO violation. ...................... 24

Conclusion .................................................................................................................... 28

Certificate of Service .................................................................................................... 30

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&P Tech., Inc. v. Lariviere*,
   2017 WL 6606961 (S.D. Ohio Dec. 27, 2017) ........................................................14

*Air Express Int'l v. Log-Net, Inc.*,
   2016 WL 5334659 (D.N.J. Sept. 22, 2016) ............................................................16

*Anderson v. Modica*,
   4 N.J. 383 (1950) ....................................................................................................23

*Annulli v. Panikkar*,
   200 F.3d 189 (3d Cir. 1999), *abrogated on other grounds in Forbes v.*
   *Eagleson*, 228 F.3d 471 (3d Cir. 2000)....................................................................24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................4

*Austar International Limited v. AustarPharma LLC*,
   425 F. Supp. 3d 336 (D.N.J. 2019) .........................................................................10

*Banco Popular N. Am. v. Gandi*,
   184 N.J. 161 (2005) ................................................................................................23

*Baraka v. McGreevey*,
   481 F.3d 187 (3d Cir. 2007)......................................................................................5

*Baxt v. Liloia*,
   155 N.J. 190 (1998) ..................................................................................................8

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
   157 F. Supp. 3d 407 (D.N.J. 2016) ...................................................................13, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................... *passim*

*Board of Educ., Asbury Park v. Hoek*,
   183 A.2d 633 (N.J. 1962)........................................................................................18

*Cameco, Inc. v. Gedicke*,
   690 A.2d 1051 (N.J. Super. Ct. App. Div.1997)....................................................10

*Chi. Title Ins. Co. v. Ellis*,
   978 A.2d 281 (N.J. App. Div. 2009)........................................................................10

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*,
   912 F. Supp. 747 (D.N.J. 1995) .................................................................20

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*,
   83 F. Supp. 2d 689 (E.D. Va. 2000) ...........................................................19

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)........................................................................5

*Corestar Int'l Pte, Ltd. v. LPB Commc'n*,
   513 F. Supp 2d 107 (D.N.J. 2007) ...............................................................9

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989).........................................................................6

*Crescenzo 1, L.P. v. Deutche Bank Nat'l Tr. Co.*,
   No. 3:17-CV-1018-CAB-JLB, 2017 WL 3732013 (S.D. Cal. Aug. 30, 2017) .....................25

*DeRobbio v. Cent. Reg'l Emps. Ben. Fund v. Cephalon, Inc.*,
   2009 WL 3245485 (D.N.J. Oct. 7, 2009).......................................................23

*Duquesne Light Co. v. Westinghouse Elec. Co.*,
   6 F.3d 604 (3d Cir. 1995) .............................................................................8

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006).......................................................................................7

*Enrunda Trading Co. v. MTM Trading LLC*,
   2018 WL 11241079 (D.N.J. Mar. 29, 2018)...................................................6

*Feingold v. Graff*,
   516 F. App'x 223 (3d Cir. 2013) ...............................................................5, 27

*G&F Graphic Servs. v. Graphic Innovators, Inc.*,
   18 F. Supp. 3d 583 (D.N.J. 2014) .................................................................9

*G.K. Las Vegas Limited P'ship v. Simon Property Group, Inc.*,
   460 F. Supp. 2d 1222 (D. Nev. 2006).........................................................25

*Givaudan Fragrances Corp. v. Krivda*,
   2013 WL 5781183 (D.N.J. Oct. 25, 2013) (New Jersey claim) ...................16

*Gunter v. Ridgewood Energy Corp.*,
   32 F. Supp. 2d 166 (D.N.J. 1998) ...............................................................24

*Holt v. United States*,
   1973 WL 614 (D.D.C. Aug. 23, 1973) .........................................................10

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
  2012 WL 5554543 (D.N.J. Nov. 14, 2012) ...................................................16

*Hunter v. Sterling Bank*,
  588 F. Supp. 2d 645 (E.D. Pa. 2008) ...........................................................11

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
  361 F.3d 1355 (Fed. Cir. 2004)....................................................................19

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
  98 F. Supp. 2d 480 (S.D.N.Y. 2000)............................................................26

*Kaul v. Christie*,
  372 F. Supp. 3d 206 (D.N.J. 2019) ..............................................................26

*LaPlace v. Briere*,
  962 A.2d 1139 (N.J App. Div. 2009)..............................................................9

*Lightning Lube, Inc. v. Witco Corp.*,
  4 F.3d 1153 (3d Cir. 1993).............................................................................24

*Mallet & Co. Inc. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) ...............................................................12, 14, 22

*Meisels v. Fox Rothschild LLP*,
  240 N.J. 286 (2020) ......................................................................................11

*Michod v. Walker Magnetics Group, Inc.*,
  115 F.R.D. 345 (N.D. Ill. 1987)....................................................................26

*Microbilt Corp. v. Bail Integrity Sols., Inc.*,
  2019 WL 6310202 (D.N.J. Nov. 25, 2019) ..................................................13

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
  331 F.3d 406 (3d Cir. 2003)...............................................................18, 19, 20

*N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.), Inc.*,
  449 N.J. Super. 542 (App. Div. 2017) ..........................................................17

*Nelson Brothers Professional Real Estate LLC v. Beau Jaussi et al.*,
  2017 WL 8220703 (C.D. Cal. Mar. 23, 2017)..............................................13

*Oakwood Labs. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021)....................................................................12, 13

*P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*,
  2007 WL 708978 (D.N.J. Mar. 5, 2007).......................................................16

*Patel v. Soriano*,
848 A.2d 803 (N.J. App. Div. 2004) ........................................................20

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
998 F.2d 1192 (3d Cir. 1993) .................................................................14

*Phillips v. Cty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .....................................................................5

*Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*,
2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) ........................................13

*Pickett v. Lloyd's & Peerless Ins. Agency, Inc.*,
621 A.2d 445 (N.J. 1993) ..........................................................................6

*Rainville Co. v. Consupak, Inc.*,
407 F. Supp. 221 (D.N.J. 1976) ..............................................................18

*US. ex ret. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
812 F.3d 294 (3d Cir. 2016) ................................................................5, 27

*RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*,
861 F. Supp. 2d 436 (D.N.J. 2012) .........................................................23

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002) ......................................................................5

*Rohm and Haas Co. v. Adco Chemical Co.*,
689 F.2d 424 (3d Cir. 1982) ....................................................................16

*Semiconductor Energy Lab'y Co. v. Samsung Elecs*. Co.,
4 F. Supp. 2d 473 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000),
*amended* (Apr. 5, 2000) .........................................................................26

*Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*,
204 F.3d 1368 (Fed. Cir. 2000) ...............................................................26

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
742 F.2d 786 (3d Cir. 1984) ....................................................................25

*Shippitsa Ltd. v. Slack*,
2019 WL 3304890 (N.D. Tex. July 23, 2019) ........................................26

*Slimm v. Bank of Am. Corp.*,
2013 WL 1867035 (D.N.J. May 2, 2013) ...............................................24

*Speedfit LLC v. Woodway USA, Inc.*,
226 F. Supp. 3d 149 (E.D.N.Y. 2016) .....................................................11

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
  271 F. Supp. 3d 835 (E.D. Va. 2017) ............................................................13, 19

*StrikeForce Techs., Inc. v. WhiteSky, Inc.*,
  2013 WL 3508835 (D.N.J. 2013) ........................................................................10

*Talge v. United States*,
  229 F. Supp. 836 (W.D. Mo. 1964) .....................................................................10

*Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*,
  2009 WL 4722679 (N.D. Cal. Dec. 9, 2009) .......................................................10

*Trico Equip., Inc. v. Manor*,
  2011 WL 705703 (D.N.J. Feb. 22, 2011) .............................................................16

*Trutek Corp. v. Jintec America, Inc.*,
  SOM-L426-21 (Superior Court of New Jersey Law Division: Somerset
  County) ...................................................................................................................3

*University of W. Va. v. VanVoorhies*,
  278 F.3d 1288 (Fed. Cir. 2002).............................................................................26

*USX Corp. v. Prime Leasing Inc.*,
  988 F.2d 433 (3d Cir. 1993)....................................................................................6

*Vega v. Ocwen Fin. Corp.*,
  2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) .....................................................25

*Viviano v. CBS, Inc.*,
  251 N.J. Super. 113 (App. Div. 1991) ....................................................................8

*VRG Corp. v. GKN Realty Corp.*,
  135 N.J. 539 (1994) ..............................................................................................17

*Zwoyer v. Hackensack Tr. Co.*,
  160 A.2d 156 (N.J. App. Div. 1960)......................................................................10

**Statutes**

18 U.S.C. § 1341 .........................................................................................................24

18 U.S.C. § 1343 .........................................................................................................25

18 U.S.C. § 1832 .........................................................................................................12

18 U.S.C. § 1832(a)(5).................................................................................................13

18 U.S.C. § 1832(b) .....................................................................................................13

18 U.S.C. § 1839(3) ..................................................................................................12

18 U.S.C. § 1839(3)(B) ............................................................................................14

18 U.S.C. § 1839(6)(B) ............................................................................................14

18 U.S.C. § 1961(1)(B) ............................................................................................24

18 U.S.C. § 1961 *et seq.* ....................................................................................*passim*

18 U.S.C. § 1962 ......................................................................................................24

18 U.S.C. § 1962(1)(B) ............................................................................................24

18 U.S.C. § 1962(a) ..................................................................................................24

18 U.S.C. § 1962(b) ..................................................................................................24

18 U.S.C. § 1962(c) ..................................................................................................24

18 U.S.C. § 1962(d) ..................................................................................................24

Internal Revenue Code ..............................................................................................10

New Jersey Product Liability Act ...............................................................................6

NJ Rev Stat § 56:15-2 ..........................................................................................16, 17

Uniform Commercial Code ........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................................................20

Fed. R. Civ. P. 8(a)(2) ...........................................................................................5, 20

Fed. R. Civ. P. 9(b) ...........................................................................................5, 25, 27

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 5, 6

**Introduction**

This is the second lawsuit Trutek Corp. has filed based on a prior commercial relationship with Peter Cho.

Cho is the President of Jintec America, Inc., which has been defending against Trutek's first lawsuit since March 2021. Learning that Cho has a separate business venture and has been part of the recent launch of a product called COVIXYL, Trutek now aims at attacking Cho individually and as many entities as possible that are purportedly involved with COVIXYL.

At bottom, this lawsuit is rooted in Trutek's unfounded resentment toward Cho. Trutek's Complaint attempts to usurp intellectual property conceived by others long before Ashok Wahi of Trutek and Cho signed the Confidential Disclosure Agreement (CDA), which Trutek says Cho breached. While Trutek's Complaint may state a claim for an express breach of contract against Cho, all other claims against Cho should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**Background**

Trutek's Complaint is centered on a former commercial relationship between Trutek and Jintec America, Inc., which has now resulted in two lawsuits. A brief overview is helpful to understand *this* lawsuit, which is why Trutek attached both contracts it had with Jintec to the Complaint. *See* Docs. 1-3 & 1-4.

Trutek developed a product called NasalGuard and received a patent on technology related to it, Trutek's '802 Patent. In early 2019, Jintec and Trutek began exploring a possible commercial relationship under which Jintec would market and distribute for retail sales NasalGuard in South Korea. On March 4, 2019, Jintec and Trutek executed the CDA (Doc. 1-2), under which they memorialized their desire to continue discussing a possible business relationship.

1

Jintec learned that the NasalGuard product contained ingredients in amounts that exceeded Korean regulations. Accordingly, to proceed with their intended business relationship, Trutek had to provide a reformulated NasalGuard product for Jintec to market and sell in Korea. Trutek advised Jintec that the reformulation of the product required a "substantial revision" and Trutek had to select a "completely new preservative system" in light of Korea's requirements.

While Trutek reformulated its NasalGuard product, Jintec worked at securing the appropriate trademark registrations to be able to market and distribute the forthcoming reformulated NasalGuard product in Korea. Those foreign trademarks were registered and assigned to Trutek at Jintec's own expense.

On May 12, 2019, Jintec and Trutek executed an agreement titled "For Importation, Marketing, Sales & Distribution of Trutek's NasalGuard® Gel-Tube Product in South Korea," (SK Agreement). Doc. 1-3. Jintec paid Trutek a **$75,000** licensing fee under the SK Agreement. The SK Agreement included Trutek's obligation to reformulate NasalGuard for sale in Korea. Jintec expended substantial effort in obtaining trademarks for the reformulated NasalGuard products (menthol scented and unscented) to be sold in Korea and began working on securing partners in Korea to distribute the product once it was approved for retail sale.

On July 15, 2019, Jintec submitted an initial purchase order to Trutek for 250,000 reformulated NasalGuard units for $617,500. Jintec made an initial installment payment on July 17, 2019 in the amount of **$122,208.68.**

Simultaneously, Jintec and Trutek began discussions about the marketing and distribution of NasalGuard in Greater China and Vietnam. And on November 6, 2019, the parties executed an agreement titled "For Importation, Marketing, Sales & Distribution of Trutek's NasalGuard® Gel-

Tube Product in Greater China and Vietnam." Doc. 1-4. Jintec paid Trutek a **$300,000** licensing fee pursuant to the China Agreement.

Then, in December 2019—well before the expiration of the two-year shelf life of the reformulated products—Jintec reported to Trutek that the unscented product was exhibiting an unpleasant odor. Jintec also discovered that the reformulated products had a discoloration that was inconsistent with both the product's labeling, certificates of analyses from the manufacturer, and the original product. The malodor and discoloration were latent defects caused by Trutek's botched reformulation, which rendered the product unmarketable in Korea and Greater China.

Further, in March 2020, Covid-19 erupted worldwide, completely disrupting the global market. During the pandemic, travel restrictions, mask mandates, and other unforeseeable government actions made it impossible and/or impracticable for Jintec to distribute and/or market the products from New Jersey to South Korea and Greater China.

In light of the uncovered latent defects and the global pandemic, and Trutek's unwillingness to help find a solution to these issues, Jintec did not submit additional purchase orders for the NasalGuard product.

Trutek received, in total, **$895,683.15** from Jintec. Jintec never sold a single unit of the NasalGuard product. Notwithstanding the substantial amount of money Trutek has been paid by Jintec, Trutek, greed-hungry for more money that it is not owed, filed in March 2021 breach of contract action against Jintec seeking **$2,000,000** for unissued purchase orders for products that Trutek never had manufactured and never had delivered to Jintec. *Trutek Corp. v. Jintec America, Inc.*, SOM-L426-21, (Superior Court of New Jersey Law Division: Somerset County). At bottom, Trutek wanted all the money it was expecting to make on the term length of the distribution

agreements despite the latent defects it caused and the impossibilities caused by the global pandemic.

Jintec filed counterclaims and affirmative defenses related to the latent defects and the global pandemic. Jintec served expert reports related to reformulation and marketing in July 2023. The current discovery end date is October 31, 2023. No trial has been set.

Now facing the serious prospect of failure on its claims against Jintec, Trutek filed this Complaint to set a new battleground in which to entrench Cho.

Instead of taking Cho head on, Wahi has elected to ensnare objectively innocent third-party individuals and entities asserting spurious claims of intentional torts, fraud, and conspiracy against them supported by nothing more than conclusory assertions.

At bottom, the technology operationalized in COVIXYL was largely developed by Abdul Gaffar and Sei Young Yun independent of Cho, and before Cho ever signed the CDA. Trutek's Complaint, except perhaps a limited patent dispute and an express breach of contract claim, is defectively pled.

## Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the plausibility standard "does not impose a probability requirement,

it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up).

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

In a case alleging conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8).

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *US. ex ret. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed not only to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, [but] to [also] safeguard defendants against spurious

charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (cleaned up).

**Argument**

Trutek has lodged nine counts, some containing multiple claims, against Cho in his individual capacity. Cho moves under Rule 12(b)(6) to dismiss all claims asserted against him, except the express breach of contract claim for compensatory damages.

## I.    Trutek's claim for breach of an implied covenant of good faith and fair dealing claim fails as a matter of law.

In Count Two, which is labeled "Breach of Contract", Trutek also alleges that "Cho breached the implied warranty[1] of good faith and fair dealing." Doc. 1, ¶ 105. "[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." *Pickett v. Lloyd's & Peerless Ins. Agency, Inc.,* 621 A.2d 445, 450 (N.J. 1993).

Fatal to Trutek's claim, "a claim for breach of implied covenants cannot pertain to any matter specifically covered by the express covenants between the parties." *Enrunda Trading Co. v. MTM Trading LLC*, 2018 WL 11241079, at *3 (D.N.J. Mar. 29, 2018) (granting Rule 12(b)(6) motion to dismiss claim for breach of implied covenant that was based on the same issue related to the claim for breach of express contract term). Implied covenants and express terms of a contract are necessarily mutually exclusive. *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993).  The law will imply a contractual term only for covenants omitted. *Id.*

Here, Trutek alleges that Cho's same actions breached both an *express* contract term (Doc. 1, ¶ 104), *and* an *implied* covenant (Doc. 1, ¶ 105). Accordingly, the Court should dismiss Trutek's claim for breach of implied warranty with prejudice.

---

[1] This motion assumes that Trutek's word choice "warranty" is an error and that Trutek is not alleging a theory under the New Jersey Product Liability Act.

II.  **Trutek's breach of contract claim, in so far as it seeks ownership of a patent application, fails to state a claim.**

Trutek's alleges that Cho breached the CDA by filing a United States and an international patent application and seeks as relief a judgment "requiring Cho to convey and assign" the patent applications to Trutek. Doc. 1, ¶¶ 104, 105(c)–(d). Trutek's requested relief fails as pled because Trutek also alleges that the patent applications have been assigned to Salvacion USA. *Id.* at ¶ 114. Accordingly, even assuming a breach of contract (which Cho disputes), Cho in his individual capacity cannot "convey and assign" the patent applications to Trutek because they are not within his possession or control to convey or assign.

III.  **Trutek's breach of contract claim, in so far as it seeks a permanent injunction, fails to state a claim.**

Trutek alleges that Cho breached the CDA by developing and marketing COVIXYL, which Trutek says infringes its '802 Patent and derived from the confidential information Trutek disclosed to Cho. Doc. 1, ¶ 104. Trutek seeks a judgement "enjoining Cho from continuing his activities" related to COVIXYL. *Id.* at ¶ 105(e).

To be entitled to a permanent injunction, a plaintiff must prove: "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages," prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Trutek's requested injunction fails as a matter of law because Trutek has not alleged that it is suffering an irreparable injury or that remedies available at law are inadequate. Instead, Trutek pled that it *is* entitled to compensatory damages for the same breach. Doc. 1, ¶ 105(a). So not only has Trutek failed to state a claim for injunctive relief, it has also pled its injunction claim out of court.

**IV.    Trutek has failed to state a claim for concealment.**

Trutek alleges that Cho had a duty under the CDA to disclose that he was "developing, making, using, offering to sell, selling, and exporting" COVIXYL. Doc. 1, ¶ 107. Trutek further alleges that in violation of the CDA, Cho concealed that he was doing such things. *Id.* at ¶ 108. Trutek asserts that Cho's actions constitute tortious concealment. *Id.* (Count Three).

Tortious concealment was first recognized as a cause of action in *Viviano v. CBS, Inc.*, 251 N.J. Super. 113, 123–26 (App. Div. 1991). It is analogous to a claim for "spoliation of evidence," and can accurately be called "concealment of evidence." *Viviano*, 251 N.J. Super. at 125–126. To prevail on a tortious concealment claim, a plaintiff must prove: (1) the defendant had a legal obligation to disclose the evidence; (2) the evidence was material to the plaintiff's case; (3) the plaintiff could not have readily obtained the evidence without disclosure by the defendant; (4) there was intentional nondisclosure by the defendant; and (5) the plaintiff was harmed by relying on the nondisclosure. *Baxt v. Liloia*, 155 N.J. 190, 206 (1998). The "textbook case for tortious concealment" is where a defendant is legally required to respond to discovery requests and holds back material evidence the requesting party needs to prove its case. *Id.*

Trutek's allegations fail to state a claim for tortious concealment. The purported disclosure obligation arises out of the CDA, not one related to litigation discovery. Doc. 1, ¶ 107. In short, Trutek's tortious concealment claim is identical to its breach of contract claim. Because Trutek's tortious concealment claim is unrelated to a legal obligation to respond to a formal discovery request such as a subpoena, interrogatory, or request for production, it fails to state a claim.

Separately, Trutek's tortious concealment claim also fails as a matter of law under New Jersey's economic loss doctrine. A plaintiff is barred "from recovering in tort economic losses to which their entitlement only flows from contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 6 F.3d 604, 618 (3d Cir. 1995). This doctrine "functions to eliminate recovery on a contract claim

in tort clothing." *G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014).

Trutek nominally recasts its claim for breach of contract as a tortious concealment claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 107. In short, the damages Trutek alleges from the tortious concealment claim flow from the alleged breach of the contract itself. Trutek's tortious concealment claim is a contract claim in tort clothing and is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

### V.   Trutek has failed to state a claim for conversion.

To prevail on a claim for conversion, a plaintiff must prove: "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Corestar Int'l Pte, Ltd. v. LPB Commc'n*, 513 F. Supp 2d 107, 127 (D.N.J. 2007).

Trutek alleges that Cho converted a United States and an international patent application related to COVIXYL by assigning the patent applications to Salvacion USA, Inc. Doc. 1, ¶¶ 113, 114. Trutek further alleges that Cho converted the "profits and benefits" from COVIXYL by selling the product. *Id.* at ¶ 116. Trutek's allegations fail to state a claim for conversion for five independent reasons.

***First***, the economic loss doctrine bars Trutek's conversion claim. "Conversion is an intentional tort." *LaPlace v. Briere*, 962 A.2d 1139, 1145 (N.J App. Div. 2009). Trutek nominally recasts its claim for breach of contract as a conversion claim. *Compare* Doc. 1, ¶ 104 *with* ¶¶ 113–116. Indeed, Trutek explicitly alleges that Cho's actions converted the patent applications "in violation of the terms and conditions of the CDA." *Id.* at ¶¶ 113–114. Trutek also alleges the "profits and benefits" were "converted" because they were owed to Trutek under the CDA. *Id.* at

¶¶ 115–116. Accordingly, Trutek's conversion claim is a contract claim in tort clothing and is therefore barred by the economic loss doctrine.

**Second**, it is well established New Jersey law that a conversion claim for intangible property cannot stand. *See, e.g., Cameco, Inc. v. Gedicke*, 690 A.2d 1051 (N.J. Super. Ct. App. Div.1997); *see also StrikeForce Techs., Inc. v. WhiteSky, Inc.*, 2013 WL 3508835, *8 (D.N.J. 2013). That is because conversion claims are limited to "chattel." *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281 (N.J. App. Div. 2009). Intellectual property is intangible property. *Strikeforce*, 2013 WL 3508835 at *8.

Here, Trutek says the patent applications and the profits and benefits therefrom were converted. Doc. 1, ¶¶ 113, 114, 116. None of that is property subject to the tort of conversion. Patent rights are not chattel. *Zwoyer v. Hackensack Tr. Co.*, 160 A.2d 156, 160 (N.J. App. Div. 1960). Even more specific to Trutek's allegations, patent applications represent only the idea of the invention (the intangible idea) and nothing more. *Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 2009 WL 4722679, at *3 (N.D. Cal. Dec. 9, 2009). At most, they are intangible property. *See Holt v. United States,* 1973 WL 614, at *2 (D.D.C. Aug. 23, 1973) (holding patent applications are intangible property under the Uniform Commercial Code); *see also Talge v. United States*, 229 F. Supp. 836, 848 (W.D. Mo. 1964) (holding patent applications are intangible property under the Internal Revenue Code). Patent applications therefore are not convertible property. Also, the alleged converted profits and benefits from the patent applications is a claim for lost profits which is not subject to the tort of conversion. *Austar International Limited v. AustarPharma LLC*, 425 F. Supp. 3d 336, 358 (D.N.J. 2019). Accordingly, Trutek has failed to state a claim for conversion of patent applications and the profits and benefits derived from sales of products related to those patent applications.

**Third**, federal patent law preempts Trutek's conversion claim. Trutek's conversion claim seeks an award of profits and benefits from the sale of products related to those patent applications. Trutek cannot use a state law claim to end run around the federal patent scheme. *See Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149 (E.D.N.Y. 2016) (holding state law conversion claim preempted by federal patent law where alleged converted property related to alleged patent ownership interests).

**Fourth**, Trutek has failed to allege any facts that demonstrate it had a right to *immediate possession* of the patent applications or the profits and benefits from the sale of products related to those patent applications. "The plaintiff's right to immediate possession of the property is essential to a claim of conversion." *Hunter v. Sterling Bank*, 588 F. Supp. 2d 645, 650 (E.D. Pa. 2008) (applying New Jersey law). Trutek concedes in three separate allegations that it has no such right: (1) Trutek says that had it known about COVIXYL, it would have had to have taken an intermediate step of filing an action to enjoin the defendants from selling it (Doc. 1, ¶ 110); (2) Trutek admits that the patent applications related to COVIXYL have not been denied by the United States Patent and Trademark Office and are not in Trutek's name (*id.* at ¶ 116(c)); and (3) that ownership of the patent applications and the products related thereto by Trutek would require an intermediate step of patent assignment (*id.*). In short, Trutek's own allegations demonstrate that it has not sufficiently alleged a right to an immediate possession to the property it claims has been converted. Instead, Trutek's Complaint demonstrates there are multiple, necessary intermediate steps before Trutek can maintain an immediate right or possession to COVIXYL.

**Fifth**, before a claim for "conversion will accrue," it is "necessary" that the plaintiff demand a return of the property. *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 304 (2020). The plaintiff bears the burden of proof that it made such a demand and that the defendant refused. *Id.*

Here, Trutek has failed to allege that it made a pre-suit demand for the return of the property it claims has been converted. Nor could Trutek, because it never made such a demand before filing suit.

Trutek's conversion claim should be dismissed with prejudice.

**VI.     Trutek has failed to state a claim for theft of trade secrets under Federal law.**

To prevail on a federal trade secret misappropriation claim, a plaintiff must prove: "(1) the existence of a trade secret (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce, and (3) the misappropriation of that trade secret." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380–81 (3d Cir. 2021) (cleaned up). Significantly, each element of this claim "is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *Id.* To determine whether a plaintiff has identified information that plausibly supports it having status as a trade secret, courts consider whether the plaintiff "has taken reasonable measures to keep . . . [it] secret" and whether the "information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. § 1839(3); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).

Trutek alleges that the confidential information that it disclosed to Cho under the CDA contained Trutek's trade secrets. Doc. 1, ¶¶ 118, 120. Trutek says that Cho misappropriated its trade secrets by filing the United States and international patents related to COVIXYL and by making, selling, and exporting COVIXYL. *Id.* at ¶¶ 123–125. Trutek's federal trade secret misappropriation claim fails to state a claim for three independent reasons.

***First***, Trutek fails to state a claim for federal trade secret misappropriation because it brings the claim *solely* under the *criminal-specific provision*, 18 U.S.C. § 1832, Doc. 1, p. 36 (Count

Five), and seeks an award of *criminal fines* as "damages as prescribed 18 U.S.C. § 1832(b)," *id.* at ¶ 126(a). Trutek also alleges that Cho criminally "conspired . . . in violation of 18 U.S.C. § 1832(a)(5)." Accordingly, Trutek fails to state *civil* claim and is due to be dismissed. *See Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018) (holding private plaintiffs do not have a right to enforce the criminal trade secret provision); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842–43 (E.D. Va. 2017) (same); *Nelson Brothers Professional Real Estate LLC v. Beau Jaussi et al.*, 2017 WL 8220703, at *6 (C.D. Cal. Mar. 23, 2017) (same).

**Second,** the economic loss doctrine bars Trutek's claim. Misappropriation of a trade secret is a tort. *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 421 (D.N.J. 2016). This court has recently dismissed a plaintiff's federal trade secret claim when nominally recast *and* simultaneously asserted with breach of contract. *See Microbilt Corp. v. Bail Integrity Sols., Inc.*, 2019 WL 6310202, at *6 (D.N.J. Nov. 25, 2019). This court also routinely dismisses state trade secret claims under the economic loss doctrine. *See infra* Section VII. And here, Trutek nominally recasts its claim for breach of contract as a federal trade secret misappropriation claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 120 (alleging the CDA required Cho to not "use" Trutek's "trade secrets" for "any other purpose other than to serve as distributor for Trutek's products"). Trutek's federal trade secret misappropriation claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

**Third**, Trutek failed to specifically identify a trade secret. "To plead the existence of a trade secret in a misappropriation claim," a plaintiff "must sufficiently identify the information it claims as a trade secret." *Oakwood Labs. LLC*, 999 F.3d at 905. Until a plaintiff does so, a court cannot evaluate "any element of a trade secret misappropriation claim." *Id.*

Trutek says that its trade secrets are "e.g., manufacturing methodology, efficacy, ingredients, level of electrostatic charged necessary and sufficient to be effective, *etc*." Doc. 1, ¶ 118. This generic list fails the standard for specifying a trade secret. *See Mallet & Co. Inc.*, 16 F.4th 364, 384–85 (holding that a generic list including "formulas," "pricing and volume data," and "training materials showing how [it] markets and sells its products" were not articulated with enough particularity as to afford the list trade secret status"); *see also A&P Tech., Inc. v. Lariviere*, 2017 WL 6606961, at *10 (S.D. Ohio Dec. 27, 2017) ("Terms such as 'engineering,' 'research and development procedures and materials,' and 'marketing materials' could be applied to almost any corporation in existence, and do not in any way allow Defendants to properly craft a defense around the alleged misappropriation of trade secrets.").

In addition to the lack of specificity in Trutek's alleged "ingredients" trade secret, the ingredients nevertheless fail to constitute a trade secret because the ingredients are publicly listed in Trutek's '802 Patent. *See* Doc. 1-5, at 5–7.[2] Information publicly available cannot be accorded trade secret status. *Mallet & Co. Inc.*, 16 F.4th at 384. Indeed, a "formula disclosed in a patent is, by definition, not a secret." *Id.* at 383.

In addition to the lack of specificity in Trutek's alleged "level of electrostatic charged necessary and sufficient to be effective" trade secret, Doc. 1, ¶ 118, based on Trutek's own allegations, such information is both publicly available and otherwise "readily ascertainable through proper means," 18 U.S.C. § 1839(3)(B), which includes "reverse engineering, independent derivation, or any other lawful means of acquisition," *id.* at § 1839(6)(B). Here's how. Trutek

---

[2] In deciding this motion, the Court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

alleges that "Trutek's '802 Patent state[s] that . . . a 0.13% solution of benzalkonium chloride to a person's nostrils would create a positively charged electrostatic field of sufficient strength to attract the negatively charged germs." Doc. 1, ¶ 118. So the purported trade secret ("level of electrostatic charged necessary and sufficient to be effective") is publicly available in Trutek's '802 Patent and therefore no secret at all. Moreover, Trutek alleges that it obtained the COVIXYL product and tested the product's electrostatic charge in Trutek's own lab and that Trutek determined that the product's charge is "approximately equal" to that of the charge in Trutek's own product. *Id.* at ¶ 51. So, taking Trutek's allegations as true, an electrostatic charge can be determined merely by testing a product in a lab. Based on the face of the Complaint, it follows that the "level of electrostatic charged necessary and sufficient to be effective" is readily ascertainable by two proper methods: (1) testing the electrostatic charge of a 0.13% solution of benzalkonium chloride (which is a publicly available ingredient and percentage); or (2) by ordering and testing the charge in Trutek's product in a lab (the same method that Trutek alleges it performed on COVIXYL). Either way, for Trutek to allege that such information is a trade secret is an absurdity based on its own Complaint.

Moreover, Trutek's Complaint contains no factual allegations identifying what specific trade secretes Cho purportedly used. *See* Doc. 1, ¶¶ 122–124 (generically alleging Cho "utilized trade secrets"). There is therefore nothing in the Complaint to support that Cho used any specifically identified trade secrets.

### VII.   Trutek has failed to state a claim for theft of trade secrets under New Jersey law.

To prevail on a New Jersey trade secret misappropriation claim, a plaintiff must prove: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the

15

plaintiff." *Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429–430 (3d Cir. 1982). The plaintiff must also have taken "precautions to maintain the secrecy of the trade secret." *Id.* at 430.

A trade secret may consist of a "formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process," that "[de]rives independent economic value" and is not "readily ascertainable by proper means." NJ Rev Stat § 56:15-2. A trade secret does not include matters of public knowledge. *P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*, 2007 WL 708978, at *10 (D.N.J. Mar. 5, 2007*).*

Additionally, like a federal claim, a New Jersey claim places a burden on the plaintiff to specifically identify the "trade secret with precision so as to inform the defendant exactly what the plaintiff is alleging to have been misappropriated . . . at the outset of the litigation, if not before." *Givaudan Fragrances Corp. v. Krivda*, 2013 WL 5781183, at *5 (D.N.J. Oct. 25, 2013) (New Jersey claim). It is "hornbook law" that a plaintiff must allege with particularity "what precisely is asserted as a secret." *Id.*

The legal analyses related to federal and state trade secret claims are substantially similar. And Trutek's New Jersey trade secret misappropriation claim makes identical allegations to its federal claim. *Compare* Doc. 1, ¶¶ 118–121 *with* ¶¶ 128–131. Accordingly, both the federal and state law claims fail to state a claim for two of the same reasons.

***First***, the economic loss doctrine bars Trutek's claim. Misappropriation of a trade secret is a tort. *Baxter Healthcare Corp.*, 157 F. Supp. 3d at 421. This court routinely bars state trade secret claims when nominally recast and asserted alongside breach of contract. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 2012 WL 5554543, at *10 (D.N.J. Nov. 14, 2012); *Trico Equip., Inc. v. Manor*, 2011 WL 705703, at *3 (D.N.J. Feb. 22, 2011); *Air Express Int'l v. Log-Net, Inc.*, 2016

16

WL 5334659, at *3 (D.N.J. Sept. 22, 2016). And here, Trutek nominally recasts its claim for breach of contract as a New Jersey trade secret misappropriation claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 130 (alleging the CDA required Cho to not "use" Trutek's "trade secrets" for "any other purpose other than to serve as distributor for Trutek's products"). Trutek's New Jersey trade secret misappropriation claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

    *Second*, Trutek failed to specifically identify a trade secret. The same analysis in *supra* Section VI applies here because a New Jersey trade secret, like a federal trade secret, must be particularly identified and because it cannot contain publicly available information or be readily ascertainable through other proper means such as reverse engineering, discovery, or observation. NJ Rev Stat § 56:15-2.

## VIII.   Trutek's claim for unjust enrichment fails as a matter of law.

    A plaintiff may be entitled to relief based on unjust enrichment "if a plaintiff establishes "that it conferred a benefit upon a defendant, and it would be unjust to allow the defendant to retain it." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). However, unjust enrichment is a quasi-contractual remedy availably only when parties do not have an express contract. *N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.), Inc.*, 449 N.J. Super. 542, 556 (App. Div. 2017).

    Trutek's unjust enrichment claim is tethered to its allegations that Cho breached the CDA. Indeed, Trutek alleges that the patent applications and all monies derived from the products related to those patent applications belong to Trutek "[a]ccording to the CDA." Doc. 1, ¶¶ 139–140. Trutek's unjust enrichment claim therefore fails as a matter of law.

## IX.   Trutek has failed to state a claim for civil conspiracy.

    To prevail on a New Jersey civil conspiracy claim, the plaintiff must prove: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design;

(3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). "The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action. Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages." *Board of Educ., Asbury Park v. Hoek*, 183 A.2d 633 (N.J. 1962). "Mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime." *Morganroth & Morganroth, P.C.*, 331 F.3d at 414. "Some act that is itself a tort must be committed by one of the parties in pursuance of the agreement." *Id.*

Trutek's civil conspiracy claim fails to state a claim for three independent reasons.

**First**, the economic loss doctrine bars Trutek's claim. Under New Jersey law, civil conspiracy is a tort claim. *Morganroth & Morganroth*, 331 F.3d at 414. Trutek nominally recasts its claim for breach of contract as a New Jersey civil conspiracy claim. *Compare* Doc. 1, ¶ 104 *with* ¶¶ 145–147. Trutek's New Jersey civil conspiracy claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

**Second**, Trutek fails to state a claim for the underlying torts for which it asserts the Defendants conspired to commit against Trutek (patent infringement, trade secret misappropriation, conversion, tortious interference, and unfair business practices).

Trutek's alleges the Defendants conspired to commit patent infringement. Doc. 1, ¶ 146. That underlying tort fails as a matter of law because federal patent law preempts a civil conspiracy claim based on the same. This Court has held that "conspiracy [to infringe a patent]" does "not constitute a separate ground for recovery" outside of federal patent law. *Rainville Co. v. Consupak, Inc.*, 407 F. Supp. 221, 223 (D.N.J. 1976). Indeed, the Federal Circuit has found that "conspiracy

to infringe a patent" is a "theory which has no basis in law." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1361 (Fed. Cir. 2004); *see also Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 n. 15 (E.D. Va. 2000) ("there is no statute in the federal laws concerning patents which gives rise to a cause of action for conspiracy.").

Trutek alleges the Defendants conspired to misappropriate trade secrets. Doc. 1, ¶¶ 145, 147. As to federal misappropriation, that underlying torts fails as a matter of law because there is no *civil* private right of action for *criminal* conspiracy of federal trade secret misappropriation. *Steves & Sons, Inc.,* 271 F. Supp. 3d at 842. Federal misappropriation as an underlying conspiracy tort further fails because Trutek has fails to state a claim for federal trade secret misappropriation for all the reasons set forth in *supra* Section VI. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth,* 331 F.3d at 414.

As to state misappropriation, Trutek fails to state an underlying claim for New Jersey trade secret misappropriation for all the reasons set forth in *supra* Section VII. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth,* 331 F.3d at 414.

Trutek's alleges the Defendants conspired to commit conversion. Doc. 1, ¶ 147. That underlying tort fails because Trutek fails to state a claim for conversion for all the reasons set forth in *supra* Section V. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth*, 331 F.3d at 414.

Trutek alleges the Defendants conspired to interfere with Trutek's prospective economic advantage and to engage in unfair business practices. Doc. 1, ¶ 147. Specifically, Trutek alleges that Cho made an agreement with all Defendants to misappropriate Trutek's trade secrets, which according to Trutek constitutes a conspiracy to interfere with Trutek's prospective economic advantage and to engage in unfair business practices. Doc. 1, ¶ 147. Both underlying bases are

New Jersey torts. *Patel v. Soriano*, 848 A.2d 803, 831 (N.J. App. Div. 2004) (tortious interference);
*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 786 (D.N.J. 1995)
(unfair business practices). At bottom, Trutek alleges that the misappropriation of trade secrets is
the conduct that constitutes both the tortious interference and unfair business practices. But Trutek
fails to state a claim for trade secret misappropriation for all the reasons set forth in *supra* Sections
VI and VII. Trutek's conspiracy claim based on the same cannot stand. *Morganroth &
Morganroth,* 331 F.3d at 414.

      **Third**, fatal to Trutek's conspiracy claim, Trutek fails to plausibly allege an agreement to
conspire between the Defendants.  *See Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8)
(explaining that in a case alleging conspiracy, the "need at the pleading stage for allegations
plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of
Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled
to relief.'").

      *Twombly* is the seminal decision not only for the Rule 8 pleading standard, but also for that
standard as it relates to pleading an agreement to conspire. Without a "circumstance pointing
toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral
territory." *Id.* And a "statement of parallel conduct, even conduct consciously undertaken," is not
alone suggestive of agreement to conspire, it is but "a naked assertion of conspiracy" that "stops
short of the line between possibility and plausibility." *Id.*

      *Twombly* further explains that a complaint fails to plausibly suggest an agreement to
conspire based on alleged "actions [that] could equally have been prompted by lawful independent
goals" or where "an obvious alternative explanation" for the conduct exists, especially when such
obvious explanations appear on the face of the Complaint. *Id.* at 566–568.

*Twombly* cautions district courts that a plausible suggestion of an agreement to conspire must be made "in pleading before allowing a potentially massive factual controversy to proceed," of which the "potential expense is obvious." *Id.* at 558–559. It is no excuse to allow a conspiracy claim to proceed even if it is "just shy of a plausible entitlement to relief." *Id.* at 559.

Here, Trutek's Complaint falls far short of crossing the plausibility line. Trutek repeatedly asserts in conclusory fashion that Defendants "made an agreement" to commit various torts. *See e.g.*, Doc. 1, ¶¶ 145–147. But merely repeating like a broken record a conclusory allegation that the Defendants agreed to conspire does not plausibly suggest agreement. Trutek's Complaint is devoid of any fact allegation that demonstrates a circumstance which would point toward a meeting of the minds and plausibly suggest that any Defendants "made an agreement" to commit any tort against Trutek. Trutek's allegations are naked assertions of conspiracy that fall much closer to the possibility line than plausibility.

That said, Trutek does make a few allegations that flirt with the conclusory/factual line. But those allegations are limited to Defendants' commercial efforts, which without more, "stay[] in neutral territory." *Twombly*, 550 U.S. at 557. Specifically, Trutek alleges that the Defendants "made an agreement to" commit various torts against Trutek by filing patent applications related to, and developing, manufacturing, selling, exporting, and profiting from COVIXYL. Doc. 1, ¶¶ 145–147. All of those alleged commercial efforts stay in the neutral territory without a plausible fact-based allegation to suggest an agreement to conspire to do those acts in a tortious manner. Accordingly, those alleged commercial efforts fall far short of plausibly suggesting conspiracy.

Moreover, the Complaint itself suggests there was no agreement to conspire, *i.e.*, that the Defendants' actions were "prompted by lawful independent goals" or were based on "obvious alternative explanation[s]." *Twombly*, 550 U.S. at 568. Trutek alleges that all Defendants agreed

21

to conspire because they developed, manufactured, exported and sold COVIXYL. There is nothing suggestive that the mere existence of a manufacturer, developer, distributor, and/or wholesaler of product have an underlying agreement to commit some nefarious tort against Trutek. To commercially launch a product, such commercial functions are routinely outsourced. Trutek's own Complaint demonstrates this in that Trutek licensed Cho/Jintec to market and distribute Trutek's products in Korea and Greater China. Based on the allegations in the Complaint alone, an agreement to conspire between Trutek and Cho is no more plausibly suggested than one is between the Defendants. While it is conceivable that Trutek and Cho/Jintec conspired in their commercial relationship to commit some tort, it is not plausible based on the mere fact that Trutek licensed Cho as a distributor/marketer. Likewise, it is not plausible that the Defendants agreed to commit a tort.

The Complaint also suggests there was no agreement to conspire because patents are regularly co-invented by individuals and assigned to a separate entity. Trutek's allegation that Cho agreed to conspire with Gaffar and Yun by filing patent applications is indicative of nothing more than normal commercial activity. Indeed, the Complaint demonstrates that Wahi and Trutek routinely do the same. Many of Trutek's patents were invented by multiple individuals before being assigned to Trutek.[3] For example, Trutek Patent '005 was invented by Ashok L. Wahi and Kanneth Sugathan and assigned to Trutek. **Ex. A** – Cover Pages of Trutek's Patents '005, '497, and '706. And Trutek's Patents '497 and 706 were invented by Ashok L. Wahi, John Lawrence Dequina, Kanika Wahi, and Bernard Foss and assigned to Trutek.

---

[3] Patents are a matter of public record, *Mallet & Co. Inc.*, 16 F.4th at 383, for which the Court may consider in deciding this Motion, *supra* note 2. Those patents are also referenced and relied on in Trutek's complaint. Doc. 1, ¶ 26.

At bottom, because Trutek has "not nudged [its] claims across the line from conceivable to plausible, [its conspiracy claim] must be dismissed." *Twombly*, 550 U.S. at 570.

**X.    Trutek has failed to state a claim for fraud.**

The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005).[4] The fraud claim "must relate to a present or preexisting fact and cannot ordinarily be predicated on representations [that] involve things to be done in the future." *Anderson v. Modica*, 4 N.J. 383, 391–92 (1950).

Trutek alleges that when Cho breached his CDA obligations, he committed fraud on Trutek by not doing what he "promised" to do under the CDA and by "concealing" from Trutek his contractual breaches. Doc. 1, ¶ 151. Trutek fails to state a fraud claim.

The economic loss doctrine bars Trutek's claim. Under New Jersey law, fraud is a tort claim subject to the economic loss doctrine. *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012). Trutek nominally recasts its claim for breach of contract as a fraud claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 151. Fraud claims related to contracts cannot proceed if they are related to the performance of a contract. *RNC Sys., Inc.,* 861 F. Supp. 2d at 451. They must be based on conduct that "precede(s) the actual commencement of the agreement," such as fraud in the inducement or pre-contractual misrepresentations. *Id.* Trutek's New Jersey fraud claim is based on the actual obligations that purportedly flow from the CDA, and, therefore, is barred by the economic loss doctrine and should be dismissed with prejudice.

---

[4] These elements apply to both fraudulent misrepresentation and concealment. *DeRobbio v. Cent. Reg'l Emps. Ben. Fund v. Cephalon, Inc.*, 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009).

**XI.      Trutek has failed to state a claim for a RICO violation.**

In Count Ten, Trutek asserts a federal RICO claim and a federal RICO conspiracy claim against all Defendants under 18 U.S.C. § 1961 *et seq.* Doc. 1, p. 47.  To succeed on a federal civil RICO claim, a plaintiff must prove: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To establish a pattern of racketeering activity, a plaintiff must prove "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at \*20 (D.N.J. May 2, 2013). Racketeering activity is defined in Section 1961(1)(B) as "any act which is indictable under" a number of enumerated federal laws; these federal offenses are called "predicate acts." *See* 18 U.S.C. § 1341; 18 U.S.C. § 1962(1)(B).

Under Section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Id.* at 1190.

Trutek's RICO claim fails for three independent reasons.

***First***, the economic loss doctrine bars Trutek's RICO claim. The Third Circuit has succinctly stated why courts must bar plaintiffs from nominally recasting breach of contract claims as RICO claims: "if garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering . . . civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole." *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999), *abrogated on other grounds in Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000).  Indeed, Trutek's

24

RICO claim exemplifies the Third Circuit's specific concern that "[v]irtually every litigant would have the incentive to file their breach of contract and tort claims under the federal civil RICO Act."). This is why federal courts dismiss RICO claims under the economic loss doctrine where it is a nominally recast breach of contract claim. *See e.g.*, *G.K. Las Vegas Limited P'ship v. Simon Property Group, Inc.*, 460 F. Supp. 2d 1222, 1236 (D. Nev. 2006) ("Although, economic loss doctrine does not as a general rule preclude claims for violations of Nevada RICO, a plaintiff cannot state a claim under the statute by simply artfully pleading what is essentially a breach of contract claim."); *see also Crescenzo 1, L.P. v. Deutche Bank Nat'l Tr. Co.*, No. 3:17-CV-1018-CAB-JLB, 2017 WL 3732013, at *4 (S.D. Cal. Aug. 30, 2017); V*ega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *12 (C.D. Cal. Mar. 24, 2015). And here, Trutek nominally recasts its claim for breach of contract as a RICO claim. *Compare* Doc. 1, ¶ 104 *with* ¶¶ 166, 168, 170 (alleging that Cho violated RICO by "fail[ing] to honor his contractual obligation"), quoting ¶170. Trutek's RICO claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

**Second**, Trutek's RICO claim fails to state a claim because Trutek fails to sufficiently plead a pattern of racketeering activity. Specifically, the actions Trutek alleges do not constitute predicate acts as a matter of law for two independent reasons. And even if they could, Trutek fails to plead the predicate acts with particularity under Rule 9(b). *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (applying Rule 9(b) pleading standard to wire fraud and mail fraud predicate acts).

Trutek alleges two categories of predicate acts: (1) wire fraud (18 U.S.C. § 1343); and (2) mail fraud (18 U.S.C. § 1343). An offense of wire fraud and/or mail fraud have the same two elements: "(1) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme." *Kaul*

*v. Christie*, 372 F. Supp. 3d 206, 248 (D.N.J. 2019). Specifically, Trutek alleges Cho committed wire fraud "by allowing" the COVIXYL-related patent applications to be filed and assigned. Doc. 1, ¶ 170. Trutek also alleges that other defendants committed wire fraud and mail fraud by selling the COVIXYL products online and delivering the products through the United States mail services. *Id.* at ¶ ¶ 193–197.

The first reason Trutek's predicate act allegations fail to state a claim is that submitting a patent application, assigning a patent application, or commercializing and/or selling products that purportedly infringe a patent cannot constitute predicate acts as a matter of law. *See University of W. Va. v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002) (affirming dismissal of plaintiff's RICO claim where the plaintiff asserted the predicate acts of mail and wire fraud based on defendants' fraudulent submissions to the PTO in connection with patent application); *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1380 (Fed. Cir. 2000); *see also Michod v. Walker Magnetics Group, Inc.*, 115 F.R.D. 345, 347 (N.D. Ill. 1987) (holding patent infringement is not a predicate act enumerated by the RICO statute, and thus cannot be the basis of a RICO claim); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 487 (S.D.N.Y. 2000); *Shippitsa Ltd. v. Slack*, 2019 WL 3304890, at *9 (N.D. Tex. July 23, 2019) (holding plaintiff "failed to plausibly allege facts showing that [defendant] committed wire fraud by selling [alleged infringing] products" online); *Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co.*, 4 F. Supp. 2d 473, 476 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000), *amended* (Apr. 5, 2000) ("If such conduct could properly be considered [RICO] predicate acts, then nearly every inequitable conduct claim in a patent case could be brought as a RICO claim.").

Here, Trutek's predicate act allegations are patent submission and patent infringement centric. Doc. 1, ¶ 170; *compare id.* ¶¶ 89, 185–186 (alleging selling COVIXYL product infringes Trutek's patent) with ¶¶ 193–197 (alleging process of selling COVIXYL is predicate acts of wire fraud and mail fraud). Trutek alleges no other predicate acts. Accordingly, Trutek's fails to plead two viable predicate acts and its RICO claim must be dismissed.

The second reason Trutek's predicate act allegations fail as a matter of law is that the alleged predicate acts are actually breach of contract allegations, not wire fraud or mail fraud. To be clear, there are no allegations that Defendants represented to customers that their COVIXYL products did not infringe a valid patent right of Trutek. Nor is there any allegation that the purchasers of the COVIXYL products were deceived to their detriment, that is, that they preferred Trutek's products and that they were deceived into purchasing COVIXYL instead or that they preferred to purchase COVIXYL from Trutek and not Defendants. Instead, Trutek's predicate act allegations repeatedly assert that Defendants' actions were "to defraud Trutek." Doc. 1, ¶¶ 193–194, 196, 201. Those do not constitute sufficient allegations of wire or mail fraud on purchasers. They are merely Trutek's recycled breach of contract allegations.

Even if Trutek's predicate act allegations could constitute predicate acts, Trutek failed to plead them with particularity under Rule 9(b). A party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *Majestic Blue Fisheries, LLC*, 812 F.3d at 307. Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold*, 516 F. App'x at 226. Trutek's allegations are deficient. For example, Trutek alleges that Salvacion USA fraudulently "claimed publicly that it had the right to market" COVIXYL. Doc. 1, ¶ 189. But the

Complaint is devoid of any allegations of what in particular it claimed or when, where, or how it was claimed. Nor does Trutek allege which particular Defendants sold COVIXYL or when, where, or to whom the products were sold. Trutek does allege that Defendants committed wire/mail fraud when one of its counsel, Keith Altman, purchased COVIXYL. If all fraud and conspiracy claims are not dismissed with prejudice, then Cho reserves the right to subpoena documents and other information from Mr. Altman and to depose Mr. Altman because he has interjected himself as a material fact witness.

*Third*, Trutek has failed to plausibly plead an agreement between the Defendants. The same analysis in *supra* Section IX applies here. To be clear, Trutek in Count Ten (RICO) does not plead any different or new factual allegations as compared to Count Eight (Civil Conspiracy) which would point toward a meeting of the minds and plausibly suggesting that any Defendants made an agreement or conspired to defraud Trutek. Because Trutek has "not nudged [its RICO] claims across the line from conceivable to plausible, [its claim] must be dismissed." *Twombly*, 550 U.S. at 570.

### Conclusion

For the foregoing reasons, Cho respectfully request the Court to dismiss all claims against him with prejudice except for the express breach of contract claim for compensatory damages.

Dated: October 2, 2023

Respectfully submitted,

LADDEY, CLARK & RYAN, LLP

BY: */s/ Thomas J. White*
Thomas N. Ryan (018951985)
Thomas J. White (320372020)
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871-2600
Telephone: (973) 729-1880;
Facsimile: (973) 729-1224

BRADLEY ARANT BOULT CUMMINGS LLP
Jason E. Fortenberry (*pro hac vice*)
Jonathan M. Barnes (*pro hac vice*)
188 East Capitol Street, Suite 1000
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
jfortenberry@bradley.com

tryan@lcrlaw.com
twhite@lcrlaw.com

*Attorneys for Defendants Salvacion,*
*USA, Inc.; Salvacion Co., LTD.; Yeong*
*Wan Cho (aka Peter Cho); Salvacion*
*R&D Center; Salvacion International,*
*LLC; Sei Young Yun; Biosure Global, Ltd.*

jbarnes@bradley.com

Jeffrey D. Dyess (*pro hac vice*)
Benn C. Wilson (*pro hac vice*)
1819 5th Avenue North
Birmingham, Alabama
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jdyess@bradley.com
bcwilson@bradley.com

*Attorneys for Defendants Salvacion,*
*USA, Inc.; Salvacion Co., LTD.; Yeong*
*Wan Cho (aka Peter Cho); Salvacion*
*R&D Center; Salvacion International,*
*LLC; Sei Young Yun; Biosure Global, Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that, on this day, the foregoing document was filed with the Clerk of the Court through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 2, 2023

Respectfully submitted,

LADDEY, CLARK & RYAN, LLP

BY: */s/ Thomas J. White*
Thomas N. Ryan (018951985)
Thomas J. White (320372020)
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871-2600
Telephone: (973) 729-1880;
Facsimile: (973) 729-1224
tryan@lcrlaw.com
twhite@lcrlaw.com

*Attorneys for Defendants Salvacion,*
*USA, Inc.; Salvacion Co., LTD.; Yeong*
*Wan Cho (aka Peter Cho); Salvacion*
*R&D Center; Salvacion International,*
*LLC; Sei Young Yun; Biosure Global, Ltd.*