# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUTEK CORP., <br><br>         Plaintiff, <br><br>   v. <br><br> YEONG WAN CHO (a.k.a. PETER CHO, ET AL., <br><br>         Defendants. | Civil Action No.: 2:23– cv-3709 <br><br> **Document Electronically Filed** |

## DEFENDANTS PETER CHO, BIOSURE GLOBAL, LTD., SALVACION USA, INC., AND SALVACION INTERNATIONAL LLC'S MEMORANDUM SUPPORTING THEIR CONSOLIDATED MOTION TO DISMISS

LADDEY, CLARK & RYAN, LLP
Thomas N. Ryan (018951985)
Thomas J. White (320372020)
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871-2600
Telephone: (973) 729-1880;
Facsimile: (973) 729-1224
tryan@lcrlaw.com
twhite@lcrlaw.com

*Attorneys for Defendants Salvacion,*
*USA, Inc.; Salvacion Co., LTD.; Yeong*
*Wan Cho (aka Peter Cho); Salvacion*
*R&D Center; Salvacion International,*
*LLC; Sei Young Yun; Biosure Global, Ltd.*

BRADLEY ARANT BOULT CUMMINGS LLP
Jason E. Fortenberry (*pro hac vice*)
Jonathan M. Barnes (*pro hac vice*)
188 East Capitol Street, Suite 1000
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
jfortenberry@bradley.com
jbarnes@bradley.com

Jeffrey D. Dyess (*pro hac vice*)
Benn C. Wilson (*pro hac vice*)
1819 5th Avenue North
Birmingham, Alabama
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jdyess@bradley.com
bcwilson@bradley.com

*Attorneys for Defendants Salvacion,*
*USA, Inc.; Salvacion Co., LTD.; Yeong*
*Wan Cho (aka Peter Cho); Salvacion*
*R&D Center; Salvacion International,*
*LLC; Sei Young Yun; Biosure Global, Ltd.*

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ................................................................................................................. iii

Introduction ........................................................................................................................... 1

Background ............................................................................................................................ 2

Standards of Review ............................................................................................................. 5

Argument ............................................................................................................................... 7

     I.      Trutek cannot meet its burden to show this Court can exercise jurisdiction over BioSure consistent with due process principles. .................................................... 8

          A.      The intentional tort claims do not give rise to jurisdiction in New Jersey .................................................................................................. 11

          B.      The conspiracy claims do not give rise to jurisdiction in New Jersey ...... 12

          C.      The unjust enrichment claim does not give rise to jurisdiction in New Jersey .................................................................................................. 13

          D.      Even if sufficient minimum contacts existed, exercise of personal jurisdiction over BioSure would not comport with fair play and substantial justice. ................................................................................ 13

     II.     Count One (Salvacion USA & Salvacion International): Trutek's claim for infringement of the 802 patent should be dismissed in part because Trutek fails to state a claim for direct infringement of claim 1 or induced infringement of any claim. ................................................................................................. 15

          A.      Trutek fails to state a claim for direct infringement of claim 1 of the 802 patent. .................................................................................... 16

          B.      Trutek fails to state a claim for induced infringement of any claim of the 802 patent. ................................................................................ 18

     III.    Count Two (Cho): Trutek's claim for breach contract should be dismissed in part. .......................................................................................................... 20

          A.      Trutek's claim for breach of an implied covenant of good faith and fair dealing fails as a matter of law. ............................................... 20

          B.      Trutek's breach of contract claim, in so far as it seeks ownership of a patent application, fails to state a claim. ................................................ 21

i

  C. Trutek's breach of contract claim, in so far as it seeks a permanent injunction, fails to state a claim. .............................................................. 21

IV. Count Three (Cho): Trutek has failed to state a claim for concealment. .............. 22

V. Count Four (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for conversion. .............................................................. 23

VI. Count Five (Cho, Salvacion USA & Salvacion International): Trutek has failed to state a claim for theft of trade secrets under Federal law. ................................ 27

VII. Count Six (Cho, Salvacion USA, & Salvacion International): Trutek has failed to state a claim for theft of trade secrets under New Jersey law. ........................... 31

VIII. Count Seven (Cho, BioSure, Salvacion USA & Salvacion International): Trutek's claim for unjust enrichment fails as a matter of law. ............................. 33

IX. Count Eight (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for civil conspiracy. ....................................................... 34

X. Count Nine (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for fraud. ....................................................................... 39

XI. Count Ten (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for a RICO violation. .................................................... 43

Conclusion .......................................................................................................................... 47

Certificate of Service ......................................................................................................... 48

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&P Tech., Inc. v. Lariviere*,
  2017 WL 6606961 (S.D. Ohio Dec. 27, 2017) .......................................................................29

*Air Express Int'l v. Log-Net, Inc.*,
  2016 WL 5334659 (D.N.J. Sept. 22, 2016) ...........................................................................32

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015) (en banc)...................................................................16, 17, 18

*Al-Ghena Int'l Corp. v. Radwan*,
  957 F. Supp. 2d 511 (D.N.J. 2013) .......................................................................................10

*All Weather Armour, LLC v. Art of Gutter, Inc.*,
  2020 WL 9720067 (D.N.J. June 23, 2020) ............................................................................19

*Anderson v. Modica*,
  4 N.J. 383 (1950) ..................................................................................................................39

*Annulli v. Panikkar*,
  200 F.3d 189 (3d Cir. 1999), *abrogated on other grounds in Forbes v.*
  *Eagleson*, 228 F.3d 471 (3d Cir. 2000).................................................................................44

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
  480 U.S. 102 (1987)...............................................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................6

*Austar International Limited v. AustarPharma LLC*,
  425 F. Supp. 3d 336 (D.N.J. 2019) .......................................................................................25

*Banco Popular N. Am. v. Gandi*,
  184 N.J. 161 (2005) ...............................................................................................................39

*Baraka v. McGreevey*,
  481 F.3d 187 (3d Cir. 2007).....................................................................................................6

*Baxt v. Liloia*,
  155 N.J. 190 (1998) ...............................................................................................................22

*Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*,
  157 F. Supp. 3d 407 (D.N.J. 2016) ...................................................................................28, 32

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ *passim*

*Board of Educ., Asbury Park v. Hoek,*
    183 A.2d 633 (N.J. 1962) ................................................................................34

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ......................................................................................9, 10

*Cameco, Inc. v. Gedicke,*
    690 A.2d 1051 (N.J. Super. Ct. App. Div.1997) ...........................................25

*Carteret Sav. Bank, FA v. Shushan,*
    954 F.2d 141 (3d Cir. 1992) ...........................................................................5

*Chi. Title Ins. Co. v. Ellis,*
    978 A.2d 281 (N.J. App. Div. 2009) ..............................................................25

*Chiarella v. U.S.,*
    445 U.S. 222 (1980) .......................................................................................42

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.,*
    912 F. Supp. 747 (D.N.J. 1995) .....................................................................36

*Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.,*
    83 F. Supp. 2d 689 (E.D. Va. 2000) ..............................................................35

*Commercial Ins. Co. of Newark v. Apgar,*
    267 A.2d 559 (N.J. Super. Ct. 1970) .............................................................26

*Commil USA, LLC v. Cisco Sys., Inc.,*
    575 U.S. 632 (2015) .......................................................................................19

*Connelly v. Lane Const. Corp.,*
    809 F.3d 780 (3d Cir. 2016) ............................................................................6

*Corestar Int'l Pte, Ltd. v. LPB Commc'n,*
    513 F. Supp 2d 107 (D.N.J. 2007) .................................................................23

*Craftmatic Sec. Litig. v. Kraftsow,*
    890 F.2d 628 (3d Cir. 1989) ............................................................................7

*Crescenzo 1, L.P. v. Deutche Bank Nat'l Tr. Co.,*
    No. 3:17-CV-1018-CAB-JLB, 2017 WL 3732013 (S.D. Cal. Aug. 30, 2017) ......................44

*Dayhoff Inc. v. H.J. Heinz Co.,*
    86 F.3d 1287 (3d Cir. 1996) ............................................................................5

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
    946 F.3d 1223 (10th Cir. 2020) .................................................................12

*DeRobbio v. Cent. Reg'l Emps. Ben. Fund v. Cephalon, Inc.*,
    2009 WL 3245485 (D.N.J. Oct. 7, 2009) ..................................................39

*Duquesne Light Co. v. Westinghouse Elec. Co.*,
    6 F.3d 604 (3d Cir. 1995) .........................................................................23

*eBay Inc. v. MercExchange, LLC*,
    547 U.S. 388 (2006) .................................................................................21

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
    845 F.3d 1357 (Fed. Cir. 2017) ...............................................................18

*Enrunda Trading Co. v. MTM Trading LLC*,
    2018 WL 11241079 (D.N.J. Mar. 29, 2018) ............................................20

*Feingold v. Graff*,
    516 F. App'x 223 (3d Cir. 2013) ..........................................................7, 47

*G&F Graphic Servs. v. Graphic Innovators, Inc.*,
    18 F. Supp. 3d 583 (D.N.J. 2014) ............................................................23

*G.K. Las Vegas Limited P'ship v. Simon Property Group, Inc.*,
    460 F. Supp. 2d 1222 (D. Nev. 2006) ......................................................44

*Givaudan Fragrances Corp. v. Krivda*,
    2013 WL 5781183 (D.N.J. Oct. 25, 2013) (New Jersey claim) ...............32

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .................................................................................19

*Gunter v. Ridgewood Energy Corp.*,
    32 F. Supp. 2d 166 (D.N.J. 1998) ............................................................43

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
    466 U.S. 408 (1984) .................................................................................10

*Holt v. United States*,
    1973 WL 614 (D.D.C. Aug. 23, 1973) ....................................................25

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
    2012 WL 5554543 (D.N.J. Nov. 14, 2012) .............................................32

*Hudson Marine Mgmt. Servs., Inc. v. Thomas Miller (Miami) Inc.*,
    2006 WL 1096784 (D.N.J. Apr. 20, 2006) ..............................................14

*Hunter v. Sterling Bank*,
    588 F. Supp. 2d 645 (E.D. Pa. 2008) ...................................................................26

*IMO Indus. Inc. v. Kiekert*,
    155 F.3d 254 (3d Cir. 1998) ..............................................................................9

*Int'l Rectifier Corp. v. Samsung Elecs. Co.*,
    361 F.3d 1355 (Fed. Cir. 2004) ........................................................................35

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..........................................................................................9

*John Wiley & Sons, Inc. v. Rivadeneyra*,
    2013 WL 6816369 (D.N.J. Dec. 20, 2013) .......................................................41

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
    98 F. Supp. 2d 480 (S.D.N.Y. 2000) ...............................................................45

*Kaul v. Christie*,
    372 F. Supp. 3d 206 (D.N.J. 2019) .................................................................45

*LaPlace v. Briere*,
    962 A.2d 1139 (N.J App. Div. 2009) ...............................................................24

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ........................................................................42, 43

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) ........................................................................................19

*Mallet & Co. Inc. v. Lacayo*,
    16 F.4th 364 (3d Cir. 2021) ...........................................................27, 29, 30, 39

*Maniscalco v. Brother Int'l Corp. (USA)*,
    627 F. Supp. 2d 494 (D.N.J. 2009) (collecting New Jersey caselaw) ...................33

*MDNet, Inc. v. Pharmacia Corp.*,
    147 F. App'x 239 (3d Cir. 2005) .....................................................................41

*Meisels v. Fox Rothschild LLP*,
    240 N.J. 286 (2020) ........................................................................................27

*Mellon Bank PSFS Nat'l Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ............................................................................5

*Michod v. Walker Magnetics Group, Inc.*,
    115 F.R.D. 345 (N.D. Ill. 1987) ......................................................................45

*Microbilt Corp. v. Bail Integrity Sols., Inc.*,
  2019 WL 6310202 (D.N.J. Nov. 25, 2019) ...........................................................29

*MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ.*,
  2021 WL 1168962 (D.N.J. Mar. 26, 2021)...........................................................24

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
  331 F.3d 406 (3d Cir. 2003)...........................................................34, 35, 36

*N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.), Inc.*,
  449 N.J. Super. 542 (App. Div. 2017) .......................................................33

*Nelson Brothers Professional Real Estate LLC v. Beau Jaussi et al.*,
  2017 WL 8220703 (C.D. Cal. Mar. 23, 2017) ................................................28

*Nicastro v. J. McIntyre Mach. Am., Ltd.*,
  987 A.2d 575 (N.J. 2010)........................................................................9

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)...................................................................10

*Oakwood Labs. LLC v. Thanoo*,
  999 F.3d 892 (3d Cir. 2021)..............................................................28, 29

*Otsuka Pharm. Co. v. Zydus Pharms. USA*,
  151 F. Supp. 3d 515 (D.N.J. 2015) ...........................................................19

*P.C. of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*,
  2007 WL 708978 (D.N.J. Mar. 5, 2007*)*............................................................31

*Patel v. Soriano*,
  848 A.2d 803 (N.J. App. Div. 2004)......................................................36

*Pausch LLC v. Ti-Ba Enters.*,
  2014 WL 5092649 (D.N.J. Oct. 8, 2014)................................................5

*Pederson v. Frost*,
  951 F.3d 977 (8th Cir. 2020) ...............................................................11

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993).................................................................30

*Phillips v. Cty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)...................................................................6

*Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*,
  2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) .........................................28

*Pickett v. Lloyd's & Peerless Ins. Agency, Inc.*,
   621 A.2d 445 (N.J. 1993).................................................................20

*Rainville Co. v. Consupak, Inc.*,
   407 F. Supp. 221 (D.N.J. 1976) .....................................................35

*ret. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
   812 F.3d 294 (3d Cir. 2016)...............................................7, 41, 46

*Rickman v. BMW of N. Am. LLC*,
   538 F. Supp. 3d 429 (D.N.J. 2021) ................................................12

*RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*,
   861 F. Supp. 2d 436 (D.N.J. 2012) ................................................40

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002)..............................................................6

*Rohm and Haas Co. v. Adco Chemical Co.*,
   689 F.2d 424 (3d Cir. 1982).............................................................31

*Roy v. Brahmbhatt*,
   2008 WL 5054096 (D.N.J. Nov. 26, 2008) ....................................12

*Rush v. Savchuk*,
   444 U.S. 320 (1980).........................................................................11

*Schenker, Inc. v. Expeditors Int'l of Wash., Inc.*,
   2016 WL 3563187 (N.J. Super. Ct. App. Div. July 1, 2016)..........24

*Semiconductor Energy Lab'y Co. v. Samsung Elecs*. Co.,
   4 F. Supp. 2d 473 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000),
   *amended* (Apr. 5, 2000) ..................................................................46

*Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*,
   204 F.3d 1368 (Fed. Cir. 2000)......................................................45

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
   742 F.2d 786 (3d Cir. 1984)............................................................45

*Shippitsa Ltd. v. Slack*,
   2019 WL 3304890 (N.D. Tex. July 23, 2019) ................................45

*Shnayderman v. Cell-U-More, Inc.*,
   2018 WL 6069167 (D.N.J. Nov. 20, 2018) .......................................5

*Slimm v. Bank of Am. Corp.*,
   2013 WL 1867035 (D.N.J. May 2, 2013) ........................................43

*Speedfit LLC v. Woodway USA, Inc.*,
226 F. Supp. 3d 149 (E.D.N.Y. 2016) ..................................................26

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
271 F. Supp. 3d 835 (E.D. Va. 2017) ...............................................28, 35

*StrikeForce Techs., Inc. v. WhiteSky, Inc.*,
2013 WL 3508835 (D.N.J. 2013) ........................................................25

*Talge v. United States*,
229 F. Supp. 836 (W.D. Mo. 1964) ......................................................25

*Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*,
2009 WL 4722679 (N.D. Cal. Dec. 9, 2009) ........................................25

*Time Share Vacation Club v. Atl. Resorts, Ltd.*,
735 F.2d 61 (3d Cir. 1984)....................................................................5

*Travel Sentry, Inc. v. Tropp*,
877 F.3d 1370 (Fed. Cir. 2017)............................................................18

*Trico Equip., Inc. v. Manor*,
2011 WL 705703 (D.N.J. Feb. 22, 2011) .............................................32

*Trutek Corp. v. Jintec America, Inc.*,
SOM-L426-21 (Superior Court of New Jersey Law Division: Somerset
County) ...................................................................................................4

*University of W. Va. v. VanVoorhies*,
278 F.3d 1288 (Fed. Cir. 2002)............................................................45

*USX Corp. v. Prime Leasing Inc.*,
988 F.2d 433 (3d Cir. 1993)..................................................................21

*Vega v. Ocwen Fin. Corp.*,
2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ......................................44

*Viviano v. CBS, Inc.*,
251 N.J. Super. 113 (App. Div. 1991) ..................................................22

*VRG Corp. v. GKN Realty Corp.*,
135 N.J. 539 (1994) ..............................................................................33

*Walden v. Fiore*,
571 U.S. 277 (2014)..................................................................10, 11, 12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)..............................................................................13

*Zwoyer v. Hackensack Tr. Co.*,
 160 A.2d 156 (N.J. App. Div. 1960) ..................................................................25

**Statutes**

18 U.S.C. § 1341 ...............................................................................................43

18 U.S.C. § 1343 ...............................................................................................45

18 U.S.C. § 1832 ...............................................................................................28

18 U.S.C. § 1832(a)(5) .......................................................................................28

18 U.S.C. § 1832(b) ...........................................................................................28

18 U.S.C. § 1839(3) ...........................................................................................28

18 U.S.C. § 1839(3)(B) .......................................................................................30

18 U.S.C. § 1839(6)(B) .......................................................................................30

18 U.S.C. § 1961 *et seq.* ...................................................................................43

18 U.S.C. § 1962(1)(B) .......................................................................................43

18 U.S.C. § 1965(b) ...........................................................................................12

NJ Rev Stat § 56:15-2 ...................................................................................31, 33

**Other Authorities**

Fed. R. Civ. P. 8 .................................................................................................37

Fed. R. Civ. P. 8(a)(2) .....................................................................................6, 36

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

Fed. R. Civ. P. 12(b) ............................................................................................8

Fed. R. Civ. P. 12(b)(2) ................................................................................1, 5, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................... *passim*

x

## <u>INTRODUCTION</u>

Defendants Peter Cho, BioSure Global, Ltd. Salvacion, USA, Inc., and Salvacion International, LLC (the "moving Defendants") move to dismiss certain claims in Plaintiff Trutek's Complaint.[1] The below chart indicates which of the moving Defendants move under Rule 12(b)(2), and, for purposes of Rule 12(b)(6), which counts are asserted against each defendant and whether that defendant moves to dismiss those counts in full or in part.

| **Peter Cho** | **BioSure** | **Salvacion USA** | **Salvacion International** |
|---|---|---|---|
| <u>Rule 12(b)(2)</u> | <u>Rule 12(b)(2)</u> | <u>Rule 12(b)(2)</u> | <u>Rule 12(b)(2)</u> |
| No | Yes | No | No |
| <u>Rule 12(b)(6)</u> | <u>Rule 12(b)(6)</u> | <u>Rule 12(b)(6)</u> | <u>Rule 12(b)(6)</u> |
| Count 1: Not against | Count 1: Not against | Count 1: In part | Count 1: In part |
| Count 2: In part | Count 2: Not against | Count 2: Not against | Count 2: Not against |
| Count 3: In full | Count 3: Not against | Count 3: Not against | Count 3: Not against |
| Count 4: In full | Count 4: In full | Count 4: In full | Count 4: In full |
| Count 5: In full | Count 5: Not against | Count 5: In full | Count 5: In full |
| Count 6: In full | Count 6: Not against | Count 6: In full | Count 6: In full |
| Count 7: In full | Count 7: In full | Count 7: In full | Count 7: In full |
| Count 8: In full | Count 8: In full | Count 8: In full | Count 8: In full |
| Count 9: In full | Count 9: In full | Count 9: In full | Count 9: In full |
| Count 10: In full | Count 10: In full | Count 10: In full | Count 10: In full |

---

[1] The Moving Defendants filed individual motions to dismiss on October 2, 2023. Pursuant to the Court's October 5, 2023 Text Order, the moving Defendants submit this consolidated motion.

## BACKGROUND

Trutek's Complaint is centered on a former commercial relationship between Trutek and Jintec America, Inc. ("Jintec"), which has now resulted in two lawsuits. A brief overview of that former relationship is helpful to understand *this* lawsuit, which is why Trutek attached both contracts it had with Jintec to its Complaint. *See* Docs. 1-3 & 1-4.

Defendant Cho is the President of Jintec, which has been defending against Trutek's first lawsuit since March 2021. Learning that Cho has a separate business venture with the recent launch of a product called COVIXYL, Trutek now aims at attacking Cho individually and as many entities as possible that are purportedly involved with COVIXYL.

Trutek developed a product called NasalGuard and received in 2012 a patent on technology related to it, the '802 Patent. Doc. 1-5. In early 2019, Jintec and Trutek began exploring a possible commercial relationship under which Jintec would market and distribute for retail sales NasalGuard in South Korea. On March 4, 2019, Jintec and Trutek executed the CDA (Doc. 1-2), under which they memorialized their desire to continue discussing a possible business relationship.

Jintec learned that the NasalGuard product contained ingredients in amounts that exceeded Korean regulations. Accordingly, to proceed with their intended business relationship, Trutek had to provide a reformulated NasalGuard product for Jintec to market and sell in Korea. Trutek advised Jintec that the reformulation of the product required a "substantial revision" and Trutek had to select a "completely new preservative system" in light of Korea's requirements.

While Trutek reformulated its NasalGuard product, Jintec worked at securing the appropriate trademark registrations to be able to market and distribute the forthcoming reformulated NasalGuard product in Korea. Those foreign trademarks were registered and assigned to Trutek at Jintec's own expense.

2

On May 12, 2019, Jintec and Trutek executed an agreement titled "For Importation, Marketing, Sales & Distribution of Trutek's NasalGuard® Gel-Tube Product in South Korea," (SK Agreement). Doc. 1-3. Jintec paid Trutek a **$75,000** licensing fee under the SK Agreement. The SK Agreement included Trutek's obligation to reformulate NasalGuard for sale in Korea. Jintec expended substantial effort in obtaining trademarks for the reformulated NasalGuard products (menthol scented and unscented) to be sold in Korea and began working on securing partners in Korea to distribute the product once it was approved for retail sale.

On July 15, 2019, Jintec submitted an initial purchase order to Trutek for 250,000 reformulated NasalGuard units for $617,500. Jintec made an initial installment payment on July 17, 2019, in the amount of **$122,208.68.**

Simultaneously, Jintec and Trutek began discussions about the marketing and distribution of NasalGuard in Greater China and Vietnam. And on November 6, 2019, the parties executed an agreement titled "For Importation, Marketing, Sales & Distribution of Trutek's NasalGuard® Gel-Tube Product in Greater China and Vietnam." Doc. 1-4. Jintec paid Trutek a **$300,000** licensing fee pursuant to the China Agreement.

Then, in December 2019—well before the expiration of the two-year shelf life of the reformulated products—Jintec reported to Trutek that the unscented product was exhibiting an unpleasant odor. Jintec also discovered that the reformulated products had a discoloration that was inconsistent with both the product's labeling, certificates of analyses from the manufacturer, and the original product. The malodor and discoloration were latent defects caused by Trutek's botched reformulation, which rendered the product unmarketable in Korea and Greater China.

Further, in March 2020, Covid-19 erupted worldwide, completely disrupting the global market. During the pandemic, travel restrictions, mask mandates, and other unforeseeable

government actions made it impossible and/or impracticable for Jintec to distribute and/or market the products from New Jersey to South Korea and Greater China.

In light of the uncovered latent defects and the global pandemic, and Trutek's unwillingness to help find a solution to these issues, Jintec did not submit additional purchase orders for the NasalGuard product.

Trutek received, in total, **$895,683.15** from Jintec. Jintec never sold a single unit of the NasalGuard product. Notwithstanding the substantial amount of money Trutek has been paid by Jintec, Trutek, greed-hungry for more money that it is not owed, filed in March 2021 breach of contract action against Jintec seeking **$2,000,000** for unissued purchase orders for products that Trutek never had manufactured and never had delivered to Jintec. *Trutek Corp. v. Jintec America, Inc.*, SOM-L426-21, (Superior Court of New Jersey Law Division: Somerset County). At bottom, Trutek wanted all the money it was expecting to make on the term length of the distribution agreements despite the latent defects it caused and the impossibilities caused by the global pandemic.

Jintec filed counterclaims and affirmative defenses related to the latent defects and the global pandemic. Jintec and Trutek served dueling expert reports related to reformulation and marketing. Those experts were deposed in October 2023. The current discovery end date is October 31, 2023. No trial has been set.

Now facing the serious prospect of failure on its claims against Jintec, Trutek filed this Complaint to set a new battleground in which to entrench Cho.

Instead of taking Cho head on, Trutek has elected to ensnare objectively innocent third-party individuals and entities asserting spurious claims of intentional torts, fraud, and conspiracy against them supported by nothing more than conclusory assertions.

4

At bottom, the technology operationalized in COVIXYL was largely developed by Abdul Gaffar and Sei Young Yun independent of Cho, and before Cho ever signed the CDA. Trutek's Complaint, except perhaps a limited patent dispute and an express breach of contract claim, is defectively pled.

## STANDARDS OF REVIEW

**Rule 12(b)(2)** permits a party to move to dismiss a case for lack of personal jurisdiction. When challenged, the plaintiff bears the burden of demonstrating "sufficient facts to establish that jurisdiction is proper." *Mellon Bank PSFS Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). In reviewing such a motion, a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). But when a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

Thus, to withstand a Rule 12(b)(2) motion, a plaintiff may not rely on the pleadings alone, as it "is inherently a matter which requires resolution of factual issues *outside the pleadings*." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (emphasis added). In conducting this jurisdictional analysis, district courts may rely upon the parties' declarations for relevant factual support. *See, e.g.*, *Pausch LLC v. Ti-Ba Enters.*, 2014 WL 5092649, at *3-4 (D.N.J. Oct. 8, 2014) (using declarations from both parties to conclude that contacts with the forum were insufficient for personal jurisdiction); *Shnayderman v. Cell-U-More, Inc.*, 2018 WL 6069167, at *4 (D.N.J. Nov. 20, 2018) (using information from the plaintiff's complaint and declaration to determine that the defendant did not travel to the forum state or solicit a loan from the plaintiff in the forum state). Therefore, in determining whether personal jurisdiction exists, the Court looks

beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

**Turning to Rule 12(b)(6)**, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up).

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

**In a case alleging conspiracy**, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8).

"**Rule 9(b)** imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir.

2002) (emphasis added). A party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *US. ex ret. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed not only to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, [but] to [also] safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (cleaned up).

## ARGUMENT

Trutek brings claims against **Cho** for breach of contract, concealment, conversion, federal and state trade secret violations, unjust enrichment, civil conspiracy, fraud, and a civil RICO violation. All claims against Cho should be dismissed with prejudice except for Trutek's breach of contract claim, which should be dismissed in part.

Trutek alleges **BioSure** is a company based in the United Kingdom doing business in England. Doc. 1, ¶ 9. Trutek also alleges BioSure sells a product called "BioSURE®PRO" online on its website "www.biosure.co.uk." *Id.* at 48. Trutek has not met its burden to demonstrate this Court can exercise personal jurisdiction over BioSure. Further, all other allegations Trutek's Complaint asserts against BioSure are conclusory. Untethered to any plausible fact allegations, Trutek's five claims against BioSure fail to state a claim: conversion, unjust enrichment, civil conspiracy, fraud, and a civil RICO violation.

Trutek alleges **Salvacion USA** is a New Jersey corporation co-founded by defendants Cho and Gaffar. Doc. 1, ¶¶ 5, 40. Trutek further alleges Cho assigned provisional patent applications

related to COVIXYL to Salvacion USA and then Salvacion USA filed non-provisional patent applications claiming priority to those applications. *Id.* at ¶¶ 44, 56. Trutek also alleges Salvacion USA manufactures COVIXYL. *Id.* at ¶ 42. The only fact allegations contained in Trutek's Complaint about **Salvacion International** are that it is a Wyoming company that fulfills online Amazon orders of COVIXYL. Doc. 1, ¶¶ 6, 46. Trutek's other allegations about Salvacion International are conclusory. Trutek asserts claims against Salvacion USA and Salvacion International for patent infringement, conversion, federal and state trade secret violations, unjust enrichment, civil conspiracy, fraud, and a civil RICO violation. Trutek's infringement claim should be dismissed in part. All other claims against Salvacion USA and Salvacion International should be dismissed with prejudice.

In short, the only claims that should proceed past the Rule 12(b) stage are Count 1, which should be limited to a claim for direct infringement of claim 2 in Trutek's '802 patent against only Salvacion USA and Salvacion International, and Count 2, which should be limited to an express breach of contract claim against only Cho.

## I.   Trutek cannot meet its burden to show this Court can exercise jurisdiction over BioSure consistent with due process principles.

It is telling that nowhere in its fifty-nine pages does Trutek's Complaint allege that BioSure has any minimum contacts with New Jersey. Instead of alleging facts that comport with the due process principles that this Court must apply to determine whether BioSure is subject to personal jurisdiction in New Jersey, Trutek says this Court has "in personam jurisdiction over" BioSure simply because it is a citizen of and resides in the United Kingdom. Doc. 1, ¶ 18. That fact does not support personal jurisdiction.

Trutek cannot meet its burden to show this Court can exercise jurisdiction over BioSure consistent with due process principles. But even if this Court could exercise personal jurisdiction

over BioSure, Trutek's Complaint fails to state a claim against BioSure upon which relief can be granted. Accordingly, Trutek's claims against BioSure should be dismissed under Rule 12(b)(2) and Rule 12(b)(6).

Personal jurisdiction can be established in a number of ways: general personal jurisdiction, specific personal jurisdiction, waiver, consent, and in-state service of an individual. Here, only specific personal jurisdiction requires consideration, because Trutek has not alleged general personal jurisdiction, waiver, consent, or in-state service. A federal court must have both statutory and constitutional authority to assert personal jurisdiction over an out-of-state defendant. *IMO Indus. Inc. v. Kiekert*, 155 F.3d 254, 259 (3d Cir. 1998). This two-step inquiry first looks to the forum state's long-arm statute then to the Due Process Clause of the Fourteenth Amendment to determine if the exercise of jurisdiction is permitted. *Id*. In New Jersey, however, the two steps are collapsed into a single analysis because the New Jersey long-arm statute allows for the "exercise [of] jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. J. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 589 (N.J. 2010) (internal quotation marks omitted); *rev'd on other grounds*, 564 U.S. 873 (2011). Therefore, for this Court to exercise personal jurisdiction over BioSure, the Due Process Clause requires (1) minimum contacts between BioSure and the state of New Jersey; and (2) that jurisdiction over BioSure comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

Specific personal jurisdiction may exist "if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 473. In light of Supreme Court precedent, the Third Circuit developed a three-part test to determine whether specific personal jurisdiction

9

exists. First, the defendant must have "purposefully directed [its] activities at the forum." *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). The first requirement of this test is also known as "purposeful availment," and seeks to ensure "that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts" or based on the "unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (internal quotation marks omitted) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)). Second, the litigation must "arise out of or relate to at least one of those activities." *O'Connor*, 496 F.3d at 317. Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id*. (internal quotation marks omitted).

Trutek's Complaint fails to meet its burden on each prong of the three-part specific personal jurisdiction test.

***First***, Trutek has not met its burden to demonstrate purposeful availment, which must arise out of contacts that the "defendant himself" creates with the forum State. *Burger King*, 471 U.S. at 475; *see also Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 531 (D.N.J. 2013) ("Specific personal jurisdiction generally must be evaluated in both a *claim-specific* and *defendant-specific* fashion."). That is because "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Indeed, the Supreme Court has consistently rejected plaintiff's attempts to meet the defendant-centric "minimum contacts" requirement based on others' contacts with the forum state. *See Helicopteros*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a

10

defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (stating that however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated"). Also, the "minimum contacts" requirement "looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 283. Stated another way, "the plaintiff cannot be the only link between the defendant and the forum," and "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.*

Trutek's Complaint is devoid of any allegations that demonstrate sufficient contacts with New Jersey to justify jurisdiction over BioSure. Trutek seems to allege that personal jurisdiction over BioSure is proper because it was "an integral part of an enterprise that committed torts against" Trutek. Doc. 1, ¶ 23 (alleging venue is proper). At bottom, Trutek seems to suggest that either its intentional tort claims or its conspiracy-based claims give rise to jurisdiction over BioSure in New Jersey. Trutek is wrong.

### A. The intentional tort claims do not give rise to jurisdiction in New Jersey.

There is nothing to connect BioSure's alleged misconduct to New Jersey. The intentional tort claims (conversion, civil conspiracy, fraud, and civil RICO), which are all the claims asserted against BioSure except unjust enrichment, cannot support jurisdiction over BioSure. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286. The question is not whether Trutek experienced a particular injury or effect in New Jersey, but whether BioSure's "conduct connects [it] to the forum in a meaningful way." *Id.* at 290. That is, BioSure must have done something to "'tether[ ]' the effect of [its] actions to [New Jersey]." *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020) (quoting *Walden*, 571 U.S. at 290)

(allegations of fraud and intentional interference directed at Minnesota plaintiff did not give rise to jurisdiction in Minnesota).

There is nothing to tether BioSure's alleged misconduct to New Jersey. There are no allegations that anyone in New Jersey but Trutek was harmed or had the potential to be harmed. There are no allegations that BioSure directed any misconduct into New Jersey. The "mere [alleged] injury to a forum resident is not sufficient connection to the forum." *Walden*, 571 U.S. at 290. BioSure's allegedly tortious interactions with Trutek are insufficient. "[A] defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020) (misrepresentations directed into the forum state plus knowledge that plaintiff was a forum resident are insufficient). Because none of BioSure's alleged misconduct forms a contact with New Jersey, "the mere fact that [its alleged] conduct affected [Trutek] with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 290.

## B. The conspiracy claims do not give rise to jurisdiction in New Jersey.

Likewise, BioSure's alleged participation in a conspiracy does nothing to connect it with New Jersey.[2] The conspiracy theory of personal jurisdiction rests on the idea that "'the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy.'" *Roy v. Brahmbhatt*, 2008 WL 5054096, at *6 (D.N.J. Nov. 26, 2008). But this Court has repeatedly made clear that attempting to shoehorn an alleged conspirator with no independent minimum contacts with the state into the Court's jurisdiction "is violative of due process." *Id.* at *9; *see also Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 440 (D.N.J. 2021) ("No matter

---

[2] Also, BioSure was not served with process in the United States. Trutek's civil RICO claim cannot support personal jurisdiction because it does not authorize international service to confer personal jurisdiction on an alleged conspirator. *See* 18 U.S.C. § 1965(b).

which way one looks at it, the [conspiracy] theory rises and falls with federal due process. And federal due process does not square with the conspiracy-jurisdiction theory.").

### C.  The unjust enrichment claim does not give rise to jurisdiction in New Jersey.

Trutek's unjust enrichment claim is centered on BioSure's alleged profits from the sales of Covixyl. Doc. 1, ¶ 141. Nowhere in the Complaint does Trutek allege BioSure sold any product in New Jersey. Instead, Trutek concedes that whatever alleged involvement BioSure had, it was international. *Id.* at ¶¶ 23, 48, 83. At bottom, Trutek does not allege that BioSure profited from sales in New Jersey.

Having failed to meet the first prong, Trutek necessarily fails to meet its burden on the *second* prong of the three-part specific personal jurisdiction test, that this litigation arose from any activity of BioSure directed at New Jersey, because Trutek has failed to demonstrate BioSure directed any activity at New Jersey.

### D.  Even if sufficient minimum contacts existed, exercise of personal jurisdiction over BioSure would not comport with fair play and substantial justice.

The *third* prong of the three-part specific personal jurisdiction test is not satisfied because, even if minimum contacts with New Jersey existed, the Court exercising jurisdiction over BioSure would not otherwise comport with fair play and substantial justice. This analysis turns on the following factors: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen Corp.*, 444 U.S. at 292. The factors do not weigh in favor of Trutek's claims against BioSure being litigated in New Jersey.

Here, there is a total absence of affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. In short, whatever minimum contact could theoretically exist, it would not support haling BioSure from the United Kingdom to New Jersey to defend itself in this litigation. "These facts are a strong indication that haling [BioSure] into this Court would offend traditional notions of fair play and substantial justice." *Hudson Marine Mgmt. Servs., Inc. v. Thomas Miller (Miami) Inc.*, 2006 WL 1096784, at *4 (D.N.J. Apr. 20, 2006). Indeed, the "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114 (1987).

BioSure would be heavily burdened by litigating in New Jersey. First, this is a foreign legal system. Second, assuming the Court does not otherwise dismiss the claims against it under Rule 12(b)(6), BioSure would incur heavy expenses and costs related solely to its international status, including but not limited to costs for its attorneys to travel internationally to the United Kingdom to prepare for and defend it in deposition and for its party representative and witnesses to travel internationally to attend trial in New Jersey. If New Jersey has any interest at all in adjudicating Trutek's claims against BioSure (none is apparent), it is *de minimis* and does not outweigh the burden on BioSure. Trutek interest's in obtaining convenient and effective relief will not be affected. It seeks joint and several liability among seven defendants for the same claims it has asserted against BioSure. Further, it will be more convenient for Trutek, who conducts business in the United Kingdom, Doc. 1, ¶ 24, to litigate there than for BioSure to litigate in New Jersey. The interstate judicial system's interest in obtaining the most efficient resolution of controversies will not be affected because any alternative venue will be in the United Kingdom, not in a different

14

United States district. For the same reasons, the shared interest of the several states in furthering substantive social policies is not at issue.

Considering the international context, the heavy burden on the alien defendant, and the *de minimis* interests, if any, of Trutek and New Jersey, the exercise of personal jurisdiction by a New Jersey court over BioSure in this instance would be unreasonable and unfair.

At bottom, well-established principles of personal jurisdiction are sufficient to decide this Motion. Here, the application of those principles is clear: BioSure's alleged misconduct occurred entirely outside of New Jersey, and the mere fact that its conduct allegedly affected Trutek, who is connected to New Jersey, does not suffice Trutek's burden to show the Court it has authority to exercise jurisdiction over BioSure. For all these reasons, Trutek has failed to satisfy its burden to demonstrate that the Court may exercise personal jurisdiction over BioSure. Trutek's claims against BioSure should be dismissed for lack of personal jurisdiction.

But even if this Court could exercise personal jurisdiction over BioSure, Trutek's Complaint fails to state a claim against BioSure upon which relief can be granted as argued below.

BioSure and the moving Defendants turn now to their Rule 12(b)(6) arguments.

## II.   Count One (Salvacion USA & Salvacion International): Trutek's claim for infringement of the 802 patent should be dismissed in part because Trutek fails to state a claim for direct infringement of claim 1 or induced infringement of any claim.

Trutek's claim against Salvacion USA and Salvacion International for infringement of the 802 patent (Count One) should be dismissed in part because Trutek fails to state a claim for multiple aspects of Count One. Specifically, Trutek's claim for direct infringement of claim 1 of the '802 patent ("Claim 1") should be dismissed because no single actor carries out all steps of the claimed method. Trutek's claim for induced infringement should be dismissed entirely because there is no underlying act of direct infringement for Claim 1 and because Trutek has not alleged

that either Salvacion USA or Salvacion International has the requisite knowledge and intent for induced infringement of any claim of the 802 patent.

### A. Trutek fails to state a claim for direct infringement of claim 1 of the 802 patent.

Trutek fails to state a claim for direct infringement of Claim 1 because it has not and cannot allege that a single actor is responsible for carrying out all steps of that method claim. "Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). If more than one actor is involved in carrying out the steps of the method, direct infringement can only be found if all of the acts are attributable to a single party such that it can be held responsible. *Id.* Actions can be attributed to a single entity if that entity "directs or controls others' performance." *Id.* Direction or control is found if the alleged infringer "acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method" or if the "alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1022-23.

To begin, on its face, Claim 1 requires multiple actors to complete all steps of the claimed method. Claim 1 is reproduced below with the active steps highlighted.

> 1. A method for electrostatically inhibiting harmful particulate matter from infecting an individual through nasal inhalation wherein a formulation **is applied to skin or tissue of nasal passages** of the individual in a thin film, said method comprising:
>
> a) **electrostatically attracting** the particulate matter to the thin film;
>
> b) **holding** the particulate matter in place by **adjusting the adhesion of the thin film** to permit said thin film to stick to the skin or tissue and by **adjusting the cohesion of the formulation** to provide adequate impermeability to the thin film; and,

     c) **inactivating** the particulate matter by **adding at least one ingredient** that would render said particulate matter harmless.

Doc. 1-5, cl. 1 (emphasis added).

These steps implicate two different actors. A formulation must be applied to the skin or tissue of nasal passages and once applied, the formulation attracts particulate matter, holds that particulate matter, and inactivates the particulate matter. Those steps must be carried out by the end user of COVIXYL. Trutek never alleges otherwise, and indeed its allegations of induced infringement are based on customers using COVIXYL. Doc. 1, ¶ 92. The method also claims two additional actions: adjusting the adhesion and cohesion of the film or formulation. Although logic would be enough to support the point, Trutek specifically alleges that the formulator, not the end user, performs those actions. Doc. 1, ¶ 38.[3] Thus, no single entity carries out all steps of the method of Claim 1.

Nor has Trutek alleged that the actions of users of COVIXYL are attributable to either Salvacion USA or Salvacion International. Trutek has not alleged any agency relationship or contract between either Salvacion USA or Salvacion International and users of COVIXYL. Trutek has also not alleged any facts that would support the conclusion that Salvacion USA or Salvacion International "conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Akamai Techs.*, 797 F.3d at 1022–23. The "conditioning" and "establishment" for attribution cannot be based on a loose relationship. The Federal Circuit has found such conditioning when a defendant enters into a contract with a user and offers a content delivery service that will only

---

[3] To be precise, only Salvacion USA, not Salvacion International, is alleged to be the manufacturer of COVIXYL. Doc. 1, ¶ 42.

work if the user carries out specified tasks, *id.* at 120–05, or when a doctor will only carry out the final step in a multi-step treatment process if the patent performs required pre-treatments at a specified time, *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1365–66 (Fed. Cir. 2017). On the other hand, "mere guidance or instruction is insufficient to show conditioning." *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1379 (Fed. Cir. 2017) (internal quotation marks omitted).

Here, the complaint contains no allegations that would support an inference of "conditioning" or "establishment." At most, the complaint alleges that COVIXYL is sold and that customers can use it as directed. This would be nothing more than an insufficient allegation that "customers . . . merely take [Defendant's] guidance and act independently on their own." *Akamai Techs.*, 797 F.3d at 1025. Once the product is sold, the product and any benefits of its use passes out of Salvacion USA's hands. There is no further benefit that it can withhold from the customer and no way for it to specify the manner or timing of the customer's use. Thus, Trutek has not and cannot allege facts to support an inference of attribution.

Because Trutek cannot allege that any single entity—and particularly Salvacion USA or Salvacion International —is responsible for performing all steps of claim 1, it cannot state a claim for direct infringement of that claim.

## B. Trutek fails to state a claim for induced infringement of any claim of the 802 patent.

Trutek's claim for induced infringement must be dismissed for two reasons. With respect to Claim 1, Trutek has not stated a claim for the requisite direct infringement to support an inducement claim. Beyond that, Trutek fails to state a claim for inducement of infringement of any claim of the 802 patent because it has not alleged the requisite knowledge and intent.

First, Trutek's inability to state a claim for direct infringement dooms its claim for induced

infringement of Claim 1 against Salvacion USA and Salvacion International. Liability for inducement requires an underlying act of direct infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014); *All Weather Armour, LLC v. Art of Gutter, Inc.*, 2020 WL 9720067, at *2 (D.N.J. June 23, 2020). Having failed to state a claim for direct infringement of Claim 1, Trutek cannot state a claim for inducement of that claim.

Second, and more broadly, Trutek has not plausibly alleged that Salvacion USA or Salvacion International possessed the requisite knowledge and intent for induced infringement of any claim of the 802 patent. Liability for inducement requires knowledge *both* of the patent *and* that the acts it allegedly induced constitute patent infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *Otsuka Pharm. Co. v. Zydus Pharms. USA*, 151 F. Supp. 3d 515, 520-21 (D.N.J. 2015) ("In order to state a claim for inducement, the patent owner must therefore allege . . . that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." (internal quotation marks omitted)). In Count I, Trutek makes no allegation that Salvacion USA or Salvacion International knew any acts that it allegedly induced constituted infringement or intended to cause infringement. Doc. 1, ¶¶ 87-98. Its only allegation on that point comes earlier where it conclusorily states that Salvacion USA and Salvacion International were "aware" that COVIXYL infringes the 802 patent. Doc. 1, ¶ 82. Trutek alleges no facts in support of that assertion. Courts in this district frequently dismiss inducement claims grounded on such conclusory statements. *All Weather Armour*, 2020 WL 9720067, at *2 ("Plaintiff's mere conclusory statement that Defendant 'knew' its products would infringe the 955 Patent . . . is insufficient to demonstrate specific intent to induce infringement."); *Otsuka Pharm. Co.*, 151 F. Supp. 3d at 521 (dismissing inducement claim where complaint "allege[s] *only* that

19

Defendants have 'actual knowledge'" of the asserted patent and that product labels would instruct an infringing use and collecting similar cases). Without facts supporting the requisite knowledge and intent, Trutek cannot state a claim for induced infringement of any claim.

To summarize, Trutek's claim for direct infringement should be dismissed as to claim 1 of the 802 patent and its claim for indirect infringement should be dismissed entirely. Any infringement case that Trutek wishes to pursue should be limited to a claim for direct infringement of claim 2 (and any other formulation claims it can pursue in good faith.)

### III.    Count Two (Cho): Trutek's claim for breach contract should be dismissed in part.

In Count Two, which is labeled "Breach of Contract", Trutek asserts more than just an express breach of contract. Trutek also alleges separate contract-related claims which fail as a matter of law.

#### A. Trutek's claim for breach of an implied covenant of good faith and fair dealing fails as a matter of law.

In Count Two, Trutek alleges that "Cho breached the implied warranty[4] of good faith and fair dealing." Doc. 1, ¶ 105. "[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." *Pickett v. Lloyd's & Peerless Ins. Agency, Inc.,* 621 A.2d 445, 450 (N.J. 1993).

Fatal to Trutek's claim, "a claim for breach of implied covenants cannot pertain to any matter specifically covered by the express covenants between the parties." *Enrunda Trading Co. v. MTM Trading LLC*, 2018 WL 11241079, at *3 (D.N.J. Mar. 29, 2018) (granting Rule 12(b)(6) motion to dismiss claim for breach of implied covenant that was based on the same issue related to the claim for breach of express contract term). Implied covenants and express terms of a contract

---

[4] This motion assumes that Trutek's word choice "warranty" is an error and that Trutek is not alleging a theory under the New Jersey Product Liability Act.

are necessarily mutually exclusive. *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993). The law will imply a contractual term only for covenants omitted. *Id.*

Here, Trutek alleges that Cho's same actions breached both an *express* contract term (Doc. 1, ¶ 104), *and* an *implied* covenant (Doc. 1, ¶ 105). Accordingly, the Court should dismiss Trutek's claim for breach of implied warranty with prejudice.

### B. Trutek's breach of contract claim, in so far as it seeks ownership of a patent application, fails to state a claim.

Trutek's alleges that Cho breached the CDA by filing a United States and an international patent application and seeks as relief a judgment "requiring Cho to convey and assign" the patent applications to Trutek. Doc. 1, ¶¶ 104, 105(c)–(d). Trutek's requested relief fails as pled because Trutek also alleges that the patent applications have been assigned to Salvacion USA. *Id.* at ¶ 114. Accordingly, even assuming a breach of contract (which Cho disputes), Cho in his individual capacity cannot "convey and assign" the patent applications to Trutek because they are not within his possession or control to convey or assign.

### C. Trutek's breach of contract claim, in so far as it seeks a permanent injunction, fails to state a claim.

Trutek alleges that Cho breached the CDA by developing and marketing COVIXYL, which Trutek says infringes its '802 Patent and derived from the confidential information Trutek disclosed to Cho. Doc. 1, ¶ 104. Trutek seeks a judgement "enjoining Cho from continuing his activities" related to COVIXYL. *Id.* at ¶ 105(e).

To be entitled to a permanent injunction, a plaintiff must prove: "(1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages," prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) "that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Trutek's requested injunction fails as a matter of law because Trutek has not alleged that it is suffering an irreparable injury or that remedies available at law are inadequate. Instead, Trutek pled that it *is* entitled to compensatory damages for the same breach. Doc. 1, ¶ 105(a). So not only has Trutek failed to state a claim for injunctive relief, it has also pled its injunction claim out of court.

**IV.     Count Three (Cho): Trutek has failed to state a claim for concealment.**

Trutek alleges that Cho had a duty under the CDA to disclose that he was "developing, making, using, offering to sell, selling, and exporting" COVIXYL. Doc. 1, ¶ 107. Trutek further alleges that in violation of the CDA, Cho concealed that he was doing such things. *Id.* at ¶ 108. Trutek asserts that Cho's actions constitute tortious concealment. *Id.* (Count Three).

Tortious concealment was first recognized as a cause of action in *Viviano v. CBS, Inc.*, 251 N.J. Super. 113, 123–26 (App. Div. 1991). It is analogous to a claim for "spoliation of evidence," and can accurately be called "concealment of evidence." *Viviano*, 251 N.J. Super. at 125–126. To prevail on a tortious concealment claim, a plaintiff must prove: (1) the defendant had a legal obligation to disclose the evidence; (2) the evidence was material to the plaintiff's case; (3) the plaintiff could not have readily obtained the evidence without disclosure by the defendant; (4) there was intentional nondisclosure by the defendant; and (5) the plaintiff was harmed by relying on the nondisclosure. *Baxt v. Liloia*, 155 N.J. 190, 206 (1998). The "textbook case for tortious concealment" is where a defendant is legally required to respond to discovery requests and holds back material evidence the requesting party needs to prove its case. *Id.*

Trutek's allegations fail to state a claim for tortious concealment. The purported disclosure obligation arises out of the CDA, not one related to litigation discovery. Doc. 1, ¶ 107. In short, Trutek's tortious concealment claim is identical to its breach of contract claim. Because Trutek's

tortious concealment claim is unrelated to a legal obligation to respond to a formal discovery request such as a subpoena, interrogatory, or request for production, it fails to state a claim.

Separately, Trutek's tortious concealment claim also fails as a matter of law under New Jersey's economic loss doctrine. A plaintiff is barred "from recovering in tort economic losses to which their entitlement only flows from contract." *Duquesne Light Co. v. Westinghouse Elec. Co.*, 6 F.3d 604, 618 (3d Cir. 1995). This doctrine "functions to eliminate recovery on a contract claim in tort clothing." *G&F Graphic Servs. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 588–89 (D.N.J. 2014).

Trutek nominally recasts its claim for breach of contract as a tortious concealment claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 107. In short, the damages Trutek alleges from the tortious concealment claim flow from the alleged breach of the contract itself. Trutek's tortious concealment claim is a contract claim in tort clothing and is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

## V.   Count Four (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for conversion.

To prevail on a claim for conversion, a plaintiff must prove: "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Corestar Int'l Pte, Ltd. v. LPB Commc'n*, 513 F. Supp 2d 107, 127 (D.N.J. 2007).

Trutek alleges that Cho converted a United States and an international patent application related to COVIXYL by assigning the patent applications to Salvacion USA, Inc. Doc. 1, ¶¶ 113, 114. Trutek further alleges that all defendants converted the "profits and benefits" from COVIXYL by selling the product. *Id.* at ¶ 116. Trutek's allegations fail to state a claim for conversion for six independent reasons.

*First*, the economic loss doctrine bars Trutek's conversion claim. "Conversion is an intentional tort." *LaPlace v. Briere*, 962 A.2d 1139, 1145 (N.J App. Div. 2009). Trutek nominally recasts its claim for breach of contract as a conversion claim. *Compare* Doc. 1, ¶ 104 *with* ¶¶ 113–116. Indeed, Trutek explicitly alleges that Cho's actions converted the patent applications "in violation of the terms and conditions of the CDA." *Id.* at ¶¶ 113–114. Trutek also alleges the "profits and benefits" were "converted" because they were owed to Trutek under the CDA. *Id.* at ¶¶ 115–116. Accordingly, Trutek's conversion claim against Cho is a contract claim in tort clothing and is therefore barred by the economic loss doctrine.

The economic loss doctrine also bars Trutek's conversion claim against the other moving Defendants. "[I]t is generally accepted that the economic loss doctrine does not require the parties to be in privity of contract." *Schenker, Inc. v. Expeditors Int'l of Wash., Inc.*, 2016 WL 3563187, at *2 (N.J. Super. Ct. App. Div. July 1, 2016). This Court has held that if a plaintiff pursues contractual remedies against a different party, it cannot seek tort remedies against a defendant if those "remedies can plainly be characterized as contractual remedies against" the other party, even if the alleged tortfeasor lacks privity of contract. *MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ.*, 2021 WL 1168962, at *6 (D.N.J. Mar. 26, 2021).

Trutek nominally recasts its claim for breach of contract against defendant Cho as a conversion claim against all defendants. Trutek alleges the "profits and benefits" were "converted" because they were owed to Trutek under the CDA. Doc. 1, at ¶¶ 115–116. Accordingly, Trutek's conversion claim is a contract claim in tort clothing and is therefore barred by the economic loss doctrine. Trutek "may not supplement its [contract] claims" against Cho with allegations of conversion against the other defendants. *MJF Elec. Contracting, Inc*, 2021 WL 1168962, at *6.

**Second**, BioSure, Salvacion USA, and Salvacion International are not parties to or subject to the CDA. See Doc. 1-2. Trutek grounds its conversion claim on the obligations that arise out of the CDA. Doc. 1, at ¶ 115. Accordingly, Trutek's conversion claim fails as pled because BioSure, Salvacion USA, and Salvacion International had no legal obligation under the CDA.

**Third**, it is well established New Jersey law that a conversion claim for intangible property cannot stand. *See, e.g., Cameco, Inc. v. Gedicke*, 690 A.2d 1051 (N.J. Super. Ct. App. Div.1997); *see also StrikeForce Techs., Inc. v. WhiteSky, Inc.*, 2013 WL 3508835, *8 (D.N.J. 2013). That is because conversion claims are limited to "chattel." *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281 (N.J. App. Div. 2009). Intellectual property is intangible property. *Strikeforce*, 2013 WL 3508835 at *8.

Here, Trutek says the patent applications and the profits and benefits therefrom were converted. Doc. 1, ¶¶ 113, 114, 116. None of that is property subject to the tort of conversion. Patent rights are not chattel. *Zwoyer v. Hackensack Tr. Co.*, 160 A.2d 156, 160 (N.J. App. Div. 1960). Even more specific to Trutek's allegations, patent applications represent only the idea of the invention (the intangible idea) and nothing more. *Tethys Bioscience, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 2009 WL 4722679, at *3 (N.D. Cal. Dec. 9, 2009). At most, they are intangible property. *See Holt v. United States,* 1973 WL 614, at *2 (D.D.C. Aug. 23, 1973) (holding patent applications are intangible property under the Uniform Commercial Code); *see also Talge v. United States*, 229 F. Supp. 836, 848 (W.D. Mo. 1964) (holding patent applications are intangible property under the Internal Revenue Code). Patent applications therefore are not convertible property. Also, the alleged converted profits and benefits from the patent applications is a claim for lost profits which is not subject to the tort of conversion. *Austar International Limited v. AustarPharma LLC*, 425 F. Supp. 3d 336, 358 (D.N.J. 2019). Accordingly, Trutek has failed to

state a claim for conversion of patent applications and the profits and benefits derived from sales of products related to those patent applications.

**Fourth**, federal patent law preempts Trutek's conversion claim. Trutek's conversion claim seeks an award of profits and benefits from the sale of products related to those patent applications. Trutek cannot use a state law claim to end run around the federal patent scheme. *See Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149 (E.D.N.Y. 2016) (holding state law conversion claim preempted by federal patent law where alleged converted property related to alleged patent ownership interests).

**Fifth**, Trutek has failed to allege any facts that demonstrate it had a right to *immediate possession* of the patent applications or the profits and benefits from the sale of products related to those patent applications. "The plaintiff's right to immediate possession of the property is essential to a claim of conversion." *Hunter v. Sterling Bank*, 588 F. Supp. 2d 645, 650 (E.D. Pa. 2008) (applying New Jersey law); *see Commercial Ins. Co. of Newark v. Apgar*, 267 A.2d 559 (N.J. Super. Ct. 1970) (to show the right to immediate possession of money, "[i]t is essential that the money converted by a tortfeasor must have [previously] belonged to the injured party").

Trutek concedes in three separate allegations that it has no such right: (1) Trutek says that had it known about COVIXYL, it would have had to have taken an intermediate step of filing an action to enjoin the defendants from selling it (Doc. 1, ¶ 110); (2) Trutek admits that the patent applications related to COVIXYL have not been denied by the United States Patent and Trademark Office and are not in Trutek's name (*id.* at ¶ 116(c)); and (3) that ownership of the patent applications and the products related thereto by Trutek would require an intermediate step of patent assignment (*id.*). In short, Trutek's own allegations demonstrate that it has not sufficiently alleged a right to an immediate possession to the property it claims has been converted. That is, Trutek has

26

not alleged that it was previously in possession of the rights of the patent applications or the profits and benefits from the sale of products related to those patent applications. Instead, Trutek's Complaint demonstrates there are multiple, necessary intermediate steps before Trutek can maintain any right or possession to the patent applications or the profits and benefits from the sale of products related to those patent applications.

*Sixth*, where a defendant's possession is initially lawful, before a claim for "conversion will accrue," it is "necessary" that the plaintiff demand a return of the property. *Meisels v. Fox Rothschild LLP*, 240 N.J. 286, 304 (2020) (internal citation and quotation marks omitted). The plaintiff bears the burden of proof that it made such a demand and that the defendant refused. *Id.* "The demand is the linchpin that transforms an initial lawful possession into a setting of tortious conduct." *Id.* at 305. It is an "essential" element of the claim. *Id.* Here, Trutek has failed to allege that it made a pre-suit demand for the return of the property it claims has been converted. Nor could Trutek, because it never made such a demand before filing suit.

Trutek's conversion claim should be dismissed with prejudice.

## VI. Count Five (Cho, Salvacion USA & Salvacion International): Trutek has failed to state a claim for theft of trade secrets under Federal law.

To prevail on a federal trade secret misappropriation claim, a plaintiff must prove: "(1) the existence of a trade secret (2) that is related to a product or service used in, or intended for use in, interstate or foreign commerce, and (3) the misappropriation of that trade secret." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380–81 (3d Cir. 2021) (cleaned up). Significantly, each element of this claim "is predicated on an adequate identification of what the plaintiff contends to be its trade secret." *Id.* To determine whether a plaintiff has identified information that plausibly supports it having status as a trade secret, courts consider whether the plaintiff "has taken reasonable measures to keep . . . [it] secret" and whether the "information derives independent economic value, actual

27

or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. § 1839(3); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).

Trutek alleges that the confidential information that it disclosed to Cho under the CDA contained Trutek's trade secrets. Doc. 1, ¶¶ 118, 120. Trutek says that Cho, Gaffar, Yun, and Salvacion USA misappropriated its trade secrets by filing and utilizing the United States and international patents related to COVIXYL and that those defendants and Salvacion International <u>conspired</u> to misappropriate its trade secrets by making, selling, and exporting COVIXYL. *Id.* at ¶¶ 123–125. Trutek's federal trade secret misappropriation claim fails to state a claim for three independent reasons.

***First***, Trutek fails to state a claim for federal trade secret misappropriation because it brings the claim *solely* under the *criminal-specific provision*, 18 U.S.C. § 1832, Doc. 1, p. 36 (Count Five), and seeks an award of *criminal fines* as "damages as prescribed 18 U.S.C. § 1832(b)," *id.* at ¶ 126(a). Trutek also alleges that the defendants <u>criminally</u> "conspired . . . in violation of 18 U.S.C. § 1832(a)(5)." Accordingly, Trutek fails to state <u>civil</u> claim and is due to be dismissed. *See Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018) (holding private plaintiffs do not have a right to enforce the criminal trade secret provision); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 271 F. Supp. 3d 835, 842–43 (E.D. Va. 2017) (same); *Nelson Brothers Professional Real Estate LLC v. Beau Jaussi et al.*, 2017 WL 8220703, at *6 (C.D. Cal. Mar. 23, 2017) (same).

***Second,*** the economic loss doctrine bars Trutek's claim against the defendants. Misappropriation of a trade secret is a tort. *Baxter Healthcare Corp. v. HQ Specialty Pharma*

28

*Corp.*, 157 F. Supp. 3d 407, 421 (D.N.J. 2016). This court has recently dismissed a plaintiff's federal trade secret claim when nominally recast *and* simultaneously asserted with breach of contract. *See Microbilt Corp. v. Bail Integrity Sols., Inc.*, 2019 WL 6310202, at *6 (D.N.J. Nov. 25, 2019). This court also routinely dismisses state trade secret claims under the economic loss doctrine. *See infra* Section VII. And here, Trutek nominally recasts its claim for breach of contract as a federal trade secret misappropriation claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 120 (alleging the CDA required Cho to not "use" Trutek's "trade secrets" for "any other purpose other than to serve as distributor for Trutek's products"). Trutek's federal trade secret misappropriation claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

      ***Third***, Trutek failed to specifically identify a trade secret. "To plead the existence of a trade secret in a misappropriation claim," a plaintiff "must sufficiently identify the information it claims as a trade secret." *Oakwood Labs. LLC*, 999 F.3d at 905. Until a plaintiff does so, a court cannot evaluate "any element of a trade secret misappropriation claim." *Id.*

      Trutek says that its trade secrets are "e.g., manufacturing methodology, efficacy, ingredients, level of electrostatic charged necessary and sufficient to be effective, *etc.*" Doc. 1, ¶ 118. This generic list fails the standard for specifying a trade secret. *See Mallet & Co. Inc.*, 16 F.4th 364, 384–85 (holding that a generic list including "formulas," "pricing and volume data," and "training materials showing how [it] markets and sells its products" were not articulated with enough particularity as to afford the list trade secret status"); *see also A&P Tech., Inc. v. Lariviere*, 2017 WL 6606961, at *10 (S.D. Ohio Dec. 27, 2017) ("Terms such as 'engineering,' 'research and development procedures and materials,' and 'marketing materials' could be applied to almost any corporation in existence, and do not in any way allow Defendants to properly craft a defense around the alleged misappropriation of trade secrets.").

In addition to the lack of specificity in Trutek's alleged "ingredients" trade secret, the ingredients nevertheless fail to constitute a trade secret because the ingredients are publicly listed in Trutek's '802 Patent. *See* Doc. 1-5, at 5–7.[5] The '802 Patent issued in **2012**, and had thus been in the public domain for seven years before Cho and Trutek entered into the CDA (the only alleged source of trade secret protection). Information publicly available cannot be accorded trade secret status. *Mallet & Co. Inc.*, 16 F.4th at 384. Indeed, a "formula disclosed in a patent is, by definition, not a secret." *Id.* at 383.

In addition to the lack of specificity in Trutek's alleged "level of electrostatic charged necessary and sufficient to be effective" trade secret, Doc. 1, ¶ 118, based on Trutek's own allegations, such information is both publicly available and otherwise "readily ascertainable through proper means," 18 U.S.C. § 1839(3)(B), which includes "reverse engineering, independent derivation, or any other lawful means of acquisition," *id.* at § 1839(6)(B). Here's how. Trutek alleges that "Trutek's '802 Patent state[s] that . . . a 0.13% solution of benzalkonium chloride to a person's nostrils would create a positively charged electrostatic field of sufficient strength to attract the negatively charged germs." Doc. 1, ¶ 118. So the purported trade secret ("level of electrostatic charged necessary and sufficient to be effective") is publicly available in Trutek's '802 Patent and therefore no secret at all. Moreover, Trutek alleges that it obtained the COVIXYL product and tested the product's electrostatic charge in Trutek's own lab and that Trutek determined that the product's charge is "approximately equal" to that of the charge in Trutek's own product. *Id.* at ¶ 51. So, taking Trutek's allegations as true, an electrostatic charge can be determined merely by

---

[5] In deciding this motion, the Court may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

testing a product in a lab. Based on the face of the Complaint, it follows that the "level of electrostatic charged necessary and sufficient to be effective" is readily ascertainable by two proper methods: (1) testing the electrostatic charge of a 0.13% solution of benzalkonium chloride (which is a publicly available ingredient and percentage); or (2) by ordering and testing the charge in Trutek's product in a lab (the same method that Trutek alleges it performed on COVIXYL). Either way, for Trutek to allege that such information is a trade secret is an absurdity based on its own Complaint.

Moreover, Trutek's Complaint contains no factual allegations identifying what specific trade secretes the defendants purportedly used. *See* Doc. 1, ¶¶ 122–124 (generically alleging Cho "utilized trade secrets"). There is therefore nothing in the Complaint to support that Cho, Salvacion USA, or Salvacion International used any specifically identified trade secrets.

## VII.   Count Six (Cho, Salvacion USA, & Salvacion International): Trutek has failed to state a claim for theft of trade secrets under New Jersey law.

To prevail on a New Jersey trade secret misappropriation claim, a plaintiff must prove: "(1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff." *Rohm and Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 429–430 (3d Cir. 1982). The plaintiff must also have taken "precautions to maintain the secrecy of the trade secret." *Id.* at 430.

A trade secret may consist of a "formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, prototype or process," that "[de]rives independent economic value" and is not "readily ascertainable by proper means." NJ Rev Stat § 56:15-2. A trade secret does not include matters of public knowledge. *P.C.*

*of Yonkers, Inc. v. Celebrations! The Party And Seasonal Superstore, L.L.C.*, 2007 WL 708978, at *10 (D.N.J. Mar. 5, 2007*).

Additionally, like a federal claim, a New Jersey claim places a burden on the plaintiff to specifically identify the "trade secret with precision so as to inform the defendant exactly what the plaintiff is alleging to have been misappropriated . . . at the outset of the litigation, if not before." *Givaudan Fragrances Corp. v. Krivda*, 2013 WL 5781183, at *5 (D.N.J. Oct. 25, 2013) (New Jersey claim). It is "hornbook law" that a plaintiff must allege with particularity "what precisely is asserted as a secret." *Id.*

The legal analyses related to federal and state trade secret claims are substantially similar. And Trutek's New Jersey trade secret misappropriation claim makes identical allegations to its federal claim. *Compare* Doc. 1, ¶¶ 118–121 *with* ¶¶ 128–131. Accordingly, both the federal and state law claims fail to state a claim for two of the same reasons.

***First***, the economic loss doctrine bars Trutek's claim against the defendants. Misappropriation of a trade secret is a tort. *Baxter Healthcare Corp.*, 157 F. Supp. 3d at 421. This court routinely bars state trade secret claims when nominally recast and asserted alongside breach of contract. *See Howmedica Osteonics Corp. v. Zimmer, Inc.*, 2012 WL 5554543, at *10 (D.N.J. Nov. 14, 2012); *Trico Equip., Inc. v. Manor*, 2011 WL 705703, at *3 (D.N.J. Feb. 22, 2011); *Air Express Int'l v. Log-Net, Inc.*, 2016 WL 5334659, at *3 (D.N.J. Sept. 22, 2016). And here, Trutek nominally recasts its claim for breach of contract as a New Jersey trade secret misappropriation claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 130 (alleging the CDA required Cho to not "use" Trutek's "trade secrets" for "any other purpose other than to serve as distributor for Trutek's products"). Trutek's New Jersey trade secret misappropriation claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

**Second**, Trutek failed to specifically identify a trade secret. The same analysis in *supra* Section VI applies here because a New Jersey trade secret, like a federal trade secret, must be particularly identified and because it cannot contain publicly available information or be readily ascertainable through other proper means such as reverse engineering, discovery, or observation. NJ Rev Stat § 56:15-2.

### VIII.   Count Seven (Cho, BioSure, Salvacion USA & Salvacion International): Trutek's claim for unjust enrichment fails as a matter of law.

A plaintiff may be entitled to relief based on unjust enrichment "if a plaintiff establishes "that it conferred a benefit upon a defendant, and it would be unjust to allow the defendant to retain it." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). However, unjust enrichment is a quasi-contractual remedy availably only when parties do not have an express contract. *N.Y.-Conn. Dev. Corp. v. Blinds-To-Go (U.S.), Inc.*, 449 N.J. Super. 542, 556 (App. Div. 2017). Further, "New Jersey law requires a direct relationship between the parties" for a plaintiff to state an unjust enrichment claim. *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (collecting New Jersey caselaw). Where a plaintiff fails to allege that he conferred a direct benefit upon" the defendant, the "pleading does not sufficiently allege the elements of the claim." *Id.*

Here, Trutek's unjust enrichment claim is tethered to its allegations that Cho breached the CDA. Indeed, Trutek alleges that the patent applications and all monies derived from the products related to those patent applications belong to Trutek "[a]ccording to the CDA." Doc. 1, ¶¶ 139–140. Trutek's unjust enrichment claim against Cho therefore fails as a matter of law.

Further, the only direct relationship Trutek alleges related to the CDA is that between it and Cho. The only benefit Trutek alleges is that which it purportedly conferred upon Cho through the CDA. Indeed, Trutek alleges that all monies derived from the products related to Cho's patent

applications belong to Trutek "[a]ccording to the CDA." Doc. 1, ¶¶ 139–140. Trutek's unjust enrichment claim therefore fails to allege either a direct relationship between Trutek and BioSure, Salvacion USA, or Salvacion International or that Trutek conferred a benefit upon BioSure, Salvacion USA, or Salvacion International. Trutek's unjust enrichment claim fails to state a claim against the other moving Defendants.

### IX.   Count Eight (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for civil conspiracy.

To prevail on a New Jersey civil conspiracy claim, the plaintiff must prove: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). "The gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action. Proof of a conspiracy makes the conspirators jointly liable for the wrong and resulting damages." *Board of Educ., Asbury Park v. Hoek*, 183 A.2d 633 (N.J. 1962). "Mere agreement to do a wrongful act can never alone amount to a tort, whether or not it may be a crime." *Morganroth & Morganroth, P.C.*, 331 F.3d at 414. "Some act that is itself a tort must be committed by one of the parties in pursuance of the agreement." *Id.*

Trutek's civil conspiracy claim fails to state a claim for three independent reasons.

*First*, the economic loss doctrine bars Trutek's claim against the moving Defendants. Under New Jersey law, civil conspiracy is a tort claim. *Morganroth & Morganroth*, 331 F.3d at 414. Trutek nominally recasts its claim for breach of contract as a New Jersey civil conspiracy claim. *Compare* Doc. 1, ¶ 104 *with* ¶¶ 145–147. Trutek's New Jersey civil conspiracy claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

***Second***, Trutek fails to state a claim for the underlying torts for which it asserts the Defendants conspired to commit against Trutek (patent infringement, trade secret misappropriation, conversion, tortious interference, and unfair business practices).

Trutek's alleges the moving Defendants conspired to commit patent infringement. Doc. 1, ¶ 146. That underlying tort fails as a matter of law because federal patent law preempts a civil conspiracy claim based on the same. This Court has held that "conspiracy [to infringe a patent]" does "not constitute a separate ground for recovery" outside of federal patent law. *Rainville Co. v. Consupak, Inc.*, 407 F. Supp. 221, 223 (D.N.J. 1976). Indeed, the Federal Circuit has found that "conspiracy to infringe a patent" is a "theory which has no basis in law." *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1361 (Fed. Cir. 2004); *see also Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 n. 15 (E.D. Va. 2000) ("there is no statute in the federal laws concerning patents which gives rise to a cause of action for conspiracy.").

Trutek alleges the moving Defendants conspired to misappropriate trade secrets. Doc. 1, ¶¶ 145, 147. As to federal misappropriation, that underlying torts fails as a matter of law because there is no *civil* private right of action for *criminal* conspiracy of federal trade secret misappropriation. *Steves & Sons, Inc.,* 271 F. Supp. 3d at 842. Federal misappropriation as an underlying conspiracy tort further fails because Trutek has fails to state a claim for federal trade secret misappropriation for all the reasons set forth in *supra* Section VI. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth,* 331 F.3d at 414.

As to state misappropriation, Trutek fails to state an underlying claim for New Jersey trade secret misappropriation for all the reasons set forth in *supra* Section VII. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth,* 331 F.3d at 414.

35

Trutek's alleges the Defendants conspired to commit conversion. Doc. 1, ¶ 147. That underlying tort fails because Trutek fails to state a claim for conversion for all the reasons set forth in *supra* Section V. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth*, 331 F.3d at 414.

Trutek alleges the moving Defendants conspired to interfere with Trutek's prospective economic advantage and to engage in unfair business practices. Doc. 1, ¶ 147. Specifically, Trutek alleges that Cho made an agreement with all Defendants to misappropriate Trutek's trade secrets, which according to Trutek constitutes a conspiracy to interfere with Trutek's prospective economic advantage and to engage in unfair business practices. Doc. 1, ¶ 147. Both underlying bases are New Jersey torts. *Patel v. Soriano*, 848 A.2d 803, 831 (N.J. App. Div. 2004) (tortious interference); *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 786 (D.N.J. 1995) (unfair business practices). At bottom, Trutek alleges that the misappropriation of trade secrets is the conduct that constitutes both the tortious interference and unfair business practices. But Trutek fails to state a claim for trade secret misappropriation for all the reasons set forth in *supra* Sections VI and VII. Trutek's conspiracy claim based on the same cannot stand. *Morganroth & Morganroth,* 331 F.3d at 414.

***Third***, fatal to Trutek's conspiracy claim, Trutek fails to plausibly allege an agreement to conspire between the Defendants.  *See Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8) (explaining that in a case alleging conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'").

36

*Twombly* is the seminal decision not only for the Rule 8 pleading standard, but also for that standard as it relates to pleading an agreement to conspire. Without a "circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Id.* And a "statement of parallel conduct, even conduct consciously undertaken," is not alone suggestive of agreement to conspire, it is but "a naked assertion of conspiracy" that "stops short of the line between possibility and plausibility." *Id.*

*Twombly* further explains that a complaint fails to plausibly suggest an agreement to conspire based on alleged "actions [that] could equally have been prompted by lawful independent goals" or where "an obvious alternative explanation" for the conduct exists, especially when such obvious explanations appear on the face of the Complaint. *Id.* at 566–568.

*Twombly* cautions district courts that a plausible suggestion of an agreement to conspire must be made "in pleading before allowing a potentially massive factual controversy to proceed," of which the "potential expense is obvious." *Id.* at 558–559. It is no excuse to allow a conspiracy claim to proceed even if it is "just shy of a plausible entitlement to relief." *Id.* at 559.

Here, Trutek's Complaint falls far short of crossing the plausibility line. Trutek repeatedly asserts in conclusory fashion that Defendants "made an agreement" to commit various torts. *See e.g.*, Doc. 1, ¶¶ 145–147. But merely repeating like a broken record a conclusory allegation that the Defendants agreed to conspire does not plausibly suggest agreement. Trutek's Complaint is devoid of any fact allegation that demonstrates a circumstance which would point toward a meeting of the minds and plausibly suggest that any Defendants "made an agreement" to commit any tort against Trutek. Trutek's allegations are naked assertions of conspiracy that fall much closer to the possibility line than plausibility.

That said, Trutek does make a few allegations that flirt with the conclusory/factual line. But those allegations are limited to Defendants' commercial efforts, which without more, "stay[] in neutral territory." *Twombly*, 550 U.S. at 557. Specifically, Trutek alleges that the Defendants "made an agreement to" commit various torts against Trutek by filing patent applications related to, and developing, manufacturing, selling, exporting, and profiting from COVIXYL. Doc. 1, ¶¶ 145–147. All of those alleged commercial efforts stay in the neutral territory without a plausible fact-based allegation to suggest an agreement to conspire to do those acts in a tortious manner. Accordingly, those alleged commercial efforts fall far short of plausibly suggesting conspiracy.

Moreover, the Complaint itself suggests there was no agreement to conspire, *i.e.*, that the Defendants' actions were "prompted by lawful independent goals" or were based on "obvious alternative explanation[s]." *Twombly*, 550 U.S. at 568. Trutek alleges that all Defendants agreed to conspire because they developed, manufactured, exported and sold COVIXYL. There is nothing suggestive that the mere existence of a manufacturer, developer, distributor, and/or wholesaler of product have an underlying agreement to commit some nefarious tort against Trutek. To commercially launch a product, such commercial functions are routinely outsourced. Trutek's own Complaint demonstrates this in that Trutek licensed Cho/Jintec to market and distribute Trutek's products in Korea and Greater China. Based on the allegations in the Complaint alone, an agreement to conspire between Trutek and Cho is no more plausibly suggested than one is between the Defendants. While it is conceivable that Trutek and Cho/Jintec conspired in their commercial relationship to commit some tort, it is not plausible based on the mere fact that Trutek licensed Cho as a distributor/marketer. Likewise, it is not plausible that the Defendants agreed to commit a tort.

38

The Complaint also suggests there was no agreement to conspire because patents are regularly co-invented by individuals and assigned to a separate entity. Trutek's allegation that Cho agreed to conspire with Gaffar and Yun by filing patent applications is indicative of nothing more than normal commercial activity. Indeed, the Complaint demonstrates that Wahi and Trutek routinely do the same. Many of Trutek's patents were invented by multiple individuals before being assigned to Trutek.[6] For example, Trutek Patent '005 was invented by Ashok L. Wahi and Kanneth Sugathan and assigned to Trutek. **Ex. A** – Cover Pages of Trutek's Patents '005, '497, and '706. And Trutek's Patents '497 and 706 were invented by Ashok L. Wahi, John Lawrence Dequina, Kanika Wahi, and Bernard Foss and assigned to Trutek.

At bottom, because Trutek has "not nudged [its] claims across the line from conceivable to plausible, [its conspiracy claim] must be dismissed." *Twombly*, 550 U.S. at 570.

## X.   Count Nine (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for fraud.

The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005).[7] The fraud claim "must relate to a present or preexisting fact and cannot ordinarily be predicated on representations [that] involve things to be done in the future." *Anderson v. Modica*, 4 N.J. 383, 391–92 (1950).

---

[6] Patents are a matter of public record, *Mallet & Co. Inc.*, 16 F.4th at 383, for which the Court may consider in deciding this Motion, *supra* note 2. Those patents are also referenced and relied on in Trutek's complaint. Doc. 1, ¶ 26.

[7] These elements apply to both fraudulent misrepresentation and concealment. *DeRobbio v. Cent. Reg'l Emps. Ben. Fund v. Cephalon, Inc.*, 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009).

Trutek alleges that when Cho breached his CDA obligations, he committed fraud on Trutek by not doing what he "promised" to do under the CDA and by "concealing" from Trutek his contractual breaches. Doc. 1, ¶ 151. As for Trutek's fraudulent misrepresentation claim against BioSure, Salvacion USA, and Salvacion International, Trutek says "[a]ll Defendants were complicit in Cho's misrepresentations" and that "Trutek relied on Defendants' representations." *Id.* As for Trutek's fraudulent concealment claim against BioSure, Salvacion USA, and Salvacion International Trutek says all "Defendants knowingly and intentionally concealed from Trutek that Defendants were developing, making, offering to sell and selling developments and improvements to Trutek's intellectual property disclosed to Cho" and that Defendants "had the duty to disclose" these facts. *Id.* Trutek fails to state either a misrepresentation or concealment fraud claim against the moving Defendants for four independent reasons.

***First***, the economic loss doctrine bars Trutek's claim against the moving Defendants. Under New Jersey law, fraud is a tort claim subject to the economic loss doctrine. *RNC Sys., Inc. v. Mod. Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012). Trutek nominally recasts its claim for breach of contract as a fraud claim. *Compare* Doc. 1, ¶ 104 *with* ¶ 151. Fraud claims related to contracts cannot proceed if they are related to the performance of a contract. *RNC Sys., Inc.,* 861 F. Supp. 2d at 451. They must be based on conduct that "precede(s) the actual commencement of the agreement," such as fraud in the inducement or pre-contractual misrepresentations. *Id.* Trutek's New Jersey fraud claim is based on the actual obligations that purportedly flow from the CDA, and, therefore, is barred by the economic loss doctrine and should be dismissed with prejudice. Trutek cannot supplement its breach of contract claim against Cho with a fraud claim against the other moving Defendants arising from the same obligations and for the same relief. Trutek's fraud claim should be dismissed with prejudice.

**Second**, Trutek fails to allege with particularity as required under Rule 9(b) a single misrepresentation made by BioSure, Salvacion USA, or Salvacion International to Trutek. Also, BioSure, Salvacion USA, or Salvacion International cannot be "complicit" in Cho's purported misrepresentations to Trutek. The misrepresentations Trutek alleges Cho made are that Cho merely breached the CDA, thereby not doing what he purportedly contracted to do. BioSure, Salvacion USA, or Salvacion International were not parties to or subject to the CDA. BioSure, Salvacion USA, or Salvacion International cannot be complicit in breaching the CDA or Cho's purported representations related to the CDA in a direct fraud claim, as opposed to a conspiracy claim. Even if BioSure, Salvacion USA, or Salvacion International could be complicit in the purported misrepresentation of another party in a direct fraud claim, Trutek has not alleged with particularity facts demonstrating BioSure, Salvacion USA, or Salvacion International's complicity in a particular misrepresentation. *See Majestic Blue Fisheries, LLC*, 812 F.3d at 307 (holding particularity for a fraud allegation requires "the who, what, when, where and how of the events at issue").

**Third**, Trutek's Complaint impermissibly lumps all defendants together in its fraud allegations. This Court and the Third Circuit require a plaintiff to plead a fraud claim involving multiple defendants with particularity by specifying the allegations of fraud applying to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005); *see also John Wiley & Sons, Inc. v. Rivadeneyra*, 2013 WL 6816369, at *6 (D.N.J. Dec. 20, 2013) ("a fraud claim will be dismissed where a plaintiff lumps all defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions" (cleaned up)). The particular details such as the "who, what, when, where and how of the events at issue" must separately and individually "be satisfied with respect to every defendant." *Id.* at *5.

Here, Trutek does precisely what Rule 9(b) and the above authority prohibits. In its Complaint, Trutek lumps all seven defendants together with sweeping, undifferentiated allegations that they are "complicit" in Cho's misrepresentations and "concealed" their purported involvement with Covixyl. Doc. 1, ¶ 151.  There is not a single, particular fact allegation of fraud directed to BioSure, Salvacion USA, or Salvacion International individually.

**Fourth**, neither BioSure, Salvacion USA, nor Salvacion International had a duty to disclose any information to Trutek. "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980). Under New Jersey law, "courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a special relationship." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). The categories of special relationships that give rise to a duty to disclose are: "(1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee; (2) relationships where one party expressly reposes trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Id.*

Here, Trutek does not allege BioSure, Salvacion USA, or Salvacion International made a previous statement to it which would require a disclosure to make the previous statement true. Also, Trutek does not allege a special relationship with BioSure, Salvacion USA, or Salvacion International that would impose a duty on any of them to disclose any information to Trutek. Under Rule 9(b), Trutek was required to allege with particularity any such previous statement or special relationship. But the only direct relationship Trutek alleges is that which arises from the CDA

between it and Cho. And Trutek does not allege any relationship between it and BioSure, Salvacion USA, or Salvacion International.

For all the above independent reasons, Trutek has failed to state a fraud claim against the moving Defendants.

## XI.    Count Ten (Cho, BioSure, Salvacion USA & Salvacion International): Trutek has failed to state a claim for a RICO violation.

In Count Ten, Trutek asserts a federal RICO claim and a federal RICO conspiracy claim against all Defendants under 18 U.S.C. § 1961 *et seq.* Doc. 1, p. 47.  To succeed on a federal civil RICO claim, a plaintiff must prove: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To establish a pattern of racketeering activity, a plaintiff must prove "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013). Racketeering activity is defined in Section 1961(1)(B) as "any act which is indictable under" a number of enumerated federal laws; these federal offenses are called "predicate acts." *See* 18 U.S.C. § 1341; 18 U.S.C. § 1962(1)(B).

Under Section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Id.* at 1190.

Trutek's RICO claim fails for three independent reasons.

43

*First*, the economic loss doctrine bars Trutek's RICO claim against the moving Defendants. The Third Circuit has succinctly stated why courts must bar plaintiffs from nominally recasting breach of contract claims as RICO claims: "if garden-variety state law crimes, torts, and contract breaches were to constitute predicate acts of racketeering . . . civil RICO law, which is already a behemoth, would swallow state civil and criminal law whole." *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999), *abrogated on other grounds in Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000).  Indeed, Trutek's RICO claim exemplifies the Third Circuit's specific concern that "[v]irtually every litigant would have the incentive to file their breach of contract and tort claims under the federal civil RICO Act."). This is why federal courts dismiss RICO claims under the economic loss doctrine where it is a nominally recast breach of contract claim. *See e.g.*, *G.K. Las Vegas Limited P'ship v. Simon Property Group, Inc.*, 460 F. Supp. 2d 1222, 1236 (D. Nev. 2006) ("Although, economic loss doctrine does not as a general rule preclude claims for violations of Nevada RICO, a plaintiff cannot state a claim under the statute by simply artfully pleading what is essentially a breach of contract claim."); *see also Crescenzo 1, L.P. v. Deutche Bank Nat'l Tr. Co.*, No. 3:17-CV-1018-CAB-JLB, 2017 WL 3732013, at *4 (S.D. Cal. Aug. 30, 2017); V*ega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *12 (C.D. Cal. Mar. 24, 2015). And here, Trutek nominally recasts its claim for breach of contract as a RICO claim. *Compare* Doc. 1, ¶ 104 *with* ¶¶ 166, 168, 170 (alleging that Cho violated RICO by "fail[ing] to honor his contractual obligation"), quoting ¶170. Trutek's RICO claim is therefore barred by the economic loss doctrine and should be dismissed with prejudice.

*Second*, Trutek's RICO claim fails to state a claim because Trutek fails to sufficiently plead a pattern of racketeering activity. Specifically, the actions Trutek alleges do not constitute predicate acts as a matter of law for two independent reasons. And even if they could, Trutek fails

to plead the predicate acts with particularity under Rule 9(b). *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (applying Rule 9(b) pleading standard to wire fraud and mail fraud predicate acts).

Trutek alleges two categories of predicate acts: (1) wire fraud (18 U.S.C. § 1343); and (2) mail fraud (18 U.S.C. § 1343). An offense of wire fraud and/or mail fraud have the same two elements: "(1) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme." *Kaul v. Christie*, 372 F. Supp. 3d 206, 248 (D.N.J. 2019). Specifically, Trutek alleges Cho committed wire fraud "by allowing" the COVIXYL-related patent applications to be filed and assigned. Doc. 1, ¶ 170. Trutek also alleges that other defendants committed wire fraud and mail fraud by selling the COVIXYL products online and delivering the products through the United States mail services. *Id.* at ¶ ¶ 193–197.

The first reason Trutek's predicate act allegations fail to state a claim is that submitting a patent application, assigning a patent application, or commercializing and/or selling products that purportedly infringe a patent cannot constitute predicate acts as a matter of law. *See University of W. Va. v. VanVoorhies*, 278 F.3d 1288, 1303 (Fed. Cir. 2002) (affirming dismissal of plaintiff's RICO claim where the plaintiff asserted the predicate acts of mail and wire fraud based on defendants' fraudulent submissions to the PTO in connection with patent application); *Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1380 (Fed. Cir. 2000); *see also Michod v. Walker Magnetics Group, Inc.*, 115 F.R.D. 345, 347 (N.D. Ill. 1987) (holding patent infringement is not a predicate act enumerated by the RICO statute, and thus cannot be the basis of a RICO claim); *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 487 (S.D.N.Y. 2000); *Shippitsa Ltd. v. Slack*, 2019 WL 3304890, at *9 (N.D. Tex. July 23, 2019) (holding plaintiff "failed to plausibly allege facts showing that

[defendant] committed wire fraud by selling [alleged infringing] products" online); *Semiconductor Energy Lab'y Co. v. Samsung Elecs*. Co., 4 F. Supp. 2d 473, 476 (E.D. Va. 1998), *aff'd*, 204 F.3d 1368 (Fed. Cir. 2000), *amended* (Apr. 5, 2000) ("If such conduct could properly be considered [RICO] predicate acts, then nearly every inequitable conduct claim in a patent case could be brought as a RICO claim.").

Here, Trutek's predicate act allegations are patent-submission and patent-infringement centric. Doc. 1, ¶ 170; *compare id.* ¶¶ 89, 185–186 (alleging selling COVIXYL product infringes Trutek's patent) with ¶¶ 193–197 (alleging process of selling COVIXYL is predicate acts of wire fraud and mail fraud). Trutek alleges no other predicate acts. Accordingly, Trutek's fails to plead two viable predicate acts and its RICO claim must be dismissed.

The second reason Trutek's predicate act allegations fail as a matter of law is that the alleged predicate acts are actually breach of contract allegations, not wire fraud or mail fraud. To be clear, there are no allegations that Defendants represented to customers that their COVIXYL products did not infringe a valid patent right of Trutek. Nor is there any allegation that the purchasers of the COVIXYL products were deceived to their detriment, that is, that they preferred Trutek's products and that they were deceived into purchasing COVIXYL instead or that they preferred to purchase COVIXYL from Trutek and not Defendants. Instead, Trutek's predicate act allegations repeatedly assert that Defendants' actions were "to defraud Trutek." Doc. 1, ¶¶ 193–194, 196, 201. Those do not constitute sufficient allegations of wire or mail fraud on purchasers. They are merely Trutek's recycled breach of contract allegations.

Even if Trutek's predicate act allegations could constitute predicate acts, Trutek failed to plead them with particularity under Rule 9(b). A party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *Majestic*

*Blue Fisheries, LLC*, 812 F.3d at 307. Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold*, 516 F. App'x at 226. Trutek's allegations are deficient. For example, Trutek alleges that Salvacion USA fraudulently "claimed publicly that it had the right to market" COVIXYL. Doc. 1, ¶ 189. But the Complaint is devoid of any allegations of what in particular it claimed or when, where, or how it was claimed. Nor does Trutek allege when, where, or to whom the COVIXYL products were sold. Trutek does allege that Defendants committed wire/mail fraud when one of its counsel, Keith Altman, purchased COVIXYL. If all fraud and conspiracy claims are not dismissed with prejudice, then the moving Defendants reserve the right to subpoena documents and other information from Mr. Altman and to depose Mr. Altman because he has interjected himself as a material fact witness.

*Third*, Trutek has failed to plausibly plead an agreement between the Defendants. The same analysis in *supra* Section IX applies here. To be clear, Trutek in Count Ten (RICO) does not plead any different or new factual allegations as compared to Count Eight (Civil Conspiracy) which would point toward a meeting of the minds and plausibly suggesting that any Defendants made an agreement or conspired to defraud Trutek. Because Trutek has "not nudged [its RICO] claims across the line from conceivable to plausible, [its claim] must be dismissed." *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, the moving Defendants, Cho, BioSure, Salvacion USA, and Salvacion International, respectfully request the Court to dismiss all Trutek's claims with prejudice except for Count 1, which should be limited to a claim for direct infringement of claim 2 in Trutek's '802 patent, and Count 2, which should be limited to an express breach of contract claim.

Dated: October 25, 2023

Respectfully submitted,

LADDEY, CLARK & RYAN, LLP

BRADLEY ARANT BOULT CUMMINGS LLP

BY: */s/ Thomas J. White*
Thomas N. Ryan (018951985)
Thomas J. White (320372020)
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871-2600
Telephone: (973) 729-1880;
Facsimile: (973) 729-1224
tryan@lcrlaw.com
twhite@lcrlaw.com

Jason E. Fortenberry (*pro hac vice*)
Jonathan M. Barnes (*pro hac vice*)
188 East Capitol Street, Suite 1000
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
jfortenberry@bradley.com
jbarnes@bradley.com

Jeffrey D. Dyess (*pro hac vice*)
Benn C. Wilson (*pro hac vice*)
1819 5th Avenue North
Birmingham, Alabama
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
jdyess@bradley.com
bcwilson@bradley.com

*Attorneys for Defendants Salvacion,
USA, Inc.; Salvacion Co., LTD.; Yeong
Wan Cho (aka Peter Cho); Salvacion
R&D Center; Salvacion International,
LLC; Sei Young Yun; Biosure Global, Ltd.*

*Attorneys for Defendants Salvacion,
USA, Inc.; Salvacion Co., LTD.; Yeong
Wan Cho (aka Peter Cho); Salvacion
R&D Center; Salvacion International,
LLC; Sei Young Yun; Biosure Global, Ltd*.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that, on this day, the foregoing document was served

via email to all counsel of record pursuant to the Court's October 4, 2023 Text Order.

Dated: October 25, 2023

Respectfully submitted,

LADDEY, CLARK & RYAN, LLP

BY: */s/ Thomas J. White*
Thomas N. Ryan (018951985)
Thomas J. White (320372020)
60 Blue Heron Road, Suite 300
Sparta, New Jersey 07871-2600
Telephone: (973) 729-1880;

48

Facsimile: (973) 729-1224
tryan@lcrlaw.com
twhite@lcrlaw.com

*Attorneys for Defendants Salvacion,*
*USA, Inc.; Salvacion Co., LTD.; Yeong*
*Wan Cho (aka Peter Cho); Salvacion*
*R&D Center; Salvacion International,*
*LLC; Sei Young Yun; Biosure Global, Ltd.*