# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUTEK CORP., | |
| *Plaintiff,* | Civil Action No**..:** 2:23-cv-03709-ES-JRA |
| v. | **Document Electronically Filed** |
| YEONG WAN CHO (a/k/a Peter Cho); *et al.* | |
| *Defendants.* | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

THE LAW OFFICE OF KEITH ALTMAN
Solomon M. Radner, Esq.
(NJ SBN 283502018)
Keith Altman, Esq. (*pro hac vice*)
33228 West 12 Mile Road
Suite 375
Farmington Hills, MI 48331
Telephone: (248) 987-8929
SolomonRadner@kaltmanlaw.com
KeithAltman@kaltmanlaw.com
*Attorneys for Plaintiff*

LAW OFFICE OF STANLEY KREMEN, ESQ.
Stanley H. Kremen, Esq. (*pro hac vice*)
4 Lenape Lane
East Brunswick, NJ
Telephone: (732)593-7294
Facsimile: (732) 312-5218
shk@shk-dplc.com
*Attorney for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................v

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT .......................................................................................................4

I.   This Court may assert personal jurisdiction over Defendant, Biosure Global, Ltd., because it resides outside the United States and it has sufficient minimum contacts with the United States and the State of New Jersey..........................4

II.  Plaintiff provided sufficient factual information in its complaint to provide notice to Defendants Salvacion USA and Salvacion International that they infringe the claims of the '802 Patent.  Count 1 should not be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted. ...................................................................................................10

   a.  Direct Infringement of claims 1 and 2 of the '802 Patent. ..........................10

   b.  Induced infringement of '802 Patent ...........................................................13

III. Count 2 should not be dismissed in part under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.  (a) In the circumstances regarding Cho's breach of contract, he also breached the implied covenant of good faith and fair dealing; (b) Trutek has a right of assignment of the '098 and PCT Applications and any patent issuing therefrom as a matter of law; and (c) an injunction against Cho from continuing his breaching activities is an appropriate remedy. ..............................................18

   a.  Cho's breach of the implied covenant of good faith and fair dealing. ........18

   b.  Trutek's Ownership of Patent Applications and Any Patents Issuing Therefrom...............................................................................................21

c.   An injunction against Cho for continuing his breaching activities. ............23

IV.  Count 4 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff pled sufficient facts to state a claim for concealment by Cho.........24

V.   Count 4 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because the patent applications (domestic, international, and foreign) filed by Salvacion USA and patents issuing therefrom should belong to Trutek, and Defendants conspired to deprive Trutek of rightful licensing fees therefrom.................27

VI.  Count 5 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts to establish *prima facie* that Cho, Gaffar, Yun, and Salvacion USA violated 18 U.S.C. § 1832 by misappropriating Trutek's trade secrets for their own benefit. .................................................28

VII. Count 6 should not be dismissed under Fed. R. Civ. Pro. 12(b)(6) because Plaintiff presented sufficient facts to establish *prima facie* that Cho, Gaffar, Yun, and Salvacion USA violated N.J.S.A. § 56:15-1 *et. sec.*, the New Jersey Trade Secrets Act ("NJTSA") by misappropriating Trutek's trade secrets for their own benefit.............................................................................................32

VIII. Count 7 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts to establish *prima facie* that all Defendants were unjustly enriched due to sales of a product that rightfully belonged to Trutek, and that the sales should have accrued to Trutek. ...........................36

IX.  Count 8 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because a *prima facie* case has been made to establish that all Defendants were members of a global Enterprise, and that the members of that Enterprise conspired to deprive Trutek of money that should have accrued to Trutek......................37

X.   Count 9 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts in the complaint to specifically plead fraudulent activity by Defendants against Trutek thereby causing harm......38

XI.  Count 10 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts in the complaint to specifically plead that a

corrupt enterprise exists, and that members of said enterprise committed instances of the predicate acts of wire fraud and mail fraud making them all liable for civil penalties under 18 U.S.C. §§ 1961-1968 - Racketeer Influenced and Corrupt Organizations Act ("RICO"). ....................................................39

a.   The economic loss doctrine bars Trutek's RICO claim..............................40

b.   Trutek's Pleading Sufficiency of Mail & Wire Fraud .................................41

c.   Agreement between the Defendants.............................................................41

CONCLUSION ........................................................................................................42

CERTIFICATE OF SERVICE ...............................................................................43

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed.

  Cir. 2015) ................................................................................. 12, 16

*AMC, LLC v. Northwest Farm Food Cooperative*, 481 F.Supp.3d 1153, 1178 (D.

  Or. 2020) .............................................................................................18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985) ...................................10

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) .................................23

*Enrunda Trading Co. v. MTM Trading LLC*, 2018 WL 11241079, at *3 (D.N.J.

  Mar. 29, 2018).....................................................................................18

*Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564

  (M.D.N.C. 1979).....................................................................................8

*International Shoe Co. v. State of Washington, Office of Unemployment*

  *Compensation and Placement*, 326 U.S. 310, 316 (1945) ....................................5

*Kaul v. Christie*, 372 F.Supp.3d 206, 248 (D.N.J. 2019) .......................................41

*Limelight Networks, Inc. v. Akamai Techs, Inc.*, 572 U.S. 915, 921 (2014) ...........14

*Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987)..................25

*Morrison v. Goodspeed,* 100 Colo. 470, 477 (1937) ..............................................26

*Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222 (Fed. Cir. 1995) .......13

*Pickett v. Lloyd's & Peerless Ins. Agency, Inc.*, 621 A.2d 445, 450 (N.J. 1993) ....18

*Simon v. Philip Morris, Inc.*, 86 F.Supp.2d 95 (2000) ...............................................8

*Trafalgar House Const., Inc v. ZMM, Inc.*, 211 W.Va. 578,584 (2002) .................25

*Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 230 (Tex. App. 2006) .....................25

## Statutes

18 U.S.C. § 1832(a)(1) ..........................................................................................31

18 U.S.C. § 1961(c) ...............................................................................................40

18 U.S.C. §1832 .....................................................................................................28

35 U.S.C § 271(c) ..................................................................................................17

35 U.S.C. § 271(a) ........................................................................................... 10, 12

35 U.S.C. § 271(b) .................................................................................................13

N.J.S.A. § 56:15-1 ........................................................................................... 32, 35

## <u>INTRODUCTION</u>

The Present Lawsuit was filed on July 11, 2023, by Plaintiff, Trutek Corp. ("Trutek") against nine named defendants. Two named defendants, Yeong Wan Cho ("Cho") and Salvacion USA, Inc. are citizens of New Jersey. Defendant Cho is an individual, and Salvacion USA is a corporation incorporated under the laws of the State of New Jersey. Cho is a founding member of Salvacion USA. Salvacion International, LLC is a limited liability company, formed under the laws of the State of Wyoming. Defendant Abdul Gaffar, an individual, and a founding member of Salvacion USA, is deceased. On August 23, 2023, and September 1, 2023, Trutek filed a motion for substitution of the Estate of Abdul Gaffar as for the deceased individual defendant (ECF 13, 18). The complaint has been served upon all aforementioned defendants that reside in the United States.

All of the remaining named defendants reside outside the United States. Biosure Global, Ltd. ("Biosure") is a business entity organized under the laws of the United Kingdom, and it is located in the United Kingdom. The complaint has been served upon Biosure. None of the remaining foreign defendants have been served. Defendants residing in South Korea are Sei Young Yun (an individual), Salvacion Co., Ltd. (a business entity), and Salvacion R&D Center (a business entity), all insist upon being served under the laws and procedures mandated by the Hague Treaty Convention. On October 11, 2023, the Court extended the time to serve the Korean

defendants by 120 days until February 6, 2024 (ECF 45).  All domestic and foreign defendants, except for Immobilaria La Salvacion, R.D. (a business entity formed under the laws of the Dominican Republic), are represented by the law firm of Bradley Arant Boult Cummings LLP, four attorneys of which are counsel *pro hac vice* in the current lawsuit.

## BACKGROUND

On March 26, 2021, Trutek filed a lawsuit against Jintec America, Inc. ("Jintec") in the Superior Court of New Jersey, Law Division, Somerset County, Docket No. SOM-L-426-21 ("the Jintec Lawsuit"). The complaint set forth three counts of breach of contract and two counts of trademark misappropriation.  The Jintec Lawsuit is still pending in the Court.  A copy of the Jintec Lawsuit complaint is attached hereto as Exhibit 1. Except for the contracts entered into by Cho and Jintec (ECF 1-2, 1-3, and 1-4), the details of the Jintec Lawsuit are not relevant to the current proceedings.  However, since Defendants discussed it in their legal brief, the record should be corrected.

The relationship of the Jintec Lawsuit to the present lawsuit stems from the fact that Cho is the President of Jintec.  Cho entered into three contracts with Trutek, both individually and as President of Jintec. At some point, during a deposition of a Trutek employee in late 2022, Cho's relationship with Salvacion USA (a defendant in this present lawsuit) was discovered.

The Fourth Count of the Jintec lawsuit states:

*The May 12th Agreement permits Jintec to engage a South Korean trademark attorney to register Trutek's and NasalGuard trademarks in South Korea at its own expense provided that said trademark registrations are assigned to Trutek.* Exhibit A.

While Jintec did engage a South Korean attorney to register Trutek's and NasalGuard trademarks in South Korea, the trademarks were not assigned to Trutek, but rather, they remained in possession of Jintec. Count Four of the Jintec Lawsuit demanded return of these trademarks to Trutek, their rightful owner.

Similarly, the Fifth Count of the Jintex lawsuit states:

*The November 6th Agreement permits Jintec to engage a Chinese trademark attorney to register Trutek's and NasalGuard trademarks in the People's Republic of China at its own expense provided that said trademark registrations are assigned to Trutek.* Exhibit A.

Jintec did engage a Chinese attorney to register the Trutek's trademarks in China, but they were registered in the name of Jintec Holdings, Ltd., a Korean affiliate of Jintec.

Trutek's trademarks remained registered to Jintec and Jintec Holdings until July 2023, when a partial settlement was affected in the Jintec Lawsuit whereby Jintec would cause Trutek's trademarks to be assigned to Trutek in return for dismissal of the Fourth and Fifth Counts.

Regarding the quality of the product, Jintec stored the bulk of the Korean reformulated NasalGuard product in a warehouse in Fort Lee, New Jersey. In

September 2023, Trutek's expert tested the Korean reformulated NasalGuard product tubes having the same lot number and filled on the same day as those stored in Jintec's storage facility. He detected no discoloration or malodor. Another of Trutek's experts measured the electrostatic charge of the Korean reformulation and found it to still be effective despite the fact that it had been past the product's two-year expiration date. Finally, another Trutek expert opined that the product in Jintec's warehouse was not stored according to proper temperature conditions. All of the tubes of product tested by Jintec's experts came from those stored in Jintec's warehouse.

## **ARGUMENT**

**I.**  **This Court may assert personal jurisdiction over Defendant, Biosure Global, Ltd., because it resides outside the United States and it has sufficient minimum contacts with the United States and the State of New Jersey.**

Defendants moved to dismiss the present complaint against Biosure, alleging lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

Whether this Court may assert *in personam* jurisdiction over a defendant residing outside the United States (therefore, also being an out-of-state defendant) is governed by the Due Process Clauses of the Fifth and Fourteenth Amendments. The U.S. Supreme Court in *International Shoe* held that, "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the

4

maintenance of the suit does not offend traditional notions of fair play and substantial justice," *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945) (internal citations omitted).

Salvacion USA is a corporation organized under the laws of the State of New Jersey. On October 15, 2020, Defendants Gaffar, Cho, and Yun filed an international patent application No. PCT/US20/55772 at the United States Patent and Trademark Office ("USPTO") and said PCT[1] application was assigned to Salvacion USA. The application for foreign patents is still pending.  According to information and belief, no foreign patents have yet been issued. Then, on January 14, 2022, the same defendants filed a United States patent application No. 17/576,098 ("the '098 Application") as a continuation-in-part of the PCT application claiming the benefit and priority to said PCT application. The US patent application was assigned to Salvacion USA, and it is still pending. No United States patents have yet been issued as a result of this application. A USPTO published copy of said U.S. patent application was attached to the complaint in this matter (ECF 1-6).

Count 1 of said complaint alleges that Defendants Salvacion USA and Salvacion International infringe on Trutek's US Patent No. 8,163,802 ("the '802 Patent") under 35 U.S.C. §§ 271(a), (b) and (c) by making, using, offering to sell,

---

[1] PCT is an acronym standing for Patent Cooperation Treaty.

and/or selling the product Covixyl, a nasal spray, which Defendants claim, "helps block airborne viruses." The Covixyl packaging alleges protection due to Salvacion USA's United States patent application. *See* ECF 1-7 bottom-left photograph. Salvacion USA's patent applications disclose the Covixyl product.

Biosure is a business entity organized under the laws of the United Kingdom, and it resides wholly in the United Kingdom. The company sells its products in many different countries. However, Biosure does not sell its products in the United States. Biosure's products do not enter the stream of commerce in the United States.

As alleged in the complaint Defendants Salvacion USA, Salvacion International, and Biosure are members of an international corrupt Enterprise. Exhibit 2, attached hereto, is an image of the "Contact Us" web page (*https://salvacion-usa.com/contact*) from Salvacion USA's website. This web page lists all the members of the Enterprise along with their contact information. From the web page, it is apparent that Biosure is one of the members of this Enterprise.

Biosure's website (*www.biosure.co.uk*) reveals that it sells a product named Biosure Pro Protective Nasal Spray. *See* ECF 1-9. According to information and belief, the nasal spray sold by Biosure is a re-branded version of Covixyl. As a result of the patent protection sought by the Enterprise, Biosure should be classified as a licensee of Salvacion USA for the nasal spray product. According to information and belief, the license for the product is protected by an agreement that invokes the

protection of the laws of the State of New Jersey and/or of the United States. According to information and belief, money regularly flows to and from the parties to that agreement, *i.e.,* Salvacion USA and Biosure. Further, it is inconceivable that the nasal spray product is manufactured by two separate entities. Thus, logic dictates that the defendants in the United States and the United Kingdom receive their products from a single source.

It is not the basis of this lawsuit that Biosure's products are sold in the United States. The allegation of minimum contacts with the forum state of New Jersey is not rooted in Biosure's products entering the stream of commerce in New Jersey. Instead, Biosure is a member of an Enterprise, the members of which are engaged in a civil conspiracy that filed US and PCT patent applications based on trade secrets misappropriated from Trutek and developed products that both infringe on the '802 Patent and improved upon it. The improved products belong to Trutek as per the agreement between Wahi and Cho (ECF 1-1). The members of the Enterprise then proceeded to make, use, offer to sell worldwide, and sell worldwide the improved product that was misappropriated from Trutek, its rightful owner. Biosure participated in these activities as a member of this Enterprise, and was unjustly enriched. The fact that Biosure is a member of this Enterprise is apparent from Exhibit 2.

Further, Trutek alleges that all members of the Enterprise committed criminal acts of wire fraud and mail fraud in violation of 18 U.S.C. §§ 1961-1968 - the Racketeer Influenced and Corrupt Organizations Act (RICO). The root members of the corrupt enterprise were based in New Jersey. Cho and Salvacion USA were developers of the Covixyl product. Biosure sold the Covixyl nasal spray product, re-branded as Biosure Pro Protective Nasal Spray. The extent of Biosure's knowledge of the originating activities of Defendants Cho, Gaffar, Yun, Salvacion USA, and Salvacion International is a matter for discovery. However, for the purposes of this instant motion, it is largely irrelevant. "The acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564 (M.D.N.C. 1979). A participant in a conspiracy does not need to know all of the details of the conspiracy, and a converter does not need to know that the object of its conversion belongs to another.

In *Simon*, a British parent company was subjected to personal jurisdiction in New York based on allegations of participating in a conspiracy involving other manufacturers and operating a research organization in New York. *Simon v. Philip Morris, Inc.*, 86 F.Supp.2d 95 (2000). In that matter, the British company had "no New York office, mailing address, phone listing, or bank account, and pays no New York taxes. It does not directly own or possess any New York real estate." *Id* at 100.

8

Plaintiffs alleged that the British defendant "participated in a conspiracy to manufacture hazardous products and deceive American consumers about the adverse health consequences of using them." *Id.*

Based on Counts 8 and 10 of its complaint (Civil Conspiracy and Civil RICO), it is impossible to break out some defendants from the Enterprise and to sue them separately. The evidence of conspiracy and the testimony is the same even if some members of the Enterprise were to be sued in the United States and others in foreign countries (*i.e.*, United Kingdom, Korea, and the Dominican Republic). It would necessitate duplication of evidence and testimony in multiple lawsuits. These multiple lawsuits would impose a severe burden on Trutek that would be much greater than that which would be suffered by the foreign defendants. This case cries out for consolidation so that the entire controversy can be adjudicated in a single lawsuit. New Jersey has a strong interest in protecting its citizens from fraudulently induced contracts as well as from theft of its trade secrets and other torts. In its complaint, Plaintiff has presented sufficient facts to form a *prima facie* case to support its allegations of conspiracy, RICO, and conversion. Participation of Biosure as an integral member of the Enterprise (Exhibit 2) and as a licensee of the New Jersey entity (Salvacion USA) establish purposeful availment and sufficient minimum contacts to establish *in personam* jurisdiction in the District Court of New Jersey and to satisfy that personal jurisdiction over Biosure comports with "fair play

and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985).

As a result of Biosure's participation in the corrupt enterprise and its activities

therein, Trutek was damaged.

**II.   Plaintiff provided sufficient factual information in its complaint to provide notice to Defendants Salvacion USA and Salvacion International that they infringe the claims of the '802 Patent.  Count 1 should not be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.**

     a.   <u>Direct Infringement of claims 1 and 2 of the '802 Patent</u>.

Count 1 of the complaint alleges that Defendants Salvacion USA and

Salvacion International infringe the claims of the '802 Patent.  35 U.S.C. § 271(a)

states:

> *Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.*

Count 1 of the complaint (¶ 90) states that the Defendants "directly infringe

at least claims 1 and 2 because the Covixyl product forms a thin film when applied

to a person's nasal passages, possesses and electrostatic charge by virtue of a cationic

agent ingredient, and renders airborne particles harmless by virtue of a biocidic agent

ingredient."

A copy of the '802 Patent was presented as Exhibit 4 to the complaint (ECF

1-4).  Claim 2 of the '802 Patent is for a formulation for application to the skin or

tissue of a user's nasal passages, which contains at least one cationic agent and at

least one biocidic agent, whereby the formulation creates an electrostatic field that attracts harmful particles (such as viruses), holds the particles in place, and deactivates them so as to render them harmless. When applied to a person's nasal passages, the formulation inhibits the harmful particles from infecting the user due to nasal inhalation. Claim 2 of the '802 Patent does not require that the formulation be actually applied to the user's nasal area, but rather recites what occurs once the product is applied. It is the formulation itself that is recited in the claim.

It is well known that most harmful particles, such as bacteria, viruses, dust mites, pollen, *etc.*, possess a negative electrostatic charge. A cationic agent is a chemical having a positive electrostatic charge. Defendants' product Covixyl contains at least one cationic agent and at least one biocidic agent. It has been independently verified that Covixyl, once applied to a surface, Covixyl creates a positively charged electrostatic field of the same order of magnitude as Trutek's NasalGuard products. It has also been verified that Covixyl reduces the harmful effects of viruses by virtue of the biocidic agent contained therein.  (ECF 1-6 and ECF 1-8).

Salvacion USA and Salvacion International developed, made, used, offered for sale, and sold the Covixyl product, and therefore directly infringed claim 2 of the '802 Patent.

Claim 1 of the '802 Patent recites a method of use of a formulation that is applied to the skin or tissue of a user's nasal passages and that creates a charged electrostatic field which attracts harmful particles to the formulation, holds them in place, and inactivates them by adding a biocidic agent thus rendering them harmless.

In their brief, Defendants cite the case of *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) to promote a position that they cannot be liable for direct infringement of method claim 1 under 35 U.S.C. § 271(a) because a single actor is required to carry out all the process steps of the claim.

This argument fails for several reasons. First, it is unreasonable to believe that Salvacion USA failed to test the Covixyl product during development. The '098 Application for US Patent indicates that such testing was done. Then, in order to market such a product for sale to the general public requires FDA approval. For that approval, the product must first be tested to ensure that its use by humans is safe. According to information and belief, this testing was performed by agent(s) of Salvacion USA under contract.   35 U.S.C. § 271(a) makes use of a patented invention without authority an act of infringement. According to information and belief, Salvacion USA and/or its agent(s) used the Covixyl formulation to perform all of the method steps of claim 1 in order to perform the required tests. Therefore,

by using the Covixyl formulation for testing purposes, Salvacion USA is liable for direct infringement of claim 1.

Further, it is well established that infringement of any one claim of a patent infringes the entire patent. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222 (Fed. Cir. 1995).

By the very same reasoning, Salvacion USA's development and testing of the withdrawn product Covixyl-G also directly infringed claims 1, 2, 6, and 7 because benzalkonium chloride was both the cationic and biocidic agents. This is the case even though the product was not sold in the United States.

Finally, in their arguments against being held liable for direct infringement, Defendants concentrate only on claim 1. They completely ignore claim 2.

b.    Induced infringement of '802 Patent

"[W]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

Count 1 (¶ 92) of the complaint alleges that Defendants Salvacion USA and Salvacion International knowingly induce infringement of the '802 Patent by specifically encouraging and inducing others to use the patented invention in the United States. 35 U.S.C. § 271(a) renders anyone who uses a patented invention without authority is an infringer. Therefore, all customers who bought and used the Covixyl product are liable for patent infringement. By offering to sell, selling and

13

shipping the Covixyl product to customers in the United States, Salvacion USA and Salvacion International induced others to infringe on the '802 Patent. Method claim 1 is carried out in its entirety by each customer who purchases and uses the Covixyl product.

In their brief, Defendants state that, "[l]iability for inducement requires an underlying act of direct infringement," citing *Limelight Networks, Inc. v. Akamai Techs, Inc.*, 572 U.S. 915, 921 (2014). Arguments were made *supra* that Defendants directly infringed claim 1 by developing, making and testing the recited formulation, and directly infringed claim 2 by developing, making, offering to sell, and selling the formulation to customers throughout the United States.

Defendants further state, "Trutek has not plausibly alleged that Salvacion USA or Salvacion International possessed the requisite knowledge and intent for induced infringement of any claim of the '802 Patent. Liability for inducement requires knowledge *both*[2] the patent *and*[2] that the acts it allegedly induced constitute patent infringement."

According to information and belief, Cho is a principal of both Salvacion USA and Jintec. The headquarters addresses of both companies are the same. Cho is a co-inventor of the formulation of the '098 Application, and the inventors applied for a patent in the name of Salvacion USA. On March 4, 2019, Cho entered into a

---

[2] Emphasis supplied.

14

Confidential Disclosure Agreement with Trutek (ECF 1-1). According to the terms of that Agreement, Trutek agreed to disclose all of its technology of the NasalGuard products to Cho. As part of its disclosure, Trutek provided copies of its patents covering its electrostatic product technology to Cho. Among the patents that Wahi provided to Cho were the '802 Patent and US Patent Nos. 9,737,497 ("the '497 Patent") and 9,750,706 ("the '706 Patent"). Wahi also provided him with a copy of the International Patent Application No. PCT/US2017/048386 ("the PCT Application). As part of the Jintec Agreement (ECF 2) Cho requested that Trutek file the PCT Application in Korea. The PCT Application is the International Counterpart of the combined patent applications for the '497 Patent and the '706 Patent. The PCT Application was published by WIPO[3] as WO 2018/118146 A1, a copy of which is attached hereto as Exhibit 3. The claims of the '802 Patent are discussed in the PCT Application (*see* Page Numbered as 7, therein). They are similarly discussed in the '497 Patent (at 4:43) and the '706 Patent (at 4:46). A declaration attested to by Wahi regarding the disclosures to Cho is attached hereto as Exhibit 4.

Based upon the disclosures provided to Cho by Wahi, Cho was aware of the '802 Patent. He knew, or should have known, that sales of a product based on the '802 Patent could make customers liable for patent infringement. Thus, Cho had

---

[3] WIPO is an acronym for the **W**orld **I**ntellectual **P**roperty **O**rganization.

knowledge of *both* the patent *and*[2] that the acts it allegedly induced constitute patent infringement. While Count 1 does not allege that Cho is liable for infringement of the '802 Patent, as an employee or principal of Salvacion USA, his requisite knowledge is imputed to Salvacion USA based in the principle of *respondeat superior*. His affiliation with Salvacion International is not presently known. However, based on information from the Salvacion USA website, Salvacion USA is a member of the Enterprise that is engaged in infringement of the '802 Patent.

In *Akamai*, the Federal Circuit held:

> where two or more actors form a joint enterprise, all can be charged with the acts of the other, rendering each liable for the steps performed by the other as if each is a single actor. See Restatement (Second) of Torts § 491 cmt. b ("The law ... considers that each is the agent or servant of the others, and that the act of any one within the scope of the enterprise is to be charged vicariously against the rest."). A joint enterprise requires proof of four elements:
>
> (1) an agreement, express or implied, among the members of the group;
> (2) a common purpose to be carried out by the group;
> (3) a community of pecuniary interest in that purpose, among the members; and
> (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Akamai v. Limelight*, 797 F.3d 1020 (Fed. Cir. 2015).

Being members of the Enterprise, Salvacion USA and Salvacion International (1) made an agreement; (2) with a common purpose to sell Covixyl to customers in the United States; (3) are a part of a community of pecuniary interest in that purpose;

and (4) an equal right to a voice in the direction of the enterprise, based on the licensor/licensee relationship.

Thus, Salvacion USA and Salvacion International are both liable for induced infringement of the '802 Patent based on sales and delivery of Covixyl to customers, who would themselves be infringers of the '802 Patent based on their use of the product.

35 U.S.C § 271(c) states:

*Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.*

Here, Defendants Salvacion USA and Salvacion International offer to sell, sell the Covixyl formulation, and ship same to customers in the United States. The Covixyl formulation is the material component of the invention recited in claim 1 of the '802 Patent. As argued *supra*, the Defendants know, or should know, that said formulation is especially adapted for use in infringement of claim 1 of the '802 Patent. The Covixyl formulation is not a staple article or commodity of commerce suitable for substantial noninfringing use. Thus, Defendants Salvacion USA and Salvacion International are liable as contributory infringers.

17

**III.    Count 2 should not be dismissed in part under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted**

a.    <u>Cho's breach of the implied covenant of good faith and fair dealing</u>.

In contract law, the implied covenant of good faith and fair dealing is a general presumption that the parties to a contract will deal with each other honestly, fairly, and in good faith, so as not to destroy the right of the other party or parties to receive the benefits of the contract. *AMC, LLC v. Northwest Farm Food Cooperative*, 481 F.Supp.3d 1153, 1178 (D. Or. 2020). It is implied in a number of contract types to reinforce the express covenants or promises of the contract. *Id.* As Defendants admit, "[E]very contract imposes on each party the duty of good faith and fair dealing in its performance and its enforcement." *Pickett v. Lloyd's & Peerless Ins. Agency, Inc.*, 621 A.2d 445, 450 (N.J. 1993). Defendants further state that, "a claim for breach of implied covenants cannot pertain to any matter specifically covered by the express covenants between the parties," citing *Enrunda Trading Co. v. MTM Trading LLC*, 2018 WL 11241079, at *3 (D.N.J. Mar. 29, 2018).

In the Confidential Disclosure Agreement (ECF 1-1) entered into by Cho and Wahi, in return for Trutek's disclosure of its "Confidential Information," Cho made the following express promises:[4]

---

[4] The promises and covenants are herein paraphrased for clarity.  They do not replace those contained in the March 4, 2019 Confidential Disclosure Agreement (ECF 1-1).

- Cho will maintain all Confidential Information in strict confidence, and he will not permit Confidential Information to be disclosed to any third party or to be used for any purpose not authorized by Trutek in writing.

- Upon request by Trutek, Cho will return all Confidential Information to Trutek and destroy or erase all additional copies and recordings thereof. Cho's obligation of confidentiality and non-use will continue for a period of ten years.

- Cho agreed that the obligations contained in the Agreement shall extend to and be binding upon any employee or affiliate of Cho who has access to the Confidential Information, and Cho will obtain agreements to that effect from those having access to the Confidential Information.

- Cho promised not to profit from the disclosure of the Confidential Information other than through an agreement with Trutek.

- Cho promised that all unique developments and improvements, inventions, patentable or not, and any patents issuing therefrom shall belong to Trutek without any further authorization from Cho.

Cho broke every one of these express promises. The relationship with Cho and Trutek began in March 2019. The agreement governing the distribution of NasalGuard products in Korea began in May 2019. The disclosure of Trutek's Confidential Information to Cho took place during the intervening period. The

19

relationship between the parties had not yet broken down until Trutek filed its lawsuit against Jintec on March 26, 2021.

On August 27, 2020, Cho and Maria Gaffar (Defendant Gaffar's wife) caused Salvacion USA to be incorporated as a domestic profit corporation in New Jersey. Cho was the principal contact, since the registered corporate address was also that of Jintec. On August 31, 2020, Defendants Cho, Gaffar, and Yun ("Three Named Inventors") filed U.S. Provisional Patent Application No. 63/103,881 titled, "Synergistic Anti-Viral Compositions and Methods of Making Them." On October 15, 2020, the Three Named Inventors filed International Patent Application No. PCT/US20/55772 at the USPTO in the name of Salvacion USA and claimed the benefit and priority to the provisional patent application. Based on the PCT International Application, Salvacion USA proceeded to file for patent protection in Korea, Europe, China, Australia, Japan, Canada, Thailand, Brazil, and the Russian Federation. These activities were done secretly while Jintec was in a relationship with Trutek. Salvacion USA began to sell the infringing Covixyl product on Amazon in direct competition with Trutek without disclosing it to Trutek. It was only by accident that Trutek discovered these nefarious activities in late 2022. Every sale made by Salvacion USA on Amazon was a sale that could have been made by Trutek.

It is apparent that notwithstanding his express obligations to Trutek, Cho did not deal with Trutek honestly, openly, and fairly. His activities went beyond a simple breach of the express provisions of the Confidential Disclosure Agreement. They were done with the intent to injure Trutek. This court should not dismiss the complaint against Cho for breach of the implied covenant of good faith and fair dealing.

   b.   <u>Trutek's Ownership of Patent Applications and Any Patents Issuing Therefrom</u>.

Conditions 4 and 5 of the Confidential Disclosure Agreement entered into by Cho on March 4, 2019 (ECF 1-1), are as follows.

   4.   *The obligations contained in this Agreement shall be binding upon any employee or affiliate of the Disclosee,[5] who has access to Confidential Information pursuant to this Agreement. The Disclosee shall obtain this agreement of those employees and affiliates who are granted access to the Confidential Information to comply with the terms hereof. Under no circumstances will the Disclosee attempt to profit from the project in any form other than through an agreement with the Principal.[6]*

   5.   *All unique developments, inventions and improvements, patentable or not, as a result Disclosee's involvement with the "Project"[7] shall belong to the Principal. The Principal shall have sole, complete, and irrevocable rights to all such improvements, inventions, and Patents without any further verbal or written authorization from the Disclosee. The Disclosee's proprietary,*

---

[5] The 'Disclosee' refers to Cho.
[6] The 'Principal' refers to Trutek Corp.
[7] The 'Project' refers to the business relationship between Trutek and Jintec, whereby Jintec opts to become a distributor of Trutek's products in Korea.

> patented or copyrighted information, data or processes will not
> be affected by this agreement.

Without regard to Cho's breach of the Confidential Disclosure Agreement, the patent applications, domestic, international, and foreign, disclose developments and inventions that either read on the '802 Patent or that represent improvements to the technology of the '802 Patent. The patent applications all name Cho as an inventor. The products that the Salvacion USA patent applications seek to protect infringe on the '802 Patent when made, used, or sold in the United States. The development of these products depends upon the trade secret and proprietary information imparted to him by Trutek and then disclosed to Gaffar and Yun. Without regard to Cho's breach of contract, Clause 5 *supra* mandates that the patent applications, any patents issuing therefrom, and the products themselves belong to Trutek.

In their brief, Defendants assert that, "Trutek's requested relief fails as pled because Trutek also alleges that the patent applications have been assigned to Salvacion USA." They further assert that Cho "cannot 'convey and assign' the patent applications to Trutek because they are not within his possession to convey or assign."

However, based on Cho's agreement with Trutek, the patent applications were wrongfully assigned to Salvacion USA. It is analogous to a thief stealing a piece of jewelry and selling it to a third party. It is well known that the stolen jewelry can be recovered from the third party. The third party does not own it. With regard to the

present matter, while Cho cannot re-convey or re-assign the patent applications, the court has the ability to void the assignment to Salvacion USA and to declare Trutek to be their rightful owner.

     c.    <u>An injunction against Cho for continuing his breaching activities</u>.

Defendants assert that the case of *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) held that to be entitled to a permanent injunction, a plaintiff must prove (1) that it has suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, prove inadequate to compensate for that injury; (3) that the balance of hardships between the plaintiff and defendant favor equitable relief; and (4) that the public interest would be disserved by a permanent injunction."

It should be noted that the demand for an injunction is against Cho <u>continuing</u> his breaching activities. Cho breached his agreement with Trutek, and what has already occurred can be handled in this lawsuit. It is the future that worries Trutek.

    1. **<u>Irreparable Injury</u>** - Cho already possesses Trutek's Confidential Information.  Cho has shown a tendency to use it to Trutek's disadvantage.  If an injunction is not granted, even if this case has been fully adjudicated in Trutek's favor, nothing will prevent Cho from engaging in activities using Trutek's Confidential Information to gain a future competitive advantage. Trutek could be involved in endless lawsuits.

2. **Legal _versus_ Equitable Remedies** - Legal remedies may be adequate to compensate Trutek for past damages, but there is no way to determine what future damages might occur if Cho continues to breach his agreement with Trutek by disclosing Trutek's Confidential Information to others or by using it for a competitive disadvantage against Trutek. The Confidential Information is unique, and Cho compromises that asset even today.

3. **Balancing the Hardships** - Cho should not be permitted to continue breaching his agreement with Trutek. If he is enjoined from continuing his breaching activities, he will not be able to profit from wrongdoing. On the other hand, Trutek will suffer either loss of the secrecy of its intellectual property or Cho might use it to Trutek's competitive disadvantage.

4. **Public Interest** - It is in the public interest to prevent Cho from continuing his breaching activities. For this reason, New Jersey (as well as Congress) passed theft of trade secret legislation.

Assuming that Cho is found liable for breach of his Agreement with Trutek, a permanent injunction is an appropriate remedy to prevent future injury to Trutek.

## IV.   Count 4 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff pled sufficient facts to state a claim for concealment by Cho.

Defendants allege that concealment is "analogous to a claim for 'spoliation of evidence.'" Instead, the tort of concealment, also known as fraudulent concealment, involves the intentional or fraudulent concealment of material facts, generally with

the intent to mislead or defraud. The exact definition can vary by jurisdiction, but there are common elements that are often included.

One of these elements is the concealment of facts by knowledge or the means of knowledge. *See Trafalgar House Const., Inc v. ZMM, Inc.*, 211 W.Va. 578,584 (2002)*.* This can involve either active misrepresentation or passive silence *See Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 230 (Tex. App. 2006). Active misrepresentation involves deceptive acts designed to hide information, mislead, or avoid suspicion, or prevent further inquiry into a material matter. On the other hand, passive silence is characterized by mere silence. However, mere silence does not constitute concealment unless there is a duty to disclose arising from a fiduciary or confidential relationship *See Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987).

Another element is the duty to disclose. This means that the defendant must conceal a material fact "that in equity or good conscience should be disclosed." Here, Cho had a confidential relationship with Trutek. Cho misappropriated Trutek's trade secrets, used them for his own profit and to compete with Trutek. It is only by accident that Trutek discovered what he was doing. Cho had a duty to disclose his activities in this regard. Instead, he apparently continued his relationship with Trutek, while at the same time, forming a company to compete with Trutek. Had

Wahi realized that this was his intent, Trutek would never have entered into a relationship with Jintec.

The third common element is the intention to mislead or defraud. This involves a fixed purpose to conceal the facts necessary for the plaintiff to know that they have a cause of action. Trutek's discovery of the cause of action was entirely accidental.

The elements of fraudulent concealment were set out in the leading case of *Morrison v. Goodspeed,* 100 Colo. 470, 477 (1937). These include: the concealment of a material existing fact that in equity and good conscience should be disclosed; knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; ignorance of that fact on the part of the one from whom the fact is concealed; the intention that the concealment be acted upon; and action on the concealment resulting in damages.

Cho concealed the material fact that, while he was acting as a distributor for Trutek's products, he had formed a company with others to misappropriate Trutek's trade secrets and patents, and to compete in the same marketplace as Trutek.

In terms of damages, the injured party is typically entitled to compensation "for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Trutek put forth sufficient facts in its complaint to support a claim for concealment. Count 3 should not be dismissed.

**V.   Count 4 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because the patent applications (domestic, international, and foreign) filed by Salvacion USA and patents issuing therefrom should belong to Trutek, and Defendants conspired to deprive Trutek of rightful licensing fees therefrom.**

The common law tort of conversion is the intentional exercise of wrongful dominion and control over the chattel of another without consent or privilege. By virtue of Clause 5 of the Confidential Disclosure Agreement, all patent applications (domestic, international, and foreign) filed by Salvacion USA should rightfully belong to Trutek. Cho and Salvacion USA initially converted Trutek's property based on Cho's assignment of the patent applications to Salvacion USA. Salvacion USA then intentionally continued to exercise dominion and control over these patent applications. While a contractual relationship exists between Cho and Trutek, no such relationship exists between Salvacion USA and Trutek. Trutek does not seek contractual remedies against Salvacion USA. Salvacion USA holds wrongful possession of these patent applications, and Trutek has the legal right to demand return of its property.

In addition, Defendants Gaffar and Yun along with Cho converted Trutek's rightfully owned intellectual property when they assigned the patent applications (domestic, international, and foreign) to Salvacion USA.

Further, because the Defendant business entities are licensees of Salvacion USA. They are also members of the Enterprise that conspired to deprive Trutek of its rightfully owned intellectual property. Trutek does not seek contract damages against these business entities. Thus, the economic loss doctrine does not apply here. Instead, they derived benefits and profits f from the sales of the products for which worldwide patent protection is sought and should rightfully belong to Trutek.

While it can be shown that Cho and Gaffar as well as Salvacion USA intentionally and with knowledge converted the patent applications, it is not relevant whether the remaining defendants were aware that they were exercising dominion and control over property belonging to another. It is merely required that the intentionally exercise dominion and control over the property of another without authority.

**VI.   Count 5 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts to establish *prima facie* that Cho, Gaffar, Yun, and Salvacion USA violated 18 U.S.C. § 1832 by misappropriating Trutek's trade secrets for their own benefit.**

18 U.S.C. §1832 (Theft of Trade Secrets Act) states:

**(a)**   Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—

**(1)**   steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;

28

    **(2)**    without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information;

    **(3)**    receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;

    **(4)**    attempts to commit any offense described in paragraphs (1) through (3); or

    **(5)**    conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, shall, except as provided in subsection (b), be fined under this title or imprisoned not more than 10 years, or both.

    **(b)**    Any organization that commits any offense described in subsection (a) shall be fined not more than the greater of $5,000,000 or 3 times the value of the stolen <u>trade secret</u> to the organization, including expenses for research and design and other costs of reproducing the <u>trade secret</u> that the organization has thereby avoided.

First, Trutek owns trade secrets related to NasalGuard® products that are sold in both interstate and foreign commerce. The nature of these secrets is outlined in Paragraph 118 of the complaint. Revelation of these trade secrets would cause great harm to Trutek and would affect Trutek's competitive edge in selling NasalGuard® products worldwide. Therefore, these trade secrets are closely guarded and were never revealed to the public. Cho presented himself to Wahi as wanting to act as a distributor for Trutek's NasalGuard® products in South Korea, China, and Vietnam. Cho made the case to Wahi that he needed to learn Trutek's Confidential Information in order to deal with the various Asian governmental agencies. To that end, Wahi demanded to Cho execute a Confidential Disclosure Agreement, which Cho agreed

to do. The Confidential Disclosure Agreement (ECF 1-1) was executed by both parties on March 4, 2019. Once this Agreement was executed, in anticipation of a profitable business relationship, Trutek began to disclose its Confidential Information to Cho. That Confidential Information included many of Trutek's trade secrets. Because the complaint is a public document, the actual material disclosed to Cho was not included. However, Exhibit 4 (attached to this legal brief) is a declaration by Wahi with more detail regarding the disclosure to Cho by Trutek. Jintec then entered into two additional agreements with Trutek to distribute NasalGuard® products in South Korea (ECF 1-2), China, and Vietnam (ECF 1-3). As part of Jintec's efforts in Korea, Cho demanded that Trutek reformulate its product to conform to Korean government standards. Jintec never made a single sale of the reformulated product.

The agreement for Jintec distributing NasalGuard® products in China and Vietnam (ECF 1-3) was executed on November 6, 2019. On August 27, 2020, less than one year after execution of the China agreement, Cho and Gaffar formed Salvacion USA, Inc. as a for-profit corporation under the laws of the State of New Jersey. Four days later, Cho, Gaffar, and Yun filed a provisional patent application at the USPTO. The disclosure therein was for formulations that utilized Trutek's technology, and in some ways improved upon that technology. Despite the first-to-file provisions of the America Invents Act, the disclosed formulations had been

conceived some time before the filing date. Thus, while pretending to work together with Trutek for their mutual benefit, Cho intended to profit from his knowledge of Trutek's proprietary information.

Therefore, as prescribed in 18 U.S.C. § 1832(a)(1), and in violation thereof, Cho appropriated without authorization and by deception Trutek's trade secrets for his own economic benefit, knowing that it would injure Trutek, the rightful owner of the trade secrets.

Defendants claim that Plaintiff's description of the stolen trade secrets lacks specificity. Other that stating that the secrets consisted of formulation ingredients and compositions thereof for Trutek's NasalGuard® products including for the NasalGuard® Airborne Particle Blocker Gel, methods of manufacturing and testing, knowhow in being able to adjust the adhesion and cohesion of a product so as to enable it to create a thin film that would adhere to the skin, to create an impenetrable barrier with the thin film, and to enable harmful particles to be held in place by the thin film as well as information regarding the strengths of the surface electrostatic charge necessary and sufficient to achieve efficacy of the NasalGuard® products. (*See* Paragraph 9 of Exhibit 4, attached hereto.) To be more specific in the complaint would reveal the same trade secrets to the general public.

Gaffar and Yun knowingly used the trade secrets received from Trutek to develop a product that they knew would compete with Trutek's NasalGuard®

products. Salvacion USA was formed for the sole purpose of developing, patenting, and marketing Covixyl, a product that utilizes Trutek's trade secrets. Then according to information and belief, on September 8, 2021, Salvacion International was formed as a Wyoming limited liability company for the purpose of making Covixyl available to the public. All these Defendants conspired with one another to utilize Trutek's trade secrets and other knowhow to profit from a product that would compete against Trutek's NasalGuard® products without regard to injury to Trutek.

**VII.   Count 6 should not be dismissed under Fed. R. Civ. Pro. 12(b)(6) because Plaintiff presented sufficient facts to establish *prima facie* that Cho, Gaffar, Yun, and Salvacion USA violated N.J.S.A. § 56:15-1 *et. sec.*, the New Jersey Trade Secrets Act ("NJTSA") by misappropriating Trutek's trade secrets for their own benefit.**

The New Jersey Trade Secrets Act (N.J.S.A. § 56:15-1, et seq.) offers protections for trade secrets. It defines a trade secret as "information" that has independent economic value, actual or potential, because it is not generally known and cannot be easily found out by proper means by others who could gain economic value from its disclosure or use. The Act also mandates the holder of this information to make reasonable efforts to maintain its confidentiality.

The New Jersey Trade Secrets Act defines trade secrets broadly as "information, held by one or more people, without regard to form, including a formula, pattern, business data compilation, program, device, method, technique, design, diagram, drawing, invention, plan, procedure, or process, that: derives

independent economic value, actual or potential, from not being either generally known to, and not being readily accessible by proper means by other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The Act prohibits the misappropriation of a trade secret, which is generally defined as the improper acquisition and use or disclosure of the secret. Misappropriation can be constituted through several acts, including acquisition of the trade secret by a person who knows or has reason to know the trade secret was acquired by improper means; or disclosure or use of the trade secret without express or implied consent.

In order to assert a claim of trade secret misappropriation under the Act, the plaintiff must demonstrate that the subject matter of the purported trade secret is not a matter of public knowledge or of general knowledge within the industry. The Act also outlines the elements of a trade secret claim under New Jersey law: (1) the existence of a trade secret, (2) communicated in confidence by the plaintiff to the employee, (3) disclosed by the employee in breach of that confidence, (4) acquired by the competitor with knowledge of the breach of confidence, and (5) used by the competitor to the detriment of the plaintiff.

The person who misappropriates the trade secret does not necessarily need to be an employee. The New Jersey Trade Secrets Act (NJTSA) and the Defend Trade

Secrets Act (DTSA) both define misappropriation as the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. The NJTSA further defines misappropriation to include the use of a trade secret without the plaintiff's consent by a person who either knew or had reason to know that the trade secrets were acquired through improper means. Therefore, the relevant laws focus on the act of improperly acquiring or using trade secrets rather than the person's relationship to the entity whose trade secret is misappropriated.

The elements of Trutek's claim under the N.J.T.S.A are:

(1) **<u>The Existence of a Trade Secret</u>** - Here, Trutek had information regarding its product formulations, manufacturing methodology, efficacy (and methods of achieving same), unpatented inventions, and level of electrostatic charge to be effective. For a further list, refer to Paragraph 9 of Exhibit 4, attached hereto. Trutek never revealed these things to anyone other than trusted individuals and maintained this information as closely guarded secrets.

(2) **<u>Communicated In Confidence By The Plaintiff To An Individual</u>** - Here, Wahi insisted that Cho execute the Confidential Disclosure Agreement prior to disclosing the information to Cho. The Agreement took reasonable precautions that Cho would treat the disclosed information in strict confidence.

(3) **Disclosed By The Individual In Breach Of That Confidence** - Here, shortly after the disclosure of the trade secret information to Cho, while Cho and Jintec were continuing to work with Trutek with the aim of marketing Trutek's products in Korea, Cho disclosed the trade secret information to Gaffar and Yun in breach of the agreed upon confidence.

(4) **Acquired By The Competitor With Knowledge Of The Breach Of Confidence** - Trutek's trade secret information was transmitted to Salvacion USA which proceeded to develop a competing product, and later by Salvacion International. According to information and belief, both Salvacion USA and Salvacion International knew the origin of the information.

(5) **Used By The Competitor To The Detriment Of The Plaintiff** - Salvacion USA and Salvacion International made and sold Covixyl, a competitive product to Trutek's NasalGuard® products. They then formed an international Enterprise with members in the United Kingdom, Korea, and the Dominican Republic to sell the Covixyl product outside of the United States and in many countries where Trutek's NasalGuard® products are sold. Every sale made by the Salvacion Enterprise is a sale lost to Trutek.

Thus, Trutek presented a *prima facie* showing that Defendants Cho, Gaffar, and Yun along with Salvacion USA and Salvacion International violated the New Jersey Trade Secrets Act (N.J.S.A. § 56:15-1 *et. sec.*).

35

VIII.   **Count 7 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts to establish *prima facie* that all Defendants were unjustly enriched due to sales of a product that rightfully belonged to Trutek, and that the sales should have accrued to Trutek.**

As argued *supra*, all Defendants are members of a global Enterprise that sells a product derived from trade secrets and technology rightfully belonging to Trutek. The product was developed by Cho, Gaffar, and Yun from trade secrets illegally misappropriated from Trutek. The Enterprise and all of its members are liable for the acts of Cho, Gaffar, and Yun under the doctrine of *respondeat superior*. As argued *supra*, the product and all monies derived from exploitation and sales by the Enterprise belong to Trutek. Yet, Trutek never received any royalties or money from the Enterprise.

Defendants argue that "unjust enrichment is a quasi-contractual remedy available only when parties do not have an express contract." They further argue that "Trutek's unjust enrichment claim is tethered to the contract between Trutek and Cho." However, this is not the case. What Cho did is more than a mere breach of contract. Cho stole trade secrets from Trutek, and in doing so, he violated both federal and New Jersey law. Moreover, no contract exists between Trutek and the other Defendants, who are all members of said Global Enterprise. All the Defendant members of the Enterprise seek protection either from issued patents or from patent applications having an expectation of patentability. Yet, those who sell the product

36

are licensees of Salvacion USA, which developed the accused product and which file applications for patent in many countries. The applications and patents as well as the product itself belong to Trutek. To the extent that Trutek received no money from these entities, they were unjustly enriched.

IX.     **Count 8 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because a *prima facie* case has been made to establish that all Defendants were members of a global Enterprise, and that the members of that Enterprise conspired to deprive Trutek of money that should have accrued to Trutek.**

In order for a person to succeed in a civil conspiracy case, he or she must prove the elements. According to the Restatement (Third) of Torts: Liability for Economic Harm § 27, the elements of a civil conspiracy are as follows:

1. The defendant made an agreement with another to commit a wrong;

2. a tortious or unlawful act was committed against the plaintiff in furtherance of the agreement; and;

3.  the plaintiff suffered economic loss as a result.

Since civil conspiracy requires an unlawful act, the plaintiff must show that a tortious act was committed. A few examples of torts in the context of business are unfair competition and wrongful interference with a business contract or relationship.

Here, Cho unlawfully misappropriated Trutek's trade secrets and disclosed them to Gaffar and Yun. Defendants Cho, Gaffar, and Yun then knowingly made an agreement to develop a product based on Trutek's technology, which included the

trade secrets. The developed product infringed upon Trutek's '802 Patent. Cho, Gaffar, and Yun also made an agreement to patent said product. They then made an agreement to form a New Jersey corporation, Salvacion USA, to hold the patents and patent applications. These tortious acts were committed in furtherance of these agreements. As a corporation, Salvacion USA was complicit in the conspiracy. Once the product was developed, Salvacion USA formed a global Enterprise, the members of which profited from sales of the accused product. As a result of this, all Defendants converted monies rightfully due to Trutek. They interfered with Trutek's prospective economic advantage, and they engaged in unfair business practices. Trutek suffered economic losses as a result of the tortious acts of the members of the Enterprise.

Defendants argue that because Plaintiff pursues a claim against Cho for breach of contract, that it is not entitled to pursue monetary claims against the other Defendants. While Cho's misappropriation of Trutek's trade secrets might have been a breach of contract for Cho, the other Defendants committed the tort of receiving those trade secrets and profiting from them to the economic detriment of Trutek.

## X.  Count 9 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts in the complaint to specifically plead fraudulent activity by Defendants against Trutek thereby causing harm.

The complaint adequately describes the fraudulent scheme designed to deprive Trutek of its intellectual property and to establish a product to compete

globally with Trutek's NasalGuard® Airborne Particle Blocker Gel product. Cho induced Wahi to disclose Trutek's technology and trade secrets with a promise that he would neither disclose it to third parties nor use it for his own profit other than to promote the business relationship between Trutek and Jintec. Wahi relied on Cho's representations, which were knowingly false. Cho and Jintec went through the motions of promoting the relationship with Trutek, but no sales were made. All the while, Cho was plotting to develop a competitive product and to obtain worldwide patent protection for it. Cho concealed the fact that he, in concert with Gaffar and Yun, were developing, making, offering to sell, and selling developments based on Trutek's intellectual property, technology, and trade secrets. Sales of their product in the United States infringes Trutek's '802 Patent. Cho, Gaffar, and Yun along with Salvacion USA formed a global Enterprise to compete with Trutek in its worldwide market. Cho also concealed the fact that the Enterprise existed and what they were doing. Cho and Trutek had a confidential relationship, thus imparting a duty of disclosure of the group's activities to Trutek. Wahi relied on Cho's intentional misrepresentations to Trutek's disadvantage. All the members of the Enterprise were complicit in this fraudulent scheme.

**XI.    Count 10 should not be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiff presented sufficient facts in the complaint to specifically plead that a corrupt enterprise exists, and that members of said enterprise committed instances of the predicate acts of wire fraud and mail fraud making them all liable for civil penalties under 18 U.S.C. §§ 1961-1968 - Racketeer Influenced and Corrupt Organizations Act ("RICO").**

39

In its complaint, Plaintiff devotes ten pages to establishing that there is a corrupt global enterprise ("Salvacion Enterprise") within the meaning of 18 U.S.C. § 1961(c). The Salvacion Enterprise is engaged in, and whose activities affect interstate and foreign commerce. The complaint discusses each Defendant's position and role in the Enterprise. It pointed out that Defendants Cho, Gaffar, and Yun are masterminds in organizing the Enterprise. Scienter of all Defendants is established from their pattern and practices and the centrality of those practices to the entire business. The complaint points out several instances of wire fraud and mail fraud, which are predicate acts required by the statute.

Defendants assert that Plaintiff's RICO claims fail for three independent reasons:

    a.    <u>The economic loss doctrine bars Trutek's RICO claim</u>.

Defendant continually asserts that Trutek is trying to recast its breach of contract claim against Cho as RICO claims. The economic loss doctrine normally bars plaintiffs from recovering in tort arising from a contract. However, there are exceptions. One such exception is where fraud is involved. Fraud in the inducement allows a plaintiff to overcome the economic loss doctrine. However, RICO does not concern itself with fraud in the inducement. On the other hand, Plaintiff's allegations of wire fraud and mail fraud allow also economic losses to be recovered. In addition, the contract between Cho and Trutek represents an agreement with a single member

40

of the Salvacion Enterprise. There is no privity between Trutek and the other members of the Enterprise.

      b.    <u>Trutek's Pleading Sufficiency of Mail & Wire Fraud</u>

Defendants state that Plaintiff failed to sufficiently plead a pattern of racketeering activity with respect to mail fraud and wire fraud. Defendants cite the case of *Kaul v. Christie*, 372 F.Supp.3d 206, 248 (D.N.J. 2019) to provide the elements of wire fraud. They are: (1) a scheme to defraud; and (2) an electronic communication in furtherance of that scheme. Trutek sufficiently cited several instances of wire fraud. For example, Cho was aware of the '802 Patent. As a co-inventor of the Covixyl-G and Covixyl-V products, Cho was aware of his obligations to assign the patent applications for these products to Trutek. Failure to make such assignment might be considered a breach of contract, but filing patent applications at the USPTO electronically represents a fraud committed on the USPTO and falling within the definition of 18 U.S.C. § 1343. This is more than mere breach of contract. Further, Gaffar and Yun are not in privity with Trutek. It is improper to impute a breach of contract claim to those who are not in privity.

      c.    <u>Agreement between the Defendants</u>

Defendants assert that the conspiracy actions of Defendants in Count 10 (RICO claims) are no different than for Count 8 (Civil Conspiracy). Indeed, the actions are the same. A conspiracy occurs when two or more people plot to commit

an unlawful act. In some cases, a conspiracy can also occur when an act is not illegal, *per se*, but becomes unlawful when committed by a group of people. The main difference between a civil conspiracy and a criminal conspiracy is that in a criminal conspiracy, the actors are intending to commit an act that is punishable under criminal laws. A civil conspiracy can occur when two or more people conspire to commit an act that is not criminal, but still unlawful, and another person is injured by the act.

## CONCLUSION

Based on the foregoing arguments, Plaintiff respectfully requests the Court deny Defendants' Motion to Dismiss in its entirety.

Date: November 22, 2023                  Respectfully Submitted,

*/s/ Solomon M. Radner*
Solomon M. Radner (NJ SBN 283502018)
LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
solomonradner@kaltmanlaw.com

*/s/ Stanley H. Kremen*
Stanley H. Kremen, Esq. (*pro hac vice*)
LAW OFFICE OF STANLEY KREMEN, ESQ.
4 Lenape Lane
East Brunswick, NJ
Telephone: (732)593-7294
Facsimile: (732) 312-5218
shk@shk-dplc.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 22nd day of November 2023, the foregoing Plaintiff's Memorandum of Law in Opposition to Defendants' Consolidated Motion to Dismiss, was served on all parties of record via electronic mail.

<u>*/s/ Solomon M. Radner*</u>