# EXHIBIT 1



# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only |
|---|
| Payment type: ☐ ck ☐ cg ☐ ca |
| Chg/Ck Number: |
| Amount: |
| Overpayment: |
| Batch Number: |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| AMIRALI HAIDRI | (908) 688-8700 | Somerset |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| LAW OFFICES OF AMIRALI Y. HAIDRI | |

| Office Address | Document Type |
|---|---|
| 110 HILLSIDE AVENUE SUITE 104 SPRINGFIELD, NEW JERSEY 07081 | COMPLAINT |
| | Jury Demand   ■ Yes   ☐ No |

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| TRUTEK CORP., PLAINTIFF | TRUTEK CORP. v. JINTEC AMERICA, INC. |

| Case Type Number (See reverse side for listing) | Are sexual abuse claims alleged? | Is this a professional malpractice case?   ☐ Yes   ■ No |
|---|---|---|
| 599 | ☐ Yes   ■ No | If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit. |

| Related Cases Pending? ☐ Yes   ■ No | If "Yes," list docket numbers |
|---|---|

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? ■ Yes   ☐ No | Name of defendant's primary insurance company (if known)   ☐ None   ☐ Unknown |
|---|---|

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

| Do parties have a current, past or recurrent relationship? ■ Yes   ☐ No | If "Yes," is that relationship: ☐ Employer/Employee   ☐ Friend/Neighbor   ☐ Other (explain) ☐ Familial   ■ Business |
|---|---|

| Does the statute governing this case provide for payment of fees by the losing party?   ☐ Yes   ■ No |
|---|

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

| Do you or your client need any disability accommodations? ☐ Yes   ■ No | If yes, please identify the requested accommodation: |
|---|---|
| Will an interpreter be needed? ☐ Yes   ■ No | If yes, for what language? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

Attorney Signature:

Revised Form Promulgated by 12/23/2020 Notice to the Bar, CN 10517 (Appendix XII-B1)

**Side 2**



# Civil Case Information Statement
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

## Track I - 150 days discovery

| | | | |
|---|---|---|---|
| 151 | Name Change | 506 | PIP Coverage |
| 175 | Forfeiture | 510 | UM or UIM Claim (coverage issues only) |
| 302 | Tenancy | 511 | Action on Negotiable Instrument |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) | 512 | Lemon Law |
| 502 | Book Account (debt collection matters only) | 801 | Summary Action |
| 505 | Other Insurance Claim (including declaratory judgment actions) | 802 | Open Public Records Act (summary action) |
| | | 999 | Other (briefly describe nature of action) |

## Track II - 300 days discovery

| | | | |
|---|---|---|---|
| 305 | Construction | 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) | 605 | Personal Injury |
| | | 610 | Auto Negligence – Property Damage |
| 599 | Contract/Commercial Transaction | 621 | UM or UIM Claim (includes bodily injury) |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) | 699 | Tort – Other |

## Track III - 450 days discovery

| | | | |
|---|---|---|---|
| 005 | Civil Rights | 608 | Toxic Tort |
| 301 | Condemnation | 609 | Defamation |
| 602 | Assault and Battery | 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 604 | Medical Malpractice | | |
| 606 | Product Liability | 617 | Inverse Condemnation |
| 607 | Professional Malpractice | 618 | Law Against Discrimination (LAD) Cases |

## Track IV – Active Case Management by Individual Judge / 450 days discovery

| | | | |
|---|---|---|---|
| 156 | Environmental/Environmental Coverage Litigation | 514 | Insurance Fraud |
| 303 | Mt. Laurel | 620 | False Claims Act |
| 508 | Complex Commercial | 701 | Actions in Lieu of Prerogative Writs |
| 513 | Complex Construction | | |

## Multicounty Litigation (Track IV)

| | | | |
|---|---|---|---|
| 271 | Accutane/Isotretinoin | 601 | Asbestos |
| 274 | Risperdal/Seroquel/Zyprexa | 623 | Propecia |
| 281 | Bristol-Myers Squibb Environmental | 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 282 | Fosamax | 625 | Firefighter Hearing Loss Litigation |
| 285 | Stryker Trident Hip Implants | 626 | Abilify |
| 286 | Levaquin | 627 | Physiomesh Flexible Composite Mesh |
| 289 | Reglan | 628 | Taxotere/Docetaxel |
| 291 | Pelvic Mesh/Gynecare | 629 | Zostavax |
| 292 | Pelvic Mesh/Bard | 630 | Proceed Mesh/Patch |
| 293 | DePuy ASR Hip Implant Litigation | 631 | Proton-Pump Inhibitors |
| 295 | AlloDerm Regenerative Tissue Matrix | 632 | HealthPlus Surgery Center |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components | 633 | Prolene Hernia System Mesh |
| 297 | Mirena Contraceptive Device | 634 | Allergan Biocell Textured Breast Implants |
| 299 | Olmesartan Medoxomil Medications/Benicar | | |
| 300 | Talc-Based Body Powders | | |

**If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.**

**Please check off each applicable category** ☐ **Putative Class Action** ☐ **Title 59** ☐ **Consumer Fraud**

AMIRALI Y. HAIDRI, ESQ. 031401982
202 HILLSIDE AVENUE, SUITE 104
SPRINGFIELD, NEW JERSEY 07081
(908) 688-8700
Attorney for Plaintiff
Our File No. 1463

| | |
|---|---|
| TRUTEK CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>JINTEC AMERICA, INC.<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-SOMERSET COUNTY<br>DOCKET NO.: SOM-L-<br><br>Civil Action<br><br>COMPLAINT AND JURY DEMAND<br>Contract |

Plaintiff Trutek Corp. ("Trutek"), a corporation organized and existing under the laws of the State of New Jersey, United States of America, doing business at 281 East Main Street, in the Borough of Somerville, County of Somerset, and State of New Jersey complaining of the above defendant, says:

## FIRST COUNT

1.     Defendant Jintec America, Inc. ("Jintec") is a corporation organized and existing under the laws of the State of New Jersey, United States of America, doing business at 210 Sylvan Avenue, #24 in the Borough of Englewood Cliffs, County of Bergen, and State of New Jersey.

2.     Trutek owns by assignment United States Patent Nos. 5,468,488; 5,674,481; 6,844,005; 8,163,802, 9,737,497; and 9,750,706.   Trutek also owns United States Registered Trademark Nos. 2758780, 4119181, and 5450186 that all claim the brand name NasalGuard®.   These patents and trademarks are part of Trutek's protected intellectual property, which also includes trade secrets.   Trutek markets various products,

including NasalGuard® Airborne Particle Blocker, which are subject to protection by said intellectual property.

3.      On May 12, 2019, Trutek and Jintec entered into a written agreement (the "May 12th Agreement") for an exclusive limited license for distribution rights of NasalGuard® Products in the Republic of South Korea.  The parties agreed to an initial term of five years.  The May 12th Agreement was to be "automatically renewable unless a written notice to terminate is given at least 90 days prior to the expiration of the term by either party to the other."  To comply with South Korean regulations, Trutek agreed to specially reformulate the product.

4.      On July 15, 2019, as required by the May 12th Agreement, Jintec purchased 250,000 filled tubes containing 3 grams of the NasalGuard® product @ $2.47 each for a total of $617,500.  A true copy of Jintec's Purchase Order No. 190715K-01 is attached hereto as Exhibit A.

5.      The purchase order was completed and delivery was tendered by Trutek.  However, there is a remaining unpaid balance for 31,240 filled tubes containing 3 grams of the NasalGuard® product @ $2.47 each to Jintec for a total of $96,816.85.  A copy of Trutek's Invoice No. TtkJintec-2020-3 dated May 5, 2020 for $96,816.85 is attached hereto as Exhibit B.  Trutek sent letters to Jintec demanding payment of the balance owed on this invoice.  The invoiced amount still remains unpaid.

WHEREFORE, Plaintiff Trutek demands judgment against Defendant Jintec as follows:

(a)     compelling said Defendant Jintec to tender payment of the unpaid balance of $96,816.85 to Plaintiff Trutek;

(b)     compelling said Defendant Jintec to tender payment to Trutek for interest incurred by withholding the unpaid balance at a reasonable rate of interest.

(c)     for attorney's fees and costs incurred by Plaintiff Trutek in the prosecution of this matter; and

(d)     for such other and further relief as the Court may deem proper and equitable.

## SECOND COUNT

6.      Plaintiff Trutek repeats each and every allegation of the preceding Count and makes same a part hereof as if fully set forth at length herein.

7.      The May 12th Agreement between the parties is still in effect because Jintec never provided Trutek with the required termination notice.

8.      Clause IX(c) on Page 5 of the May 12th Agreement requires that Jintec issue a new purchase order to Trutek for 500,000 filled tubes containing 3 grams of the NasalGuard® product @ $2.47 each for a total of $1,235,000 due on May 5, 2021.

9.      Jintec engaged outside counsel to represent them in this matter.  Through that outside counsel, Trutek was informed that Jintec has no intention of issuing said purchase order.  Trutek is entitled to rely upon such information.  Therefore, Jintec is in anticipatory breach of the May 12th Agreement.

WHEREFORE, Plaintiff Trutek demands judgment against Defendant Jintec:

(a)     compelling it to tender payment of $1,235,000 for the purchase of 500,000 filled tubes containing 3 grams of the NasalGuard® product @ $2.47 each as required by the May 12th Agreement, whereupon Plaintiff Trutek shall deliver said 500,000 filled tubes to Defendant Jintec;

(b)     for attorney's fees and costs incurred by Plaintiff Trutek in the prosecution of this matter; and

(c)     for such other and further relief as the Court may deem proper and equitable.

## THIRD COUNT

10.     Plaintiff Trutek repeats each and every allegation of the preceding Counts and makes same a part hereof as if fully set forth at length herein.

11.     On November 6, 2019, Trutek and Jintec entered into a written agreement (the "November 6th Agreement") for an exclusive limited license for distribution rights of NasalGuard® Products in Greater China and Vietnam.  The parties agreed to an initial term of five years.  The November 6th Agreement was to be "automatically renewable unless a written notice to terminate is given at least 90 days prior to the expiration of the term by either party to the other."

12.     On March 30, 2020, as required by Clause VIII(d) on Page 3 of the November 6th Agreement, Jintec purchased 350,000 filled tubes containing 3 grams of the NasalGuard® product @ $2.47 each for a total of $864,500.  A true copy of Jintec's Purchase Order No. 20330A-01 is attached hereto as Exhibit C.  Trutek issued a *Pro-*

*Forma* Invoice No. TtkJintecGC-2020-2 to Jintec on March 31, 2020 (Exhibit D attached hereto).

13.     Jintec never tendered any payment to Trutek for the purchase of said 350,000 tubes, and therefore none were delivered.

14.     Jintec is in breach of the November 6th Agreement.

WHEREFORE, Plaintiff Trutek demands judgment against Defendant Jintec:

(a)     compelling it to tender payment of $864,500 for the purchase of 350,000 filled tubes containing 3 grams of the NasalGuard® product @ $2.47 each as required by the November 6th Agreement, whereupon Plaintiff Trutek shall deliver said 350,000 filled tubes to Defendant Jintec;

(b)     compelling said Defendant Jintec to tender payment to Trutek for interest incurred by withholding the unpaid balance at a reasonable rate of interest.

(c)     for attorney's fees and costs incurred by Plaintiff Trutek in the prosecution of this matter; and

(d)     for such other and further relief as the Court may deem proper and equitable.

## **FOURTH COUNT**

15.     Plaintiff Trutek repeats each and every allegation of the preceding Counts and makes same a part hereof as if fully set forth at length herein.

16.     Clause II(a) on Page 1 of the May 12th Agreement states that "Trutek does not grant and Jintec does not claim and will not claim any rights whatsoever with respect to Trutek's Trade Secrets and Intellectual Property **...,** and Jintec hereby acknowledges

Trutek's exclusive right and title in the Territory and elsewhere to the Products and Trutek's Trade Secrets and Intellectual Property."   The May 12th Agreement permits Jintec to engage a South Korean trademark attorney to register Trutek's and NasalGuard trademarks in South Korea at its own expense provided that said trademark registrations are assigned to Trutek.

17.    According to information and belief, as allowed by the May 12th Agreement, Jintec caused Trutek's and NasalGuard trademarks to be registered in the Republic of South Korea.   However, according to information and belief, Jintec did not cause said trademarks or trademark registration applications to be assigned to Trutek as required by the May 12th Agreement.

WHEREFORE, Plaintiff Trutek demands judgment against Defendant Jintec:

(a)    compelling it to assign said South Korean NasalGuard trademark registrations and any pending NasalGuard trademark applications to Plaintiff Trutek.

(b)    for attorney's fees and costs incurred by Plaintiff Trutek in the prosecution of this matter; and

(c)    for such other and further relief as the Court may deem proper and equitable.

## **FIFTH COUNT**

18.    Plaintiff Trutek repeats each and every allegation of the preceding Counts and makes same a part hereof as if fully set forth at length herein.

19.    Clause II(a) on Page 1 of the November 6th Agreement states that "Trutek does not grant and Jintec does not claim and will not claim any rights whatsoever with

respect to Trutek's Trade Secrets and Intellectual Property **...,** and Jintec hereby acknowledges Trutek's exclusive right and title in the Territory and elsewhere to the Products and Trutek's Trade Secrets and Intellectual Property."   The November 6th Agreement permits Jintec to engage a Chinese trademark attorney to register Trutek's and NasalGuard trademarks in the People's Republic of China at its own expense provided that said trademark registrations are assigned to Trutek.

20.   According to information and belief, as allowed by the November 6th Agreement, Jintec caused Trutek's and NasalGuard trademarks to be registered in the People's Republic of China.  However, according to information and belief, Jintec did not cause said trademark registrations or trademark applications to be assigned to Trutek as required by the November 6th Agreement.

WHEREFORE, Plaintiff Trutek demands judgment against Defendant Jintec:

(a)   compelling it to assign said Chinese NasalGuard trademark registrations and any pending NasalGuard trademark applications to Plaintiff Trutek.

(b)   for attorney's fees and costs incurred by Plaintiff Trutek in the prosecution of this matter; and

(c)   for such other and further relief as the Court may deem proper and equitable.

## DEMAND FOR DISCOVERY OF
## INSURANCE COVERAGE

Pursuant to *R.* 4:10-2(b), demand is made that the defendant, Jintec America, Inc., disclose to the plaintiff, Trutek Corp., whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable

to satisfy part or all of a judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide plaintiff with true copies of those insurance agreements or policies, including, but not limited to, any and all declaration sheets.  This demand shall include and cover not only primary coverage, but also any and all excess, catastrophe and umbrella policies.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to *R.* 4:25-4, Amirali Y. Haidri is designated as trial counsel in the within matter.

AMIRALI Y. HAIDRI
Attorney for Plaintiff


By:_____
Amirali Y. Haidri

Dated: March 25, 2021


### JURY DEMAND

Plaintiff(s) demand(s) a trial by jury as to all issues so triable.

AMIRALI Y. HAIDRI
Attorney for Plaintiff


By:_____
Amirali Y. Haidri

Dated: March 25, 2021


Page 8 of 9

## CERTIFICATION

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and that no other action or arbitration proceeding is contemplated.   It is contemplated that upon the devolution of discovery, one Peter Cho, President of defendant Jintec America, Inc. may be impleaded herein.   Otherwise, I also certify that at this time I know of no other party that should be joined in this action.

I further certify that the within pleading has been filed and served within the time prescribed by the Rules of Court.


_____
Amirali Y. Haidri


Dated: March 25, 2021

# EXHIBIT A



# PURCHASE ORDER

Date                      _7 / 15/ 2019_____                PO No.: 190715K-01

Supplier Company   _Trutek Corp._____

Supplier Address    _281E Main St., Somerville, NJ 08876_

Supplier Contact     _Shaheda Ashtekar_____

Supplier Phone       _(908) 685-1111 ext. 102_____

Supplier Fax           _N/A_____

Supplier E-mail      _sashtekar@nasalguard.com_____

| Item No. | Quantity (pcs) | Description | Remarks | Unit Price (Ex-factory) | Total Amount |
|---|---|---|---|---|---|
| 1 | 250,000 | NasalGuard 3g | Tube bulk without box | $2.47 | $617,500.00 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| **Total** |  |  |  |  | **$617,500.00** |

## Terms and Conditions

- Tube design, including Korean trademark, will be forwarded shortly
- Payment term: i) 30% with PO, ii) 60% upon proof of air shipment from forwarder, and iii) 10% within 10 days after arrival of shipment in Korea
- i) Free sales Certificate by chamber of commerce, ii) notarized Manufacturing Certificate by manufacturer, and iii)  notarized BSE/TSE free Certificate by Trutek should be issued for customs clearance in importation country.
- Efficacy report showing at least 10 times higher than IHADA should be issued.
- Quality is specially formulated for Korea market and COA shall be issued after production.
- Other terms, being not described herein, follow both parties' agreement.

Jintec America Inc.

_____
Peter Cho / President
Date: 7 / 15 / 2019

*Customer Copy*

210 Sylvan Avenue, #24, Englewood Cliffs, NJ 07632   Phone) 1.201.431.9052   Fax) 1.201.431.9139

# EXHIBIT B



# TRUTEK CORP.

**281 East Main Street. Somerville, NJ 08876 Tel: 908-685-1111 Fax: 908-685-1110**

## INVOICE

Date: May 5, 2020

**Invoice # TtkJintec-2020-3**
**Ref: Jintec PO dated No. 190715K-01 dated July 15, 2019**

Shipper: Trutek Corp.                                    Picked up by: Jintec America, Inc.
       281 East Main Street                                    210 Sylvan Avenue # 24
       Somerville, NJ 08876                                   Englewood Cliffs, NJ 07632
                                                              Tel.: 201-431-9052

| Item # | Description | Total Quantity | Unit Price USD | Total Amount USD |
|---|---|---|---|---|
| 1. | 3 gm NasalGuard Gel tubes in pre-printed Korean graphics - NasalGuard® Korea - Fine Dust Filter Gel Unscented – Blue Tubes | 19,420 Filled Tubes | $2.47 | $47,967.40 |
| 2. | 3 gm NasalGuard Gel tubes in pre-printed Korean graphics - NasalGuard® Korea - Fine Dust Filter Gel Scented – Green Tubes | 11,820 Filled Tubes | $2.47 | $29,195.40 |
| | **Total Amount Payable** | | | **$77,162.80** |
| | Less 30% advance paid on July 17, 2019 for bal. 28,451 tubes | | | $21,082.19 |
| | **Amount due this shipment** | | | **$56,080.61** |
| | **Overdue payment from Invoice# TtkJintec-2020-2 dt. 3.13.2020** | | | **$40,736.24** |
| | **TOTAL BALANCE** | | | **$96,816.85** |

**Terms of Payment:**
1. **Payment for the total balance due $96,816.85 to wire-transferred to Trutek's designated Bank Account, at TD Bank, 34, East Somerset Street, Raritan NJ 08869, USA, Account No. 7855926817, Routing No. 031201360** upon proof of shipment provided by Jintec's freight forwarding company in the USA.
2. Unscented Gel (blue) tubes and Scented Gel (green) tubes were manufactured at Englewood Lab on April 27th, and April 28th, 2020 respectively.

*Ashok Wahi*

(Authorized Signatures)
Ashok Wahi, Trutek Corp.

# EXHIBIT C



# PURCHASE ORDER

Date              _3 / 30/ 2020_____          PO No.: 200330A-01

Supplier Company   _Trutek Corp._____

Supplier Address   _281E Main St., Somerville, NJ 08876_

Supplier Contact   _Shaheda Ashtekar_____

Supplier Phone     _(908) 685-1111 ext. 102_____

Supplier Fax       _N/A_____

Supplier E-mail    _sashtekar@nasalguard.com_____

| Item No. | Quantity (pcs) | Description | Type | Unit Price (Ex-factory) | Total Amount |
|----------|----------------|-------------|------|-------------------------|--------------|
| 1 | 350,000 | NasalGuard 3g | Tube only | $2.47 | $864,500 |
| | | | | | |
| | | | | | |
| **Total** | **350,000** | | | | **$864,500** |

## Terms and Conditions

- Tube from DOW shall be applied.
- +(-) 5% against order quantity is acceptable
- Payment term: i) 30% wit PO, ii) 60% upon proof of air shipment from forwarder, and iii) 10% within 10 days after arrival of shipment in the destination.
- i) Free sales Certificate by chamber of commerce, ii) notarized Manufacturing Certificate by manufacturer, and iii) notarized BSE/TSE free Certificate by Trutek should be issued for customs clearance in importation country.
- 250K for China and 100K for Southeast Asia (Thailand, Indonesia, Malaysia, the Philippines, Singapore, and Vietnam) to be distributed.

Jintec America Inc.

_____
Peter Cho / President
Date: 3 / 30 / 2020

*Customer Copy*

210 Sylvan Avenue, #24, Englewood Cliffs, NJ 07632   Phone) 1.201.431.9052   Fax) 1.201.431.9139

# EXHIBIT D



# TRUTEK CORP.

**281 East Main Street. Somerville, NJ 08876 Tel: 908-685-1111 Fax: 908-685-1110**

## <u>PROFORMA INVOICE</u>

Date: March 31, 2020

**Performa Invoice # TtkJintecGC-2020-2**
**Ref: Jintec PO No. 200330A-01 dated March 30, 2020**

| Item # | Description | Total Quantity | Unit Price USD | Total Amount USD |
|---|---|---|---|---|
| 1. | 3 gm NasalGuard Gel tubes pre-printed for Greater China | 350,000 Filled Tubes | $2.47 | $864,500.00 |
| | Total Amount | | | $864,500.00 |

**Terms of Payment:**
1. First Installment of advance @ 30% (USD 259,350) to be wire-transferred on receipt of this invoice to Trutek's designated Bank Account, at TD Bank, 34 East Somerset Street, Raritan NJ 08869, USA, Account No. 7855926817, Routing No. 031201360,
2. Second Installment @ 60% (USD 518,700) to be wire-transferred upon proof of air shipment from forwarder.
3. Balance 10% (USD 86,450) payable via wire-transfer no later than 10 business days upon receipt of the product at Jintec America Inc.

**Notes:**
1. **Incremental cost, pertaining to components provided by Jintec is yet to be determined. These will be invoiced separately as agreed with Jintec.**
2. **This Proforma Invoice supersedes Trutek's previous Proforma Invoice No. # TtkJintecGC-2020-1 dated March 25, 2020 and Jintec Purchase Order No. 200323C-01 dated March 23, 2020**

*Ashok Wahi*

(Authorized Signatures)
Ashok Wahi
Trutek Corp.

# Civil Case Information Statement

## Case Details: SOMERSET | Civil Part Docket# L-000426-21

**Case Caption:** TRUTEK CORP.   VS JINTEC AMERICA, INC.

**Case Initiation Date:** 03/26/2021

**Attorney Name:** AMIRALI YUSUFALI HAIDRI

**Firm Name:** AMIRALI Y. HAIDRI

**Address:** 110 HILLSIDE AVE STE 104 SPRINGFIELD NJ 07081

**Phone:** 9086888700

**Name of Party:** PLAINTIFF : Trutek Corp.

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** CONTRACT/COMMERCIAL TRANSACTION

**Document Type:** NJ eCourts Case Initiation Confirmation

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** YES

**Are sexual abuse claims alleged by: Trutek Corp.?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/26/2021
Dated

/s/ AMIRALI YUSUFALI HAIDRI
Signed

EXHIBIT 2



**Salvacion USA, Inc.**

210 Sylvan Avenue Suite 24

Englewood Cliffs, NJ 07632 USA

Tel 201.431.9052 Fax 201.431.9139

info@salvacion-usa.com

Partnership Inquiries

www.covixyl.com

**Salvacion Co., Ltd.**

557 GangNam-daero (SungHan B/D), 12 Floor, SeoCho-gu, Seoul, Korea 06531

Tel +82.2.1833.7420

info@salvacion.co.kr

### Salvacion R&D Center

Migun-Technoworld B/D, YuSeong-gu

Daejeon, Korea 34025

### Salvacion International, LLC.

Sheridan, WY 82801 USA

info@salvacion-intl.com

### BioSure Global

Hillgrove Business Park,

Nazeing, Essex, UK

EN9 2HB

info@biosure.co.uk

### Salvation R.D.

Pontezuela Santiago, Republica Dominicana

juanpimentel122@gmail.com

The information on the website is only for the purpose of product information for overseas distributors in co
outside of the U.S.. COVIXYL is currently not available in the United States, as it is currently under review for o
by the FDA.
We will make the announcement of product availability in each country upon approval.

EXHIBIT 3

(12) INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(19) World Intellectual Property Organization
International Bureau



(43) International Publication Date
28 June 2018 (28.06.2018)



**WIPO | PCT**

(10) International Publication Number
**WO 2018/118146 A1**

(51) International Patent Classification:
*A61K 31/14* (2006.01)      *A62B 23/06* (2006.01)
*A61K 9/00* (2006.01)

(21) International Application Number:
PCT/US2017/048386

(22) International Filing Date:
24 August 2017 (24.08.2017)

(25) Filing Language: English

(26) Publication Language: English

(30) Priority Data:
15/390,227    23 December 2016 (23.12.2016)   US
15/458,952    14 March 2017 (14.03.2017)      US

(71) Applicant: TRUTEK CORP. [US/US]; 281 East Main Street, Somerville, New Jersey 08876 (US).

(72) Inventors: WAHI, Ashok; 465 Sommerville Road, Basking Ridge, New Jersey 07920 (US). DEQUINA, John Lawrence; 10 Stanford Drive, Unit 4A, Bridgewater, New Jersey 08807 (US). WAHI, Kanika; 465 Sommerville Road, Basking Ridge, New Jersey 07920 (US). FOSS, Bernard; 48 Esplanade Drive, Somerset, New Jersey 08873 (US).

(74) Agent: KREMEN, Stanley H.; 4 Lenape Lane, East Brunswick, New Jersey 08816 (US).

(81) Designated States *(unless otherwise indicated, for every kind of national protection available)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BN, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DJ, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IR, IS, JO, JP, KE, KG, KH, KN, KP, KR, KW, KZ, LA, LC, LK, LR, LS, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PA, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SA, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM, TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

(84) Designated States *(unless otherwise indicated, for every kind of regional protection available)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, ST, SZ, TZ, UG, ZM, ZW), Eurasian (AM, AZ, BY, KG, KZ, RU, TJ, TM), European (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, KM, ML, MR, NE, SN, TD, TG).

Published:
— *with international search report (Art. 21(3))*



**(54) Title:** ELECTROSTATICALLY CHARGED NASAL APPLICATION METHOD AND PRODUCT FOR MICROFILTRATION

**(57) Abstract:** A method of microfiltration of inhaled air for nasal application and product for reducing the risk of inhalation of fine and ultra-fine (microscopic and submicroscopic) sized atmospheric pollutants by applying a formulation topically to the skin above the upper-lip and in close proximity of the nasal passages. The products of this formulation, when applied, create an electrostatic field for reducing the inhalation of fine and ultra-fine airborne pollutants.

WO 2018/118146 A1

**TITLE OF INVENTION**

ELECTROSTATICALLY CHARGED NASAL APPLICATION METHOD AND PRODUCT FOR MICROFILTRATION

**CROSS REFERENCE TO RELATED APPLICATIONS**

**APPLICATIONS TO WHICH INTERNATIONAL PRIORITY IS CLAIMED**

This Present Application is the PCT Counterpart of US Patent Application Serial No. 15/390,227 (hereinafter the '227 Application) filed on 23 December 2016 (issued as US Patent No. 9,737,497 on 22 August 2017) and its divisional continuation US Patent Application Serial No. 15/458,952 (hereinafter the '952 Application) filed on 14 March 2017 (to be issued as US Patent No. 9,750,706 on 5 September 2017).  This Present PCT Application claims the benefit of and priority to both the '227 Application and the '952 Application, which are both incorporated by reference in their entirety herein.

**APPLICATIONS TO WHICH NO PRIORITY IS CLAIMED**

The following related patents and patent applications have been assigned to TRUTEK Corp., Somerville, New Jersey.  No priority is claimed thereto.

1. US Patent No. 5,468,488 issued to Wahi on November 21, 1995, based upon Application No. 08/080,775, filed on June 24, 1993.

2. US Patent No. 5,674,481 issued to Wahi on October 7, 1997, based upon Application No. 08/560,659, filed on November 20, 1995.  Application No. 08/560,659 was a continuation-in-part of its parent application 08/080,775.

3. US Patent No. 6,844,005 issued to Wahi on January 18, 2005 based upon Application No. 10/082,978 filed on February 25, 2002.

4. US Patent No. 8,163,802 issued to Wahi on April 24, 2012 based upon Application No. 12/467,271 filed on May 16, 2009.

5. US Patent Application No. 10/161,821 filed on June 4, 2002 by Wahi, and published as US Patent Application Publication No. 2003/0223934 A1 on December 4, 2003.

6. US Patent Application No. 12/475,690 filed on June 1, 2009 by Wahi, and published as US Patent Application Publication No. 2009/0235933 A1 on September 24, 2009.

7.  US Patent Application No. 12/489,185 filed on June 22, 2009 by Wahi, and published as US Patent Application Publication No. 2009/0258946 A1 on October 15, 2009.

8.  US Patent Application No. 12/466,382 filed on May 14, 2009 by Wahi, and published as US Patent Application Publication 2010/0055152 A1 on March 4, 2010.

## FIELD OF THE INVENTION

The Present Invention relates to the field of protective compositions and microfiltration of various pollutants and particulate matter of fine and ultra-fine (*i.e.,* microscopic and submicroscopic) size range that typically enter the body through the respiratory airway and/or nasal mucosa.  More particularly, the Present Invention relates to methods that involve the use of products developed for restricting the flow of (or filtering) the fine and ultra-fine (*i.e.,* microscopic and submicroscopic) ambient airborne pollutants from the nasal passages by creating an electrostatic field in an area around the nose. This reduces or prevents the inhalation of airborne pollutants including but not limited to ultra-fine coal dust, yellow dust, smoke, tobacco smoke and other airborne particulate matter through the nasal passages by filtering the pollutants outside the body before being inhaled.

## BACKGROUND OF THE INVENTION

There has been a growing public health concern globally regarding the adverse health effects caused by the inhalation of fine and ultra-fine (submicroscopic/microscopic) particles. From the phenomenon of yellow dust dating back to ancient times to the Great Smog of London in 1952, ambient air contamination is ubiquitous and affects the world's population.

Atmospheric particulate matter or PM, is a mixture of solids and liquid droplets floating in the air. Some particles are released directly from a specific source, while others form in complicated chemical reactions in the atmosphere. $PM_{2.5}$ is particulate matter of 2.5 μm or less in diameter. $PM_{2.5}$ is generally described as fine particles. Ultra-fine particles are those with a diameter less than 0.1 μm or $PM_{0.1.}$

It is generally recognized and well documented that smaller particles have been found to be more harmful long-term to human health. A study by the Bay Area Air Quality Management District entitled "Ultra-fine Particulate

Matter Study in the San Francisco Bay Area" (release date 23 Aug. 2010) finds that $PM_{0.1}$ can penetrate pulmonary tissue, enter the bloodstream, and circulate throughout the body, unlike larger particulates. Therefore, $PM_{0.1}$ can damage a number of internal systems that are inaccessible to larger particles. Furthermore, according to the World Health Organization "Health Effects of Particulate Matter", the health effects of inhalable PM are due to exposure over both the short term (hours, days) and long term (months, years) and include respiratory and cardiovascular morbidity, such as aggravation of asthma, respiratory symptoms and an increase in hospital admissions mortality from cardiovascular and respiratory diseases and from lung cancer.

People suffering from asthma and from cardiovascular diseases have been identified to be especially sensitive to air pollution (Palmgren et al., 2003). In epidemiological studies conducted over the past ten years, a very consistent quantitative picture has emerged between the levels of air pollution (especially fine fraction particles) and increases in morbidity and mortality (Palmgren et al., 2003). Furthermore, there is no evidence of a safe level of exposure or a threshold below which no adverse health effects occur.

In addition to ambient air pollution, indoor smoke is also a serious health risk for some 3 billion people who cook and heat their homes with coal and biomass fuels.

The harmful effects related to short-term respiratory exposure to atmospheric particulate matter include:

- lung inflammatory reactions,
- respiratory symptoms,
- adverse effects on the cardiovascular system,
- an increase in medication usage,
- an increase in hospital admissions, and
- an increase in mortality.

However, when one looks at the harmful effects from long-term exposure, a far bleaker picture is seen. These effects include:

- an increase in lower respiratory symptoms,
- a reduction in lung function in children,
- an increase in chronic obstructive pulmonary disease,
- a reduction in lung function in adults, and

- a reduction in life expectancy, owing mainly to cardiopulmonary mortality and probably to lung cancer.

There is a great need for effective and practical microfiltration of inhaled air in order to reduce inhaled quantities of fine and ultra-fine pollutants and particulate matter such as smoke and dust.   Current methods of addressing this widespread problem include face masks which usually cover the nose and mouth, physical nose filters that go outside the nose, or intrusive nose filters that are inserted into the nasal passageway.   In general, these methods are inferior to the Present Invention as they are awkward, uncomfortable, cumbersome, and not effective in filtering ultra-fine particulate matter from inhaled air.

## SUMMARY OF THE INVENTION

The Present Invention discloses and claims a method to microfilter inhaled air for nasal application and a product for reducing the risk of inhalation of fine and ultra-fine sized atmospheric pollutants wherein a formulation is applied topically to the face above the upper-lip in close proximity of the nasal passages.   The products of this formulation, when applied, create an electrostatic field that attracts and captures oppositely charged fine and ultra-fine airborne pollutants, while at the same time, repels similarly charged fine and ultra-fine airborne particles.   Therefore, the risk of inhalation is greatly reduced because much fewer oppositely charged and similarly charged particles are inhaled through the nasal passages.

The principal ingredient of the product formulation is Behentrimonium Chloride, which may be obtained as Incroquat Behenyl TMC-85.   This ingredient is a naturally derived Behenyl quaternary conditioning agent and self-emulsifier, which was developed for formulations preferred for utilizing a chloride quat.

## OBJECT OF THE INVENTION

It is an object of the invention to mitigate the harmful health effects due to the exposure or inhalation of fine and ultra-fine particulate matter contained in airborne pollutants.

## THERE ARE NO DRAWINGS.

**DISCUSSION OF THE PRIOR ART**

To the Applicant's knowledge, the only existing material prior art consists of a patent and published patent applications resulting from the inventions of Ashok Wahi, a co-inventor of the Present Invention. These references are:

| Patent or Publication Number | Issue or Publication Date | Title of Invention |
|---|---|---|
| 5,468,488 | 1995-11-21 | Electrostatically Charged Nasal Application Product and Method |
| 5,674,481 | 1997-10-07 | Electrostatically Charged Nasal Topical Application Product |
| 6,844,005 | 2005-01-18 | Electrostatically Charged Nasal Application Product With Increased Strength |
| 8,163,802 | 2012-04-24 | Electrostatically Charged Multi-Acting Nasal Application Product and Method |
| 2003/0223934 | 2003-12-04 | Electrostatically Charged Nasal Application Diagnostic Product and Method |
| 2009/0235933 | 2009-09-24 | Electrostatically Charged Mask Filter Products And Method For Increased Filtration Efficiency |
| 2009/0258946 | 2009-10-15 | Electrostatically Charged Nasal Application Multi-Purpose Products And Method |
| 2010/0055152 | 2010-03-04 | Antihistamine and Antihistamine -Like Nasal Application, Products and Method |

US Patent No. 5,468,488 (the '488 patent) is the first patent in a group of two. It is based upon Application No. 08/080,775, filed on 1993-06-24. It is a method patent and not a product patent because it was subject to restriction/election. It teaches and claims a method for restricting the flow of airborne contaminants into a nasal passage by creating an electrostatic field in an area near the nasal passage. The electrostatic field may either repel or attract airborne contaminants. A person applies a topical formulation comprising one or more electrostatic ingredients in a carrier just below the nasal passage. The patent consists of one independent method claim followed by thirteen dependent claims. The independent claim restricts the

ingredients to electrostatic polymers having an average cross-sectional area ranging between 1 square millimeter to about 50,000 square millimeters.  The resulting electrostatic field can either be positively or negatively charged.

US Patent No. 5,674,481 (the '481 patent) results from Application No. 08/560,659, filed on 1995-11-20.   Application No. 08/560,659 was a continuation-in-part of its parent application 08/080,775.  This CIP claims only the product disclosed and claimed in its parent '488 patent.  It is applied under the nasal passages as disclosed and claimed in the parent patent.   The electrostatic material may be:

1.  solid - flexible, semi-rigid or rigid;

2.  foam - flexible, semi-rigid or rigid;

3.  semi-solid, gel, or hydrogel;

4.  solution - ointment, cream, or paste;

     a.  with or without carrier;

     b.  with or without substrate; or

     c.  with or without adhesive.

The patent provides four examples of formulations that may be used to electrostatically attract or repel airborne contaminants and prevent them from entering a person's nasal passages.

The patent consists of one independent product claim followed by ten dependent claims, and application of the claimed product implements the method taught and claimed in the '488 patent.

US Patent No. 6,844,005 (the '005 patent) results from Application No. 10/082,978 filed on 2002-02-25.  There was no parent continuity.  The patent is for a product that also uses the method taught in the '488 patent.  This patent was allowed after response to an *Ex-Parte Quayle* action cited in the first office action.  In allowing the application, the Examiner reviewed both the '488 and '481 patents.  The '005 patent has one independent claim followed by nineteen dependent claims.  In allowing the application to issue, what distinguishes the claims of the '005 patent from the earlier two patents is that the claimed formulations (based on claim 1) specified a comprised ingredient as an electrostatic polymer poly(dimethyl diallyl ammonium chloride) in an amount at least 10% by weight.  Inclusion of this ingredient in the formulation

provides a significantly increased electrostatic charge over the formulations of the '481 patent.

US Patent No. 8,163,802 (the '802 patent) results from Application No. 12/467,271 filed on 2009-05-16.   Priority was based upon two provisional applications filed in 2008.   There is no other parent continuity.   This patent is both a method and product patent.   Claim 1 is an independent method claim, while claim 2 is an independent product claim, which is followed by five claims depending directly or indirectly from claim 1.   Claim 8 is an independent product claim, which is followed by fourteen claims depending directly or indirectly from claim 8.

The independent method claim of the '802 patent differs from the independent method claim of the '488 patent in that claim 1 of the '802 patent utilizes a thin film of a formulation in a carrier applied in the vicinity of the nasal passages, wherein the formulation includes ingredients that electrostatically attract airborne particulates, causing the particulates to adhere to the thin film, and inactivating the particulates, thereby rendering them harmless.   Claims 2 and 8 recite formulations not claimed in either the '408 or '005 patents.   The Examiner reviewed and considered the '488, '481, and '005 patents as well as the Applicant's Application Publication 2003/0223934.   All 23 claims were allowed.

The published US patent applications listed in the above table did not mature into patents.   US Patent Application Publication No. 2003/0223934 A1 teaches a diagnostic method that uses the methodology of the '488 patent. The formulation is applied to a patient in the vicinity of the nasal passage and then removed and analyzed for the presence of particulates.

US Patent Application Publication No. 2009/0235933 A1 teaches the use of an electrostatically charged surgical or permeable mask that prevents contaminants from entering the nose or mouth of the person wearing the mask.   The mask provided increased filtration efficiency of commercially available masks.   Here, the mask repels some particulates and attracts and traps other particulates.

US Patent Application Publication No. 2009/0258946 A1 teaches a product formulation that includes a cationic agent, which is:

- Polyquaternium-6,

- Polyquaternium-7,
- Polyquaternium-10,
- Polyquaternium-22,
- Polyquaternium-88,
- Cocodimonium Hydroxypropyl Hydrolyzed Keratin,
- Hydroxypropyl Trimonium Hydrolyzed Soy Protein,
- Hydroxypropyl Trimonium Silk Protein,
- Hydroxypropyl Trimonium Wheat Protein, or
- Hydroxypropyl Trimonium Oat Protein.

Another product formulation would be a nasal spray including an ingredient which is one of those listed above.

US Patent Application Publication No. 2010/0055152 A1 teaches a method and product applied to the vicinity of a person's nasal passages, creating a barrier that prevents airborne allergens from contact with nasal passages.    The application contains some previously undisclosed formulations.

## DETAILED DESCRIPTION OF THE INVENTION

Studies have long shown that there is a strong link between exposure to airborne contaminants and adverse health effects. Despite minor improvements of air quality over the years, the health risks associated with ambient air pollution remain a public health concern. There is sufficient evidence that reducing the inhalation of airborne pollutants can reduce the burden of disease from stroke, heart disease, lung cancer, and both chronic and acute respiratory diseases such as asthma and adverse pregnancy outcomes.

The Present Invention aims to reduce the inhalation of fine and ultra-fine airborne pollutants and, therefore, alleviate the adverse health effects they cause by creating an electrostatic field around the nasal passages for microfiltration which cannot be expected by current methods of filtration.

Particulates having diameters larger than about 80-100 microns are visible to the naked eye.  Grains of beach sand are slightly larger than 100 microns in diameter.  Although some pollen particles are visible to the naked eye, most are not.  Fine particulates are those not visible to the naked eye. Their diameters range from 0.1 micron to about 80 microns.  Fine particle classification includes pollen, dust, bacteria, mulled flour, coal dust, and

asbestos.   Ultra-fine particulates have a diameter of less than 0.1 micron. These include tobacco smoke, viruses, and colloidal silica.

The topical products of the formulations of the Present Invention contain quaternary compounds that are cationic in nature, which attract oppositely-charged particles, and which repel similarly-charged particles. Therefore, these products, when applied to the skin, reduce or prevent the inhalation / flow of airborne pollutants including but not limited to ultra-fine coal dust, yellow dust, smoke, smoke including tobacco and industrial and other airborne particulate matter to the nasal passages by filtering the pollutants outside the body before being inhaled.

In order to accomplish the above objects of the invention, an aqueous formulation is developed.

A formulation of the invention comprises:

- water,
- at least one quaternary compound,
- a preservative,
- a conditioner,
- an emulsifier,

It may further comprise without limitation a combination of the

following:

- a surfactant,
- a thickener,
- an emollient,
- a humectant, and
- a binder.

The principal ingredient of all of the formulations herein is Behentrimonium Chloride.   It is a long-chain polymer having the following chemical structure:



Another name for the polymer is docosyltrimethylammonium chloride. It is normally used as an antistatic agent and, sometimes, a disinfectant.  It is

commonly found in conditioners, hair dye, and mousse, and also in detergents.  In water treatment, it acts as an algaecide.  it is a naturally derived Behenyl quaternary conditioning agent and self-emulsifier, which was developed for formulations preferred for utilizing a chloride quat.

Behentrimonium Chloride is just one example of a class of compounds that may be used in the formulation.  As a substitute ingredient, one may use a chloride based quaternary long-chain polymer.  A long-chain polymer is defined as having at least 22 links.  Quaternary compounds in the previous patents and applications discussed previously had shorter chains ranging between 10-18 links, and were keratin protein-based quaternary compounds.

It has been experimentally verified that formulations containing Behentrimonium Chloride, when applied in the vicinity of nasal passages, prevent fine and ultra-fine particles from entering the nasal passages by creating an electrostatic field that trap these particles prior to inhalation.  This result was unanticipated and unexpected in the prior patents and patent applications listed above, which only prevent inhalation of much larger particulates.

Examples of typical formulations found to be effective appear in the eight tables that follow.  Percentages are given by weight.

| TABLE 1 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Water | 70%-90% | Solvent, Moisturizer |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 0.5%-2% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.25%-1% | Cationic, Quaternary, Biocide |
| Glycerin | 0.5%-3% | Humectant |

| TABLE 2 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 0.5%-2% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.5% | Cationic, Quaternary, Biocide |
| Phenoxyethanol, Methylparaben, Ethylparaben, Propylparaben, Butylparaben, Isobutylparaben | 0.5%-2% | Preservative |
| Lysine HCL | 0.5%-2% | Conditioner, Biocide |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Glyceryl Stearate, PEG-100 Stearate | 2%-4% | Emulsifier |

| TABLE 3 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 0.5%-2% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.5% | Cationic, Quaternary, Biocide |
| Phenoxyethanol, Methylparaben, Ethylparaben, Propylparaben, Butylparaben, Isobutylparaben | 0.5%-2% | Preservative |
| Lysine HCL | 0.5%-2% | Conditioner, Biocide |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Steareth-2 | 0.5%-2% | Emulsifier, Moisturizer |
| Steareth-21 | 0.5%-2% | Emulsifier, Moisturizer |
| Menthol | 0.4%-0.6% | Coating Agent/ Fragrance |

| TABLE 4 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 0.5%-2% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.5% | Cationic, Quaternary, Biocide |
| Phenoxyethanol, Methylparaben, Ethylparaben, Propylparaben, Butylparaben, Isobutylparaben | 0.5%-1.5% | Preservative |
| Lysine HCL | 0.5%-1.5% | Conditioner, Biocide |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Stearelh-2 | 2%-4% | Emulsifier, Moisturizer |
| Stearelh-21 | 2%-4% | Emulsifier, Moisturizer |
| Menthol | 0.4%-0.6% | Cooling Agent/ Fragrance |

| TABLE 5 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 2%-4% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.4% | Cationic, Quaternary, Biocide |
| Phenoxyethanol, Methylparaben, Ethylparaben, Propylparaben, Butylparaben, Isobutylparaben | 0.5%-1.5% | Preservative |
| Lysine HCL | 0.2%-0.7% | Conditioner, Biocide |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Steareth-2 | 2%-4% | Emulsifier, Moisturizer |
| Steareth-21 | 2%-4% | Emulsifier, Moisturizer |
| Menthol | 0.4%-0.6% | Cooling Agent/ Fragrance |

| TABLE 6 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 2%-4% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.4% | Cationic, Quaternary, Biocide |
| Phenoxyethanol, Methylparaben, Ethylparaben, Propylparaben, Butylparaben, Isobutylparaben | 0.5%-1.5% | Preservative |
| Lysine HCL | 0.2%-0.7% | Conditioner, Biocide |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Steareth-2 | 3%-4% | Emulsifier, Moisturizer |
| Steareth-21 | 3%-4% | Emulsifier, Moisturizer |
| Menthol | 0.4%-0.6% | Cooling Agent/ Fragrance |

| TABLE 7 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 2%-4% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.4% | Cationic, Quaternary, Biocide |
| 2-Phenoxyethanol | 0.7%-1.2% | Preservative |
| Potassium Sorbate | 0.1%-0.4% | Preservative |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Steareth-2 | 3%-4% | Emulsifier, Moisturizer |
| Steareth-21 | 2%-3% | Emulsifier, Moisturizer |
| Menthol | 0.4%-0.9% | Cooling Agent/ Fragrance |

| TABLE 8 | | |
|---|---|---|
| Ingredient | Percent Range | Function |
| Behentrimonium Chloride | 8%-12% | Conditioner, Quaternary, Emulsifier |
| Glycerin | 8%-12% | Humectant |
| Water | 50%-70% | Solvent, Moisturizer |
| Hydroxyethyl Cellulose, Sodium Acetate, Cellulose | 2%-4% | Thickener |
| Quaternary Ammonium Compounds, Benzyl-C12-16-alkyldimethyl, Chlorides, Ethanol | 0.1%-0.4% | Cationic, Quaternary, Biocide |
| Phenoxyethanol, Methylparaben, Ethylparaben, Propylparaben, Butylparaben, Isobutylparaben | 0.5%-1.5% | Preservative |
| Lysine HCL | 0.5%-1.5% | Conditioner, Biocide |
| Caprylic, Capric Triglyceride | 4%-6% | Emollient, Lubricant Solvent |
| Dimethicone | 1%-3% | Conditioning Emollient |
| Steareth-2 | 3%-4% | Emulsifier, Moisturizer |
| Steareth-21 | 2%-3% | Emulsifier, Moisturizer |
| Menthol | 0.4%-0.9% | Cooling Agent/ Fragrance |

All of the formulations described in TABLES 1 to 8 representing various embodiments of the Present Invention operate in the manner that was disclosed herein. The same results may be achieved by varying the percentages for the key ingredients. Varying the percentages for the ingredients affects the efficacy and consistency of the formulation.

Another ingredient that may be included in the formulation is Cocodimonium Hydroxypropyl Hydrolyzed Keratin.  This is a quaternized permanent conditioning protein developed specifically to give immediate and perceptible conditioning effects in salon hair care products.  It offers both permanent conditioning and enhanced substantivity.  It consists of a cystine-containing keratin protein (average molecular weight 1000) and a fatty moiety ($C_{10}$ - $C_{18}$) attached to the protein backbone.

Ideally, the formulations are applied as a thin film around the vicinity of the nasal passages to prevent inhalation through the nose.  However, it may be applied along a person's entire face for greater effectiveness.  The adhesion of the thin film should be adjusted to permit the film to stick to the skin or tissue and the cohesion of the formulation should be adjusted to provide adequate impermeability to the thin film.

The formulation may be contained in a liquid further comprising a solvent that evaporates quickly.  Alternatively, it may be contained in an ointment, a gel, or a cream.

The desired results may be achieved by varying the ingredients and their composition by those skilled in the art without undue experimentation.

**GLOSSARY**

Regarding the disclosure and claims in this Present Patent Application, the co-inventors choose to be their own lexicographers.  The definitions of terms contained within the specification, abstract, and claims of this Application supersede the plain and ordinary meaning of those terms.

1. Fine Particulate Matter or Fine Particle - particles not visible to the naked eye, having diameters less than or equal to 80 microns and greater than 0.1 micron.

2. Ultra-Fine Particulate Matter or Ultra-Fine Particle - particles having diameters less than or equal to 0.1 micron.

3. Microscopic - less than or equal to 80 microns and greater than 0.1 micron in size.

4. Sub-Microscopic - less than or equal to 0.1 µm in size.

5. Long-Chain Polymer - a polymer with at least 22 links.

**CLAIMS**

We claim:

1.      A formulation for electrostatically inhibiting inhalation of fine and ultra-fine particulate matter by a person, said formulation containing ingredients comprising:

   a)      a chloride based quaternary long chain-polymer that creates an electrostatic field;

   b)      a thickening agent; and

   c)      a plasticizing agent,

   wherein after application of said formulation to the person's face between the upper lip and nasal passages,

   i)      the formulation forms a stationary film that adheres to the person's face where applied;

   ii)      the electrostatic field has sufficient strength to repel similarly charged fine and ultra-fine particulate matter;

   iii)      the electrostatic field has sufficient strength to attract oppositely charged fine and ultra-fine particulate matter,

      such that said oppositely charged fine and ultra-fine particulate matter adheres to the stationary film.

2.      The formulation of claim 1 wherein the chloride based quaternary long-chain polymer is Behentrimonium Chloride.

3.      The formulation of claim 1 wherein the thickening agent is Hydroxyethyl Cellulose.

4.      The formulation of claim 1 wherein the plasticizing agent is Caprylic/Capric Triglyceride.

5.      The formulation of claim 1 comprising Behentrimonium Chloride, Hydroxymethyl Cellulose, and Caprylic/Capric Triglyceride.

6.      The formulation of claim 1 further comprising water.

7.      The formulation of claim 1, wherein the formulation is contained in an ointment.

8.      The formulation of claim 1, wherein the formulation is contained in a gel.

9.      The formulation of claim 1, wherein the formulation is contained in a cream.

WO 2018/118146                                                    PCT/US2017/048386

10.     A formulation for electrostatically inhibiting inhalation of fine and ultra-fine particulate matter by a person, said formulation containing ingredients consisting essentially of:

   a)     a chloride based quaternary long chain-polymer that creates an electrostatic field;

   b)     a thickening agent;

   c)     a plasticizing agent; and

   d)     water,

wherein after application of said formulation to the person's face between the upper lip and nasal passages,

   i)     the formulation forms a stationary film that adheres to the person's face where applied;

   ii)     the electrostatic field has sufficient strength to repel similarly charged fine and ultra-fine particulate matter;

   iii)     the electrostatic field has sufficient strength to attract oppositely charged fine and ultra-fine particulate matter,

              such that said oppositely charged fine and ultra-fine particulate matter adheres to the stationary film.

11.     The formulation of claim 10 wherein the chloride based quaternary long-chain polymer is Behentrimonium Chloride.

12.     The formulation of claim 10 wherein the thickening agent is Hydroxyethyl Cellulose.

13.     The formulation of claim 10 wherein the plasticizing agent is Caprylic/Capric Triglyceride.

14.     The formulation of claim 10 wherein the chloride based quaternary long-chain polymer is Behentrimonium Chloride; and the thickening agent is Hydroxyethyl Cellulose; and the plasticizing agent is Caprylic/Capric Triglyceride.

15.     The formulation of claim 10, wherein the formulation is contained in an ointment.

16.     The formulation of claim 10, wherein the formulation is contained in a gel.

17.     The formulation of claim 10, wherein the formulation is contained in a cream.

18.   A method for electrostatically inhibiting fine and ultra-fine particulate matter from being inhaled into a person's nasal passages, wherein the person has a face of skin upon which the nasal passages are located, said method comprising:

a)   applying a thin film of a formulation to the skin in a vicinity of the nasal passages,

wherein said formulation comprises a chloride based quaternary long-chain polymer, and wherein said long-chain polymer possesses a positive electrostatic charge,

wherein the cohesion of the formulation is adjusted to provide adequate impermeability to the thin film; and

wherein the adhesion of the thin film is adjusted to permit said thin film to stick to the skin;

b)   electrostatically attracting a first group of fine and ultra-fine particulate matter to the thin film,

wherein the fine and ultra-fine particulate matter of the first group have a negative electrostatic charge,

and holding the fine and ultra-fine particulate matter of the first group in place; and

c)   electrostatically repelling a second group of fine and ultra-fine particulate matter from the thin film,

wherein said fine and ultra-fine particulate matter of the second group have a positive electrostatic charge.

19.   The method of claim 18 wherein the chloride based quaternary long-chain polymer is Behentrimonium Chloride.

20.   The method of claim 19 wherein the formulation further comprises additional quaternary ammonium compounds.

21.   The method of claim 19 wherein the formulation further comprises Benzyl-C12-16-alkyldimethyl, Chlorides.

22.   The method of claim 19 wherein said vicinity of the nasal passages extends partially or completely to the person's face.

## INTERNATIONAL SEARCH REPORT

| International application No. |
|---|
| PCT/US2017/048386 |

| A. | CLASSIFICATION OF SUBJECT MATTER |
|---|---|

IPC (2017.01) A61K 31/14, A61K 9/00, A62B 23/06

According to International Patent Classification (IPC) or to both national classification and IPC

| B. | FIELDS SEARCHED |
|---|---|

Minimum documentation searched (classification system followed by classification symbols)

IPC (2017.01) A61K 31/14, A61K 9/00, A62B 23/06

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

Databases consulted: Google Scholar, PatBase

Search terms used: Behentrimonium chloride, docosyltrimethylammonium chloride or BTAC-228 , hydroxyethylcellulose , e1525, natrosol , caprylic , triglyceride, electrostatically charged nasal

| C. | DOCUMENTS CONSIDERED TO BE RELEVANT |
|---|---|

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | US 2010055152 A1 TRUTEK CORPORATION<br>04 Mar 2010 (2010/03/04)<br>abstract, [0013], [0016], [0019] | 1,6-10,15-18 |
| A | whole document | 2-5,11-14,19-22 |
| A | US 6844005 B2 TRUTEK CORP<br>18 Jan 2005 (2005/01/18)<br>abstract , Column 3 lines 29-42 | 2-5,11-14,19-22 |
| A | US 5468488 A WAHI, ASHOK L<br>21 Nov 1995 (1995/11/21)<br>abstract, column 3 lines 52-62 | 2-5,11-14,19-22 |
| A | US 5674481 A WAHI, ASHOK L<br>07 Oct 1997 (1997/10/07)<br>abstract | 2-5,11-14,19-22 |

| ☒ | Further documents are listed in the continuation of Box C. | ☒ | See patent family annex. |
|---|---|---|---|

| * | Special categories of cited documents: |
|---|---|
| "A" | document defining the general state of the art which is not considered to be of particular relevance |
| "E" | earlier application or patent but published on or after the international filing date |
| "L" | document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified) |
| "O" | document referring to an oral disclosure, use, exhibition or other means |
| "P" | document published prior to the international filing date but later than the priority date claimed |

| "T" | later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention |
|---|---|
| "X" | document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone |
| "Y" | document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art |
| "&" | document member of the same patent family |

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 07 Dec 2017 | 24 Dec 2017 |

| Name and mailing address of the ISA:<br>Israel Patent Office<br>Technology Park, Bldg.5, Malcha, Jerusalem, 9695101, Israel<br>Facsimile No. 972-2-5651616 | Authorized officer<br>BERKOWITZ Tzipora<br><br>Telephone No. 972-2-5651656 |
|---|---|

Form PCT/ISA/210 (second sheet) (January 2015)

**INTERNATIONAL SEARCH REPORT**

| International application No. |
| --- |
| PCT/US2017/048386 |

| C (Continuation). | DOCUMENTS CONSIDERED TO BE RELEVANT | |
| --- | --- | --- |
| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
| Y | Deposition of inhaled particles in the lungs. Archivos de Bronconeumolog?a (English Edition), 2012, 48.7: 240-246. TENA, Ana Fern?ndez; CLAR?, Pere Casan. 26 May 2012 (2012/05/26) page 241 | 6-9,15-17 |
| P,X | US 2017105950 A1 TRUTEK Corp 20 Apr 2017 (2017/04/20) whole document | 1-22 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | International application No. |
|---|---|
| | PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
|---|---|---|---|---|
| US    2010055152    A1 | 04 Mar 2010 | US    2010055152    A1 | | 04 Mar 2010 |
| | | AU    1160397    A | | 11 Jun 1997 |
| | | AU    7207894    A | | 17 Jan 1995 |
| | | AU    2003303103    A1 | | 07 Mar 2005 |
| | | AU    2003303140    A1 | | 10 Mar 2005 |
| | | AU    2003303140    A8 | | 10 Mar 2005 |
| | | AU    2009268884    A1 | | 14 Jan 2010 |
| | | AU    2009269074    A1 | | 14 Jan 2010 |
| | | AU    2009269074    B2 | | 03 Apr 2014 |
| | | AU    2009286049    A1 | | 04 Mar 2010 |
| | | AU    2009288566    A1 | | 11 Mar 2010 |
| | | AU    2009300281    A1 | | 08 Apr 2010 |
| | | AU    2009300281    B2 | | 05 Sep 2013 |
| | | CA    2165843    A1 | | 05 Jan 1995 |
| | | CA    2236864    A1 | | 29 May 1997 |
| | | CA    2538163    A1 | | 03 Mar 2005 |
| | | CA    2538163    C | | 08 Oct 2013 |
| | | CA    2726234    A1 | | 04 Mar 2010 |
| | | CA    2726235    A1 | | 11 Mar 2010 |
| | | CA    2726236    A1 | | 08 Apr 2010 |
| | | CA    2726311    A1 | | 14 Jan 2010 |
| | | CA    2726314    A1 | | 14 Jan 2010 |
| | | CN    102065832    A | | 18 May 2011 |
| | | CN    102065832    B | | 27 Mar 2013 |
| | | CN    102065850    A | | 18 May 2011 |
| | | CN    102088964    A | | 08 Jun 2011 |
| | | CN    102088964    B | | 25 Jun 2014 |
| | | CN    102089039    A | | 08 Jun 2011 |
| | | CN    102089039    B | | 23 Oct 2013 |
| | | CN    102119030    A | | 06 Jul 2011 |
| | | CN    102438601    A | | 02 May 2012 |

Form PCT/ISA/210 (patent family annex) (January 2015)

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| International application No. |
| --- |
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
| --- | --- | --- | --- | --- |
| | | EP | 0892637 A1 | 27 Jan 1999 |
| | | EP | 0892637 A4 | 30 Aug 2000 |
| | | EP | 1701677 A2 | 20 Sep 2006 |
| | | EP | 1701677 A4 | 14 Dec 2011 |
| | | EP | 2313089 A2 | 27 Apr 2011 |
| | | EP | 2313089 A4 | 24 Oct 2012 |
| | | EP | 2318101 A1 | 11 May 2011 |
| | | EP | 2320916 A2 | 18 May 2011 |
| | | EP | 2328548 A1 | 08 Jun 2011 |
| | | EP | 2361084 A2 | 31 Aug 2011 |
| | | EP | 2361084 A4 | 22 Feb 2012 |
| | | EP | 2361084 B1 | 01 Mar 2017 |
| | | JP | 2007529406 A | 25 Oct 2007 |
| | | JP | 4870431 B2 | 08 Feb 2012 |
| | | JP | 2011527343 A | 27 Oct 2011 |
| | | JP | 4972714 B2 | 11 Jul 2012 |
| | | JP | H09500622 A | 21 Jan 1997 |
| | | JP | 2011527344 A | 27 Oct 2011 |
| | | JP | 2012504616 A | 23 Feb 2012 |
| | | JP | 2012504974 A | 01 Mar 2012 |
| | | JP | 2012509250 A | 19 Apr 2012 |
| | | JP | 2012526857 A | 01 Nov 2012 |
| | | KR | 20110073470 A | 29 Jun 2011 |
| | | KR | 101553431 B1 | 15 Sep 2015 |
| | | KR | 20110036094 A | 06 Apr 2011 |
| | | KR | 101602516 B1 | 10 Mar 2016 |
| | | KR | 20110036919 A | 12 Apr 2011 |
| | | KR | 20110056526 A | 30 May 2011 |
| | | KR | 20120024730 A | 14 Mar 2012 |
| | | US | 5468488 A | 21 Nov 1995 |
| | | US | 5674481 A | 07 Oct 1997 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| International application No. |
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
|---|---|---|---|---|
| | | US | 2003161790 A1 | 28 Aug 2003 |
| | | US | 6844005 B2 | 18 Jan 2005 |
| | | US | 2010004337 A1 | 07 Jan 2010 |
| | | US | 8163802 B2 | 24 Apr 2012 |
| | | US | 2017105950 A1 | 20 Apr 2017 |
| | | US | 9737497 B2 | 22 Aug 2017 |
| | | US | 2017181985 A1 | 29 Jun 2017 |
| | | US | 9750706 B2 | 05 Sep 2017 |
| | | US | 2003223934 A1 | 04 Dec 2003 |
| | | US | 2009235933 A1 | 24 Sep 2009 |
| | | US | 2009246163 A1 | 01 Oct 2009 |
| | | US | 2009258946 A1 | 15 Oct 2009 |
| | | US | 2012201779 A1 | 09 Aug 2012 |
| | | WO | 9500119 A1 | 05 Jan 1995 |
| | | WO | 9718797 A1 | 29 May 1997 |
| | | WO | 2005016198 A1 | 24 Feb 2005 |
| | | WO | 2005018533 A2 | 03 Mar 2005 |
| | | WO | 2005018533 A3 | 28 Apr 2005 |
| | | WO | 2010005637 A2 | 14 Jan 2010 |
| | | WO | 2010005637 A3 | 25 Mar 2010 |
| | | WO | 2010005770 A2 | 14 Jan 2010 |
| | | WO | 2010005770 A3 | 25 Mar 2010 |
| | | WO | 2010005770 A8 | 16 Sep 2010 |
| | | WO | 2010024956 A2 | 04 Mar 2010 |
| | | WO | 2010024956 A3 | 01 Jul 2010 |
| | | WO | 2010027539 A1 | 11 Mar 2010 |
| | | WO | 2010039291 A1 | 08 Apr 2010 |
| | | WO | 2010134942 A1 | 25 Nov 2010 |
| ------------------------------------ | ------------------------------------ | ------------------------------------ | | ------------------------------------ |
| US 6844005 B2 | 18 Jan 2005 | US | 2003161790 A1 | 28 Aug 2003 |
| | | US | 6844005 B2 | 18 Jan 2005 |

Form PCT/ISA/210 (patent family annex) (January 2015)

## INTERNATIONAL SEARCH REPORT
Information on patent family members

| International application No. |
| --- |
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
| --- | --- | --- | --- | --- |
| | | AU | 1160397 | A | 11 Jun 1997 |
| | | AU | 7207894 | A | 17 Jan 1995 |
| | | AU | 2003303103 | A1 | 07 Mar 2005 |
| | | AU | 2003303140 | A1 | 10 Mar 2005 |
| | | AU | 2003303140 | A8 | 10 Mar 2005 |
| | | AU | 2009268884 | A1 | 14 Jan 2010 |
| | | AU | 2009269074 | A1 | 14 Jan 2010 |
| | | AU | 2009269074 | B2 | 03 Apr 2014 |
| | | AU | 2009286049 | A1 | 04 Mar 2010 |
| | | AU | 2009288566 | A1 | 11 Mar 2010 |
| | | AU | 2009300281 | A1 | 08 Apr 2010 |
| | | AU | 2009300281 | B2 | 05 Sep 2013 |
| | | CA | 2165843 | A1 | 05 Jan 1995 |
| | | CA | 2236864 | A1 | 29 May 1997 |
| | | CA | 2538163 | A1 | 03 Mar 2005 |
| | | CA | 2538163 | C | 08 Oct 2013 |
| | | CA | 2726234 | A1 | 04 Mar 2010 |
| | | CA | 2726235 | A1 | 11 Mar 2010 |
| | | CA | 2726236 | A1 | 08 Apr 2010 |
| | | CA | 2726311 | A1 | 14 Jan 2010 |
| | | CA | 2726314 | A1 | 14 Jan 2010 |
| | | CN | 102065832 | A | 18 May 2011 |
| | | CN | 102065832 | B | 27 Mar 2013 |
| | | CN | 102065850 | A | 18 May 2011 |
| | | CN | 102088964 | A | 08 Jun 2011 |
| | | CN | 102088964 | B | 25 Jun 2014 |
| | | CN | 102089039 | A | 08 Jun 2011 |
| | | CN | 102089039 | B | 23 Oct 2013 |
| | | CN | 102119030 | A | 06 Jul 2011 |
| | | CN | 102438601 | A | 02 May 2012 |
| | | EP | 0892637 | A1 | 27 Jan 1999 |

Form PCT/ISA/210 (patent family annex) (January 2015)

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | International application No. |
|---|---|
| | PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
|---|---|---|---|---|
| | | EP 0892637 | A4 | 30 Aug 2000 |
| | | EP 1701677 | A2 | 20 Sep 2006 |
| | | EP 1701677 | A4 | 14 Dec 2011 |
| | | EP 2313089 | A2 | 27 Apr 2011 |
| | | EP 2313089 | A4 | 24 Oct 2012 |
| | | EP 2318101 | A1 | 11 May 2011 |
| | | EP 2320916 | A2 | 18 May 2011 |
| | | EP 2328548 | A1 | 08 Jun 2011 |
| | | EP 2361084 | A2 | 31 Aug 2011 |
| | | EP 2361084 | A4 | 22 Feb 2012 |
| | | EP 2361084 | B1 | 01 Mar 2017 |
| | | JP 2007529406 | A | 25 Oct 2007 |
| | | JP 4870431 | B2 | 08 Feb 2012 |
| | | JP 2011527343 | A | 27 Oct 2011 |
| | | JP 4972714 | B2 | 11 Jul 2012 |
| | | JP H09500622 | A | 21 Jan 1997 |
| | | JP 2011527344 | A | 27 Oct 2011 |
| | | JP 2012504616 | A | 23 Feb 2012 |
| | | JP 2012504974 | A | 01 Mar 2012 |
| | | JP 2012509250 | A | 19 Apr 2012 |
| | | JP 2012526857 | A | 01 Nov 2012 |
| | | KR 20110073470 | A | 29 Jun 2011 |
| | | KR 101553431 | B1 | 15 Sep 2015 |
| | | KR 20110036094 | A | 06 Apr 2011 |
| | | KR 101602516 | B1 | 10 Mar 2016 |
| | | KR 20110036919 | A | 12 Apr 2011 |
| | | KR 20110056526 | A | 30 May 2011 |
| | | KR 20120024730 | A | 14 Mar 2012 |
| | | US 5468488 | A | 21 Nov 1995 |
| | | US 5674481 | A | 07 Oct 1997 |
| | | US 2010004337 | A1 | 07 Jan 2010 |

Form PCT/ISA/210 (patent family annex) (January 2015)

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | International application No. |
|---|---|
| | PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | | Publication Date |
|---|---|---|---|---|---|
| | | US | 8163802 | B2 | 24 Apr 2012 |
| | | US | 2017105950 | A1 | 20 Apr 2017 |
| | | US | 9737497 | B2 | 22 Aug 2017 |
| | | US | 2017181985 | A1 | 29 Jun 2017 |
| | | US | 9750706 | B2 | 05 Sep 2017 |
| | | US | 2003223934 | A1 | 04 Dec 2003 |
| | | US | 2009235933 | A1 | 24 Sep 2009 |
| | | US | 2009246163 | A1 | 01 Oct 2009 |
| | | US | 2009258946 | A1 | 15 Oct 2009 |
| | | US | 2010055152 | A1 | 04 Mar 2010 |
| | | US | 2012201779 | A1 | 09 Aug 2012 |
| | | WO | 9500119 | A1 | 05 Jan 1995 |
| | | WO | 9718797 | A1 | 29 May 1997 |
| | | WO | 2005016198 | A1 | 24 Feb 2005 |
| | | WO | 2005018533 | A2 | 03 Mar 2005 |
| | | WO | 2005018533 | A3 | 28 Apr 2005 |
| | | WO | 2010005637 | A2 | 14 Jan 2010 |
| | | WO | 2010005637 | A3 | 25 Mar 2010 |
| | | WO | 2010005770 | A2 | 14 Jan 2010 |
| | | WO | 2010005770 | A3 | 25 Mar 2010 |
| | | WO | 2010005770 | A8 | 16 Sep 2010 |
| | | WO | 2010024956 | A2 | 04 Mar 2010 |
| | | WO | 2010024956 | A3 | 01 Jul 2010 |
| | | WO | 2010027539 | A1 | 11 Mar 2010 |
| | | WO | 2010039291 | A1 | 08 Apr 2010 |
| | | WO | 2010134942 | A1 | 25 Nov 2010 |
| -------------------- | -------------------------------- | -------------------------------- | | | ------------------------------------ |
| US    5468488    A | 21 Nov 1995 | US | 5468488 | A | 21 Nov 1995 |
| | | AU | 1160397 | A | 11 Jun 1997 |
| | | AU | 7207894 | A | 17 Jan 1995 |
| | | AU | 2003303103 | A1 | 07 Mar 2005 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | | | |
|---|---|---|---|
| International application No. | | | |
| PCT/US2017/048386 | | | |

| Patent document cited search report | Publication date | Patent family member(s) | Publication Date |
|---|---|---|---|
| | | AU   2003303140   A1 | 10 Mar 2005 |
| | | AU   2003303140   A8 | 10 Mar 2005 |
| | | AU   2009268884   A1 | 14 Jan 2010 |
| | | AU   2009269074   A1 | 14 Jan 2010 |
| | | AU   2009269074   B2 | 03 Apr 2014 |
| | | AU   2009286049   A1 | 04 Mar 2010 |
| | | AU   2009288566   A1 | 11 Mar 2010 |
| | | AU   2009300281   A1 | 08 Apr 2010 |
| | | AU   2009300281   B2 | 05 Sep 2013 |
| | | CA   2165843   A1 | 05 Jan 1995 |
| | | CA   2236864   A1 | 29 May 1997 |
| | | CA   2538163   A1 | 03 Mar 2005 |
| | | CA   2538163   C | 08 Oct 2013 |
| | | CA   2726234   A1 | 04 Mar 2010 |
| | | CA   2726235   A1 | 11 Mar 2010 |
| | | CA   2726236   A1 | 08 Apr 2010 |
| | | CA   2726311   A1 | 14 Jan 2010 |
| | | CA   2726314   A1 | 14 Jan 2010 |
| | | CN   102065832   A | 18 May 2011 |
| | | CN   102065832   B | 27 Mar 2013 |
| | | CN   102065850   A | 18 May 2011 |
| | | CN   102088964   A | 08 Jun 2011 |
| | | CN   102088964   B | 25 Jun 2014 |
| | | CN   102089039   A | 08 Jun 2011 |
| | | CN   102089039   B | 23 Oct 2013 |
| | | CN   102119030   A | 06 Jul 2011 |
| | | CN   102438601   A | 02 May 2012 |
| | | EP   0892637   A1 | 27 Jan 1999 |
| | | EP   0892637   A4 | 30 Aug 2000 |
| | | EP   1701677   A2 | 20 Sep 2006 |
| | | EP   1701677   A4 | 14 Dec 2011 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | International application No. |
|---|---|
| | PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
|---|---|---|---|---|
| | | EP 2313089 | A2 | 27 Apr 2011 |
| | | EP 2313089 | A4 | 24 Oct 2012 |
| | | EP 2318101 | A1 | 11 May 2011 |
| | | EP 2320916 | A2 | 18 May 2011 |
| | | EP 2328548 | A1 | 08 Jun 2011 |
| | | EP 2361084 | A2 | 31 Aug 2011 |
| | | EP 2361084 | A4 | 22 Feb 2012 |
| | | EP 2361084 | B1 | 01 Mar 2017 |
| | | JP 2007529406 | A | 25 Oct 2007 |
| | | JP 4870431 | B2 | 08 Feb 2012 |
| | | JP 2011527343 | A | 27 Oct 2011 |
| | | JP 4972714 | B2 | 11 Jul 2012 |
| | | JP H09500622 | A | 21 Jan 1997 |
| | | JP 2011527344 | A | 27 Oct 2011 |
| | | JP 2012504616 | A | 23 Feb 2012 |
| | | JP 2012504974 | A | 01 Mar 2012 |
| | | JP 2012509250 | A | 19 Apr 2012 |
| | | JP 2012526857 | A | 01 Nov 2012 |
| | | KR 20110073470 | A | 29 Jun 2011 |
| | | KR 101553431 | B1 | 15 Sep 2015 |
| | | KR 20110036094 | A | 06 Apr 2011 |
| | | KR 101602516 | B1 | 10 Mar 2016 |
| | | KR 20110036919 | A | 12 Apr 2011 |
| | | KR 20110056526 | A | 30 May 2011 |
| | | KR 20120024730 | A | 14 Mar 2012 |
| | | US 5674481 | A | 07 Oct 1997 |
| | | US 2003161790 | A1 | 28 Aug 2003 |
| | | US 6844005 | B2 | 18 Jan 2005 |
| | | US 2010004337 | A1 | 07 Jan 2010 |
| | | US 8163802 | B2 | 24 Apr 2012 |
| | | US 2017105950 | A1 | 20 Apr 2017 |

Form PCT/ISA/210 (patent family annex) (January 2015)

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| International application No. |
|---|
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | | Publication Date |
|---|---|---|---|---|---|
| | | US | 9737497 | B2 | 22 Aug 2017 |
| | | US | 2017181985 | A1 | 29 Jun 2017 |
| | | US | 9750706 | B2 | 05 Sep 2017 |
| | | US | 2003223934 | A1 | 04 Dec 2003 |
| | | US | 2009235933 | A1 | 24 Sep 2009 |
| | | US | 2009246163 | A1 | 01 Oct 2009 |
| | | US | 2009258946 | A1 | 15 Oct 2009 |
| | | US | 2010055152 | A1 | 04 Mar 2010 |
| | | US | 2012201779 | A1 | 09 Aug 2012 |
| | | WO | 9500119 | A1 | 05 Jan 1995 |
| | | WO | 9718797 | A1 | 29 May 1997 |
| | | WO | 2005016198 | A1 | 24 Feb 2005 |
| | | WO | 2005018533 | A2 | 03 Mar 2005 |
| | | WO | 2005018533 | A3 | 28 Apr 2005 |
| | | WO | 2010005637 | A2 | 14 Jan 2010 |
| | | WO | 2010005637 | A3 | 25 Mar 2010 |
| | | WO | 2010005770 | A2 | 14 Jan 2010 |
| | | WO | 2010005770 | A3 | 25 Mar 2010 |
| | | WO | 2010005770 | A8 | 16 Sep 2010 |
| | | WO | 2010024956 | A2 | 04 Mar 2010 |
| | | WO | 2010024956 | A3 | 01 Jul 2010 |
| | | WO | 2010027539 | A1 | 11 Mar 2010 |
| | | WO | 2010039291 | A1 | 08 Apr 2010 |
| | | WO | 2010134942 | A1 | 25 Nov 2010 |
| ----------------------------- | ----------------------------- | ----------------------------- | | | ----------------------------- |
| US    5674481    A | 07 Oct 1997 | US | 5674481 | A | 07 Oct 1997 |
| | | AU | 1160397 | A | 11 Jun 1997 |
| | | AU | 7207894 | A | 17 Jan 1995 |
| | | AU | 2003303103 | A1 | 07 Mar 2005 |
| | | AU | 2003303140 | A1 | 10 Mar 2005 |
| | | AU | 2003303140 | A8 | 10 Mar 2005 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | International application No. |
| --- | --- |
| | PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
| --- | --- | --- | --- | --- |
| | | AU | 2009268884 A1 | 14 Jan 2010 |
| | | AU | 2009269074 A1 | 14 Jan 2010 |
| | | AU | 2009269074 B2 | 03 Apr 2014 |
| | | AU | 2009286049 A1 | 04 Mar 2010 |
| | | AU | 2009288566 A1 | 11 Mar 2010 |
| | | AU | 2009300281 A1 | 08 Apr 2010 |
| | | AU | 2009300281 B2 | 05 Sep 2013 |
| | | CA | 2165843 A1 | 05 Jan 1995 |
| | | CA | 2236864 A1 | 29 May 1997 |
| | | CA | 2538163 A1 | 03 Mar 2005 |
| | | CA | 2538163 C | 08 Oct 2013 |
| | | CA | 2726234 A1 | 04 Mar 2010 |
| | | CA | 2726235 A1 | 11 Mar 2010 |
| | | CA | 2726236 A1 | 08 Apr 2010 |
| | | CA | 2726311 A1 | 14 Jan 2010 |
| | | CA | 2726314 A1 | 14 Jan 2010 |
| | | CN | 102065832 A | 18 May 2011 |
| | | CN | 102065832 B | 27 Mar 2013 |
| | | CN | 102065850 A | 18 May 2011 |
| | | CN | 102088964 A | 08 Jun 2011 |
| | | CN | 102088964 B | 25 Jun 2014 |
| | | CN | 102089039 A | 08 Jun 2011 |
| | | CN | 102089039 B | 23 Oct 2013 |
| | | CN | 102119030 A | 06 Jul 2011 |
| | | CN | 102438601 A | 02 May 2012 |
| | | EP | 0892637 A1 | 27 Jan 1999 |
| | | EP | 0892637 A4 | 30 Aug 2000 |
| | | EP | 1701677 A2 | 20 Sep 2006 |
| | | EP | 1701677 A4 | 14 Dec 2011 |
| | | EP | 2313089 A2 | 27 Apr 2011 |
| | | EP | 2313089 A4 | 24 Oct 2012 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| International application No. |
| --- |
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
| --- | --- | --- | --- | --- |
| | | EP | 2318101 A1 | 11 May 2011 |
| | | EP | 2320916 A2 | 18 May 2011 |
| | | EP | 2328548 A1 | 08 Jun 2011 |
| | | EP | 2361084 A2 | 31 Aug 2011 |
| | | EP | 2361084 A4 | 22 Feb 2012 |
| | | EP | 2361084 B1 | 01 Mar 2017 |
| | | JP | 2007529406 A | 25 Oct 2007 |
| | | JP | 4870431 B2 | 08 Feb 2012 |
| | | JP | 2011527343 A | 27 Oct 2011 |
| | | JP | 4972714 B2 | 11 Jul 2012 |
| | | JP | H09500622 A | 21 Jan 1997 |
| | | JP | 2011527344 A | 27 Oct 2011 |
| | | JP | 2012504616 A | 23 Feb 2012 |
| | | JP | 2012504974 A | 01 Mar 2012 |
| | | JP | 2012509250 A | 19 Apr 2012 |
| | | JP | 2012526857 A | 01 Nov 2012 |
| | | KR | 20110073470 A | 29 Jun 2011 |
| | | KR | 101553431 B1 | 15 Sep 2015 |
| | | KR | 20110036094 A | 06 Apr 2011 |
| | | KR | 101602516 B1 | 10 Mar 2016 |
| | | KR | 20110036919 A | 12 Apr 2011 |
| | | KR | 20110056526 A | 30 May 2011 |
| | | KR | 20120024730 A | 14 Mar 2012 |
| | | US | 5468488 A | 21 Nov 1995 |
| | | US | 2003161790 A1 | 28 Aug 2003 |
| | | US | 6844005 B2 | 18 Jan 2005 |
| | | US | 2010004337 A1 | 07 Jan 2010 |
| | | US | 8163802 B2 | 24 Apr 2012 |
| | | US | 2017105950 A1 | 20 Apr 2017 |
| | | US | 9737497 B2 | 22 Aug 2017 |
| | | US | 2017181985 A1 | 29 Jun 2017 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

International application No.

PCT/US2017/048386

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
|---|---|---|---|---|
| | | US 9750706 | B2 | 05 Sep 2017 |
| | | US 2003223934 | A1 | 04 Dec 2003 |
| | | US 2009235933 | A1 | 24 Sep 2009 |
| | | US 2009246163 | A1 | 01 Oct 2009 |
| | | US 2009258946 | A1 | 15 Oct 2009 |
| | | US 2010055152 | A1 | 04 Mar 2010 |
| | | US 2012201779 | A1 | 09 Aug 2012 |
| | | WO 9500119 | A1 | 05 Jan 1995 |
| | | WO 9718797 | A1 | 29 May 1997 |
| | | WO 2005016198 | A1 | 24 Feb 2005 |
| | | WO 2005018533 | A2 | 03 Mar 2005 |
| | | WO 2005018533 | A3 | 28 Apr 2005 |
| | | WO 2010005637 | A2 | 14 Jan 2010 |
| | | WO 2010005637 | A3 | 25 Mar 2010 |
| | | WO 2010005770 | A2 | 14 Jan 2010 |
| | | WO 2010005770 | A3 | 25 Mar 2010 |
| | | WO 2010005770 | A8 | 16 Sep 2010 |
| | | WO 2010024956 | A2 | 04 Mar 2010 |
| | | WO 2010024956 | A3 | 01 Jul 2010 |
| | | WO 2010027539 | A1 | 11 Mar 2010 |
| | | WO 2010039291 | A1 | 08 Apr 2010 |
| | | WO 2010134942 | A1 | 25 Nov 2010 |
| ------------------------------------ | ------------------------------------ | ------------------------------------ | | ------------------------------------ |
| US 2017105950 A1 | 20 Apr 2017 | US 2017105950 | A1 | 20 Apr 2017 |
| | | US 9737497 | B2 | 22 Aug 2017 |
| | | AU 1160397 | A | 11 Jun 1997 |
| | | AU 7207894 | A | 17 Jan 1995 |
| | | AU 2003303103 | A1 | 07 Mar 2005 |
| | | AU 2003303140 | A1 | 10 Mar 2005 |
| | | AU 2003303140 | A8 | 10 Mar 2005 |
| | | AU 2009268884 | A1 | 14 Jan 2010 |

Form PCT/ISA/210 (patent family annex) (January 2015)

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| International application No. |
| --- |
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | | Publication Date |
| --- | --- | --- | --- | --- | --- |
| | | AU | 2009269074 | A1 | 14 Jan 2010 |
| | | AU | 2009269074 | B2 | 03 Apr 2014 |
| | | AU | 2009286049 | A1 | 04 Mar 2010 |
| | | AU | 2009288566 | A1 | 11 Mar 2010 |
| | | AU | 2009300281 | A1 | 08 Apr 2010 |
| | | AU | 2009300281 | B2 | 05 Sep 2013 |
| | | CA | 2165843 | A1 | 05 Jan 1995 |
| | | CA | 2236864 | A1 | 29 May 1997 |
| | | CA | 2538163 | A1 | 03 Mar 2005 |
| | | CA | 2538163 | C | 08 Oct 2013 |
| | | CA | 2726234 | A1 | 04 Mar 2010 |
| | | CA | 2726235 | A1 | 11 Mar 2010 |
| | | CA | 2726236 | A1 | 08 Apr 2010 |
| | | CA | 2726311 | A1 | 14 Jan 2010 |
| | | CA | 2726314 | A1 | 14 Jan 2010 |
| | | CN | 102065832 | A | 18 May 2011 |
| | | CN | 102065832 | B | 27 Mar 2013 |
| | | CN | 102065850 | A | 18 May 2011 |
| | | CN | 102088964 | A | 08 Jun 2011 |
| | | CN | 102088964 | B | 25 Jun 2014 |
| | | CN | 102089039 | A | 08 Jun 2011 |
| | | CN | 102089039 | B | 23 Oct 2013 |
| | | CN | 102119030 | A | 06 Jul 2011 |
| | | CN | 102438601 | A | 02 May 2012 |
| | | EP | 0892637 | A1 | 27 Jan 1999 |
| | | EP | 0892637 | A4 | 30 Aug 2000 |
| | | EP | 1701677 | A2 | 20 Sep 2006 |
| | | EP | 1701677 | A4 | 14 Dec 2011 |
| | | EP | 2313089 | A2 | 27 Apr 2011 |
| | | EP | 2313089 | A4 | 24 Oct 2012 |
| | | EP | 2318101 | A1 | 11 May 2011 |

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| | International application No. |
|---|---|
| | PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
|---|---|---|---|---|
| | | EP | 2320916 A2 | 18 May 2011 |
| | | EP | 2328548 A1 | 08 Jun 2011 |
| | | EP | 2361084 A2 | 31 Aug 2011 |
| | | EP | 2361084 A4 | 22 Feb 2012 |
| | | EP | 2361084 B1 | 01 Mar 2017 |
| | | JP | 2007529406 A | 25 Oct 2007 |
| | | JP | 4870431 B2 | 08 Feb 2012 |
| | | JP | 2011527343 A | 27 Oct 2011 |
| | | JP | 4972714 B2 | 11 Jul 2012 |
| | | JP | H09500622 A | 21 Jan 1997 |
| | | JP | 2011527344 A | 27 Oct 2011 |
| | | JP | 2012504616 A | 23 Feb 2012 |
| | | JP | 2012504974 A | 01 Mar 2012 |
| | | JP | 2012509250 A | 19 Apr 2012 |
| | | JP | 2012526857 A | 01 Nov 2012 |
| | | KR | 20110073470 A | 29 Jun 2011 |
| | | KR | 101553431 B1 | 15 Sep 2015 |
| | | KR | 20110036094 A | 06 Apr 2011 |
| | | KR | 101602516 B1 | 10 Mar 2016 |
| | | KR | 20110036919 A | 12 Apr 2011 |
| | | KR | 20110056526 A | 30 May 2011 |
| | | KR | 20120024730 A | 14 Mar 2012 |
| | | US | 5468488 A | 21 Nov 1995 |
| | | US | 5674481 A | 07 Oct 1997 |
| | | US | 2003161790 A1 | 28 Aug 2003 |
| | | US | 6844005 B2 | 18 Jan 2005 |
| | | US | 2010004337 A1 | 07 Jan 2010 |
| | | US | 8163802 B2 | 24 Apr 2012 |
| | | US | 2017181985 A1 | 29 Jun 2017 |
| | | US | 9750706 B2 | 05 Sep 2017 |
| | | US | 2003223934 A1 | 04 Dec 2003 |

Form PCT/ISA/210 (patent family annex) (January 2015)

**INTERNATIONAL SEARCH REPORT**
Information on patent family members

| International application No. |
| --- |
| PCT/US2017/048386 |

| Patent document cited search report | Publication date | Patent family member(s) | | Publication Date |
| --- | --- | --- | --- | --- |
| | | US | 2009235933   A1 | 24 Sep 2009 |
| | | US | 2009246163   A1 | 01 Oct 2009 |
| | | US | 2009258946   A1 | 15 Oct 2009 |
| | | US | 2010055152   A1 | 04 Mar 2010 |
| | | US | 2012201779   A1 | 09 Aug 2012 |
| | | WO | 9500119   A1 | 05 Jan 1995 |
| | | WO | 9718797   A1 | 29 May 1997 |
| | | WO | 2005016198   A1 | 24 Feb 2005 |
| | | WO | 2005018533   A2 | 03 Mar 2005 |
| | | WO | 2005018533   A3 | 28 Apr 2005 |
| | | WO | 2010005637   A2 | 14 Jan 2010 |
| | | WO | 2010005637   A3 | 25 Mar 2010 |
| | | WO | 2010005770   A2 | 14 Jan 2010 |
| | | WO | 2010005770   A3 | 25 Mar 2010 |
| | | WO | 2010005770   A8 | 16 Sep 2010 |
| | | WO | 2010024956   A2 | 04 Mar 2010 |
| | | WO | 2010024956   A3 | 01 Jul 2010 |
| | | WO | 2010027539   A1 | 11 Mar 2010 |
| | | WO | 2010039291   A1 | 08 Apr 2010 |
| | | WO | 2010134942   A1 | 25 Nov 2010 |

------------------------------------   ------------------------------------   ------------------------------------   ------------------------------------

EXHIBIT 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TRUTEK CORP.
Plaintiff

v.

Yeong Wan Cho (*a.k.a.* Peter Cho);
Abdul Gaffar; Sei Young Yun;
Salvacion USA, Inc.;
Salvacion International, LLC;
Salvacion Co., Ltd.;
Salvacion R&D Center;
Biosure Global, Ltd.;
Inmobiliaria La Salvacion, R.D.
ROBIN ROE 1 through 10 (gender
neutral fictitious names);
ABC CORPORATION 1 through 10
(fictitious names),

Defendants

Civil Action No. 2:23-cv-03709-ES-JRA

Document Electronically Filed

## DECLARATION OF ASHOK WAHI

I, Ashok Wahi, being of full age hereby depose and say:

1.  In 2019, I held the position of President of Trutek Corp., the Plaintiff in this lawsuit.

2.  For many years prior to 2019 and to the present time, Trutek was in the business of selling products in the United States and worldwide under the brand name NasalGuard®.  Among these products were gels and liquid-sprays that are applied in the vicinity of a person's nasal passages.  The products once applied, create an electrostatic field around the user's nose. Harmful particles, such as bacteria, virus-sized particles, dust mites, and

pollen, are attracted to the products by virtue of their electrostatic charge. The NasalGuard® products hold the harmful particles in place, and a biocidic ingredient deactivates these particles and renders them harmless. Thus, fewer harmful particles are inhaled by the user.

3. During early 2019, one of our contract manufacturers introduced Peter Cho to me.

4. When Mr. Cho and I met, he explained to me that his company, Jintec America, Inc., desired to become the exclusive distributor for Trutek's NasalGuard® products in South Korea.

5. Because the government of Korea has specific requirements and prohibitions regarding ingredients contained in personal products, it was important for Mr. Cho to have access to proprietary and trade secret information regarding formulations, manufacturing procedures, and various product fabrication technologies. Mr. Cho indicated that it was probable that Trutek would need to reformulate its NasalGuard® products specifically for the Korean market as directed by Mr. Cho.

6. On March 4, 2019, Mr. Cho and I entered into a Confidential Disclosure Agreement, a copy of which is attached to the complaint as Exhibit 1.

7. We began the disclosure of Trutek's proprietary information to Mr. Cho immediately following execution of the Confidential Disclosure Agreement by both parties.

8. As part of said disclosure, in order for Mr. Cho to understand the mechanism of action and how Trutek's NasalGuard® products work, we

presented him with copies of several of Trutek's patents and patent applications. Among the documents presented to him were US Patent Nos. 8,163,802, 9,737,497, and 9,750,706. He was also presented with a copy of Trutek's International Patent Application, PCT/US2017/048386.

9.     As part of the disclosure, Mr. Cho received carefully guarded trade secret information regarding formulation ingredients and compositions thereof for Trutek's NasalGuard® products including for the NasalGuard® Airborne Particle Blocker Gel, methods of manufacturing and testing, knowhow in being able to adjust the adhesion and cohesion of a product so as to enable it to create a thin film that would adhere to the skin, to create an impenetrable barrier with the thin film, and to enable harmful particles to be held in place by the thin film. He also received information regarding the strengths of the surface electrostatic charge necessary and sufficient to achieve efficacy of the NasalGuard® products.

10.    Based upon reading Mr. Cho's U.S. patent application and other materials, it appears that Mr. Cho used the trade secret information provided to him by Trutek to create his patent applications, and to develop Salvacion USA's Covixyl-G and Covixyl-V products.

I understand that if any of the above statements are knowingly false, I am subject to penalties of perjury according to the laws of the United States and of the State of New Jersey.

Dated: November 20, 2023                              Ashok Wahi